**RAJ V. ABHYANKER**, California SBN 233,284
raj@legalforcelaw.com
**BATKHAND ZOLJARGAL**, California SBN 262,918
zola@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE**
1580 W. El Camino Real, Suite 10
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C.
LegalForce Inc., and Raj V. Abhyanker

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

### UNLIMITED JURISDICTION

| | |
|---|---|
| 1. LEGALFORCE RAPC WORLDWIDE, P.C.; <br> 2. LEGALFORCE INC.; and <br> 3. RAJ V. ABHYANKER, <br><br> Plaintiffs, <br><br> v. <br><br> 1. TRADEMARK ENGINE LLC.; <br> 2. TRAVIS CRABTREE; AND <br> 3. GRAY REED & MCGRAW P.C., <br><br> Defendants; <br><br> AND DOES 1-50. | Case No. 5:17-cv-7303 <br><br> **COMPLAINT FOR:** <br><br> 1. FEDERAL UNFAIR COMPETITION; <br> 2. CALIFORNIA UNFAIR COMPETITION; <br> 3. CALIFORNIA FALSE AND MISLEADING ADVERTISING; <br> 4. PROFESSIONAL NEGLIGENCE; AND <br> 5. BREACH OF FIDUCIARY DUTIES. <br><br> **Unlimited Civil Jurisdiction** |

**JURY TRIAL DEMANDED**

1.   Plaintiffs LegalForce RAPC Worldwide, P.C., LegalForce, Inc., and Raj V. Abhyanker (jointly, "LegalForce" or "Plaintiffs") submit the following complaint (the "Complaint") against Trademark Engine LLC ("Trademark Engine"), and its covert principal owner attorney Travis Crabtree ("Crabtree"), and Gray Reed & McGraw P.C., a law firm in which Crabtree is simultaneously an equity Shareholder (collectively referred to as "Defendants" or "Trademark Engine Entities").

## NATURE OF ACTION

2.   This Complaint is brought by Plaintiffs to expose the willful and systematic acts of unauthorized practice of law and unfair competition by Trademark Engine Entities with respect to preparation and filing of trademark applications before the United States Patent & Trademark Office ("USPTO"). Through its acts of preparing and filing trademarks, Trademark Engine Entities harm the  "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers. The Plaintiffs ask Trademark Engine Entities be enjoined from and pay damages for its unauthorized practice of law, false advertising, unfair

competition and other claims with respect to preparation and filing of trademark applications before the USPTO.

**THE PARTIES**

**The Plaintiffs**

3.  Plaintiff LegalForce RAPC Worldwide, P.C. ("LegalForce RAPC Worldwide") is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

4.  Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.

5.  Plaintiff Raj Abhyanker is a California licensed attorney practicing patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.  Plaintiff Raj Abhyanker is a winner of the 2013 Legal Rebel

award by the American Bar Association.

**The Defendants**

6.  Trademark Engine LLC is a Delaware corporation ("Trademark Engine") with a principal place of business at 12605 E. Freeway Suite 540, Houston Texas 77014.  Trademark Engine LLC is not a law firm in the United States and is not authorized to practice law in any state.  Trademark Engine LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

7.  Defendant Travis Crabtree ("Crabtree") is a covert owner of Trademark Engine LLC, and a licensed Texas attorney, having a principal place of business at 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056.

8.  Defendant Gray Reed & McGraw P.C. is professional law firm corporation in Texas in which Crabtree is a Shareholder having a principal place of business at 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056.

9.  DOES 1-50 are entities that participated in the transactions complained of herein in ways which are unknown to Plaintiffs.  The true names, capacities, nature, and extent of participation in the alleged activities by DOES 1-50, inclusive, are unknown to Plaintiffs and therefore Plaintiffs sue these Defendants by such fictitious names.   Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.

## BACKGROUND OF THE PARTIES

10.  Plaintiff LegalForce RAPC Worldwide is a law firm wholly owned by Plaintiff Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

11.  The website Trademarkia.com was created by the law firm of LegalForce RAPC Worldwide in 2009 but was spun off into a separate entity.  Plaintiff LegalForce RAPC Worldwide is the sole provider of legal services through the website Trademarkia.com with respect to trademark filings before the USPTO.

12.  LegalForce RAPC Worldwide employs, full time, more than ten (10) U.S. licensed trademark attorneys in its California and Arizona offices who substantially limit their practice to trademark law before the USPTO, and who are supported by legal support staff globally including in India, China, Poland, the United Kingdom and South Africa.   LegalForce RAPC Worldwide represents more than 10,000 clients from all over the United States and world, including over a thousand clients from the State of California, hundreds of clients in the State of Arizona, and over a thousand clients the State of Texas.

13.  LegalForce RAPC Worldwide is the largest law firm filer of trademarks

before the USPTO in each of the last five years.  The firm maintains interest on Lawyer Trust Account (IOLTA) trust accounts for all client funds, conducts robust conflict checks, and currently employs two former USPTO trademark examining attorneys.  It has never been disciplined by the USPTO, the State Bar of California, the State Bar of Arizona, or the State Bar of Texas.   At least two of its former attorneys are currently hired as USPTO trademark examining attorneys after leaving LegalForce RAPC, and a number of its former associate attorneys or legal assistants have been hired in trademark and IP departments of leading Big Law IP firms including Orrick, Perkins Coie, Pillsbury Winthrop, DLA Piper, and Wilson Sonsini Goodrich & Rosati as well as in legal departments at leading technology companies, including Google, Inc., Facebook, Inc., and Apple, Inc.

14.  Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.  The Chief Executive Officer (CEO) and co-founder of Plaintiff LegalForce, Inc. is Plaintiff Raj Abhyanker.  Plaintiff LegalForce, Inc. makes no revenue from preparation and filing on U.S. trademark applications.   It receives a flat monthly technology licensing revenue from Plaintiff LegalForce RAPC Worldwide independent of the legal services

revenue secured by the firm LegalForce RAPC Worldwide through the Trademarkia.com website.

15.    Plaintiff Raj Abhyanker is a California licensed attorney practicing patent & trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.  In 2013, he was named an American Bar Association Journal "Legal Rebel," an "annual honors program for the change leaders of the legal profession"[1] and a member of the Fastcase 50, an annual award that "recognizes 50 of the smartest, most courageous innovators, techies, visionaries, and leaders in the law."[2]

16.    Trademark Engine LLC is a Delaware corporation ("Trademark Engine") with a principal place of business at 12605 E. Freeway Suite 540, Houston Texas 77014  Trademark Engine LLC is not a law firm in the United States and is not authorized to practice law in any state.  Trademark Engine LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

17.Defendant Travis Crabtree ("Crabtree") is a covert owner of Trademark Engine LLC, and a licensed Texas attorney, having a principal place of business

[1] http://www.abajournal.com/magazine/article/2013_legal_rebels_a_banner_year
[2] http://www.fastcase.com/fastcase50-winners-2013.

at 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056.   Crabtree is a covert owner because he is not listed as an owner of Trademark Engine LLC anywhere on the TrademarkEngine.com website including the About Us page (**Exhibit E**), on Crabtree's LinkedIn profile (**Exhibit G**), on Trademark Engine LLC's Linkedin Profile (**Exhibit K**) his Gray Reed profile (**Exhibit M**).   However, Crabtree is listed as the owner only on the Revoked Better Business Bureau license page for TrademarkEngine.com (**Exhibit N**) and on corporate records.

18. The Better Business Bureau (BBB) for Houston lists that the BBB's Board of Directors revoked Trademark Engine LLC's accreditation on February 23, 2017 because the company failed to abide by the following standards of its code of ethics (**Exhibit N**) including:

"2. Adhere to established standards of advertising and selling.

2B. Abide by the BBB Code of Advertising, available online at: http://www.bbb.org/membership/codeofad.asp.   Supply, upon request, substantiation for advertising and selling claims. Correct advertising and selling practices, when recommended by BBB.

3. Honestly represent products and services, including clear and adequate disclosures of all material terms.

3A. Make known all material facts in both written and verbal representations, remembering that misrepresentation may result not only from direct statements but by omitting or obscuring relevant facts.

4. Openly identify the nature, location, and ownership of the

business, and clearly disclose all policies, guarantees and procedures that bear on a customer's decision to buy.

4A. Upon request, provide BBB with all information required to evaluate compliance with BBB standards. This may include, but is not limited to business name, address and contact information; names and background of principals; business and banking references; licensing and/or professional accreditation; and a complete description of the nature of the business.

8. Approach all business dealings, marketplace transactions and commitments with integrity.

8A. Avoid involvement, by the business or its principals, in activities that reflect unfavorably on, or otherwise adversely affect the public image of BBB or its accredited businesses."[3]

19. Defendant Gray Reed & McGraw P.C. is a professional law firm corporation in Texas in which Crabtree is a Shareholder[4], having a principal place of business at 1300 Post Oak Blvd., Suite 2000, Houston, TX 77056. Upon reason and belief, the law firm Gray Reed & McGraw does not conduct conflict checks for customers provided legal advice by non-attorneys employed by shareholder Crabtree through his separately owned by Trademark Engine LLC.

## JURISDICTION AND VENUE

---

[3] See **Exhibit N**, and Revoked BBB accreditation page,
https://www.bbb.org/houston/business-reviews/trademark-agents-and-consultants/trademark-engine-llc-in-houston-tx-90044544/bbb-accreditation last checked **December 24, 2017**.
[4] See **Exhibit M**, Gray Reed & McGraw is proud to announce the election of three new shareholders. Attorneys elected include Travis Crabtree, Preston Kamin and Gabe Vick,
http://m.grayreed.com/NewsResources/Press-Releases/101704/Gray-Reed-Elects-New-Shareholders, last checked **December 24, 2017**.

20.   This Complaint arises under the laws of the United States, 15 U.S.C. §1125 *et seq.*  This Court has original jurisdiction of this action under 28 U.S.C. §1331 because at least some of the claims alleged herein arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over any non-federal claims because such claims are so related as to form part of the same case or controversy.  Moreover, Plaintiffs have standing to their California state claims under the California Business and Professions Code in accordance to California appellate case law in *Higbee v. Expungement Assistance Services*.[5]

21.  This Court has personal jurisdiction over Trademark Engine Entities because the defendants solicit, transact and does business in California and this District via its website and at least one toll-free telephone number, a substantial part of the wrongful acts or omissions complained of herein occurred in this District, and the Defendants are subject to personal jurisdiction in this District. Trademark Engine Entities purposefully directed its activities toward this District when it willfully and specifically targeted consumers here and a substantial part of the harm was felt in this District.

22.   Venue is proper in the United States District Court for the Northern

---

[5] 214 Cal. App. 4th 544 *; 153 Cal. Rptr. 3d 865 **; 2013 Cal. App, in which the court concluded that the attorney alleged an identifiable trifle of injury sufficient to withstand a demurrer. The attorney alleged that he suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the provider's unlawful business practices. To have standing under the UCL, the attorney was not required to have engaged in business dealings with the provider. The court saw no reason why the alleged violation of statutes concerning the unauthorized practice of law could not serve as a predicate for the attorney's UCL action. According to the attorney, the provider's unlawful business practices had taken customers away from him.

District of California under 28 U.S.C. §§ 1391 (b) and (c).

## HARM TO PUBLIC INTEREST

23. Through its acts of preparing and filing trademarks, Trademark Engine Entities harm the "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers.

24. Since Trademark Engine LLC is not a "law firm", then it is necessarily a non-lawyer that operates beyond the reach of protections built into the legal profession. Because regulatory protections are built into the legal profession, but no regulatory protections are in place for online legal services, consumers are worse off getting bad legal advice from Trademark Engine LLC than from Plaintiff.

## ETHICS RULES RELEVANT TO ALL CLAIMS

I. USPTO'S DEFINITION OF UNAUTHORIZED PRACTICE OF LAW FOR TRADEMARK MATTERS BEFORE THE USPTO.

25. Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document. (**Exhibit A**).

26. Preparing or prosecuting an application, response, post-registration maintenance document, or other related document. (**Exhibit A**).

## II.  USPTO'S DEFINITION OF LEGAL ADVICE FOR TRADEMARK MATTERS BEFORE THE USPTO.

27.  Conducting pre-filing searches for potentially conflicting trademarks. (**Exhibit B**).

28.  Analyzing or pre-approving documents before filing.  (**Exhibit B**).

29.  Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.  (**Exhibit B**).

## III.  APPLICABLE RULES AND REGULATIONS ON THE PRACTICE OF LAW BEFORE THE USPTO.

USPTO RULES

30. **37 CFR §11.503 – Duty to supervise non-lawyers.**  With respect to a non-practitioner assistant employed or retained by or associated with a practitioner: (b) A practitioner having direct supervisory authority over the non-practitioner assistant shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the practitioner; and (c) A practitioner shall be responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner if: (1) The practitioner orders or, with the knowledge of the specific conduct, ratifies the conduct involved.

31. **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall

not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

32. **37 CFR §11.107 – Conflict of interest.**    (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

33. **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

34. **37 CFR §11.18 – Signature and certification for correspondence filed in the Office.** (a) For all documents filed in the Office in patent, trademark, and other non-patent matters, and all documents filed with a hearing officer in a disciplinary proceeding, except for correspondence that is required to be signed

by the applicant or party, each piece of correspondence filed by a practitioner in the Office must bear a signature, personally signed or inserted by such practitioner, in compliance with § 1.4(d) or § 2.193(a) of this chapter.

35.  There are other counterpart state court rules in before the California State Bar and State Bar of Texas, not reprinted here, with largely similar restrictions.

///

CALIFORNIA CIVIL CODE

36.  **California Business and Profession §6125 – Unlawful Practice of Law.**  No person shall practice law in California unless the person is an active member of the State Bar.

IV.  TRADEMARK ENGINE ENTITIES VIOLATE UNAUTHORIZED PRACTICE OF LAW RULES OF THE USPTO AND PROVIDES LEGAL ADVICE TO CUSTOMERS FOR UNITED STATES TRADEMARKS.

37.  Plaintiffs requested the filing of a trademark application through the TrademarkEngine.com website.  Email addresses of raj@legalforcelaw.com for customer RAJ ABHYANKER was used.

38.  A real trademark related to business of Plaintiffs was used for EVEREST CLAY REALTORS was applied for federal registration through the Trademark Engine website.   Everest Clay Realtors is trade name of a real estate brokerage and investment firm started by Plaintiff Raj Abhyanker.[6]  The conversations with

---

[6] Plaintiff Raj Abhyanker is also a licensed California Real Estate Broker.

Trademark Engine's non-attorney Trademark Document Specialists were audio recorded.   Both Texas and Arizona (from where calls were made) are one party recording states, as is federal law for interstate calls.   A transcripts of these recordings are found in **Exhibit D**.

39.   For the prospective trademark, EVEREST CLAY REALTORS, Trademark Engine provided legal advice to Plaintiffs by selecting classification and modifying the goods and services description from the template thereby applying specific law to facts.   Specifically, Trademark Engine's non-attorney representative "Jake" suggested class 36 to the Plaintiff and suggested a modified description in a chat session (**Exhibit O**).   In addition, Trademark Engine's non attorney staff modified the written goods and description provided by the Plaintiffs on the online site and memorialized this modification in an email to the Plaintiff on December 13, 2017 (See **Exhibit P**).   Specifically, Trademark Engine modified the original description provided by the Plaintiffs from :

"Everest Clay is a real estate brokerage in California that will also do property management and create a website to help them find their real house as well as find their own real estate investments. We will also self manage my properties."

to:

"Real estate brokerage; Real estate service, namely, rental property

management; Providing an internet website portal offering information in the field of real estate concerning the purchase and sale of new and resale homes and condos; Real estate investment services; Real estate investment services in the nature of purchasing and selling of real estate for others; Financial investment in the field of {real estate}; Real estate management services"

40. Upon reason and belief, the modification did picked descriptions for class 36 from the ID manual and modified the template description by adding {real estate}.   In addition, Trademark Engine prepared a the search report may conflict with the EVEREST CLAY REALTORS trademark (**Exhibit Q**).

41.  Although Trademark Engine represents on its website that it does not practice law, this representation is false and/or misleading.  Trademark Engine collects both its services fee for a non-attorney filing and $275 in government fees in advance of filing. (**Exhibit P**).  Moreover, after a trademark filing request is made on the Trademark Engine website, Trademark Engine practices law per the USPTO definition in critical steps in which classification of trademarks are determined, the description of goods and services are adjusted, and search results are reviewed with customers.

42. Trademark Engine admits this in an email during a critical step of "class selection and description modification step" (**Exhibit P**) as well on the recorded audio conversation where agent "Michelle" admits "our processors changed the

description to make it more acceptable to the USPTO". (**Exhibit D**).

43. Trademark Engine violates a number of clear boundaries for practice of law, including:

a. **Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document and Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services. (Exhibits A and B)**

i. With respect to the EVEREST CLAY REALTORS mark, the non-lawyer trademark document assistant named "Jake" provided legal advice to the applicant Plaintiff Raj Abhyanker who was contemplating filing a trademark application for EVEREST CLAY REALTORS. Trademark Engine representative "Jake" provided the legal advice when suggested class 36 (**Exhibit O**). Jake also represented that Trademark Engine would modify the description after fees are paid. *Id.* Trademark Engine did in fact modify the provided description by selecting items from the ID Manual of the USPTO and modifying them based on the form filled by Plaintiff Raj Abhyanker.

ii. Trademark Engine admits it practiced law in an email during a critical step of "class selection and description modification step"

(**Exhibit P**) as well on the recorded audio conversation where agent "Michelle" admits "our processors changed the description to make it more acceptable to the USPTO" (**Exhibit D**).

iii.    In addition, Trademark Engine's representative "Aaron" admitted that "Our processor, once they ran that search, the next thing they're going to do is make sure that the class that you've selected lines up with the description as you've written it. They'll also make some suggestions about improving the wording of the description to make it a little better for the application, make it more likely to be approved." (**Exhibit D**).   Aaron goes on to admit that this work is performed by non-lawyer staff when he admits "we are not attorneys, but we file the application on your behalf. So we've done thousands of these and so we know what the government's looking for and is going to expect to see." (**Exhibit D**).

iv.    In addition, Trademark Engine practiced law when it signed the USPTO form to proceed with the filing on behalf of Raj Abhyanker. While Trademark Engine requested Raj Abhyanker signature on its own website (**Exhibit R**), it did not do so, and signed on behalf of Plaintiff Raj Abhyanker directly on the USPTO website without an attorney appointed. Moreover, Trademark Engine unilaterally waive Plaintiffs Raj Abhyanker's right to privacy with respect to the EVEREST CLAY

REALTORS trademark by having non-attorney staff sign off rights while paying government fees by check box clicking off the following on the USPTO government fee form shown in **Exhibit W** including : (1) Waiving Plaintiffs Raj Abhyanker's right to cancel the filing or refund the government fee paid on their behalf;  (2) Waiving right to confidentiality of name, phone number, e-mail address, and street address of Plaintiff Raj Abhyanker with respect to their trademarks; and  (3) Representing to the federal government, without checking with Plaintiff Raj Abhyanker has the authority to grant, and is granting, the USPTO permission to make the information available in its on-line database and in copies of the application or registration record. (**Exhibit W**).

b.    **Preparing or prosecuting an application, response, post-registration maintenance document, or other related document. (Exhibit A).**

Particularly, non-lawyer assistants at Trademark Engine prepared and filed the trademark application for EVEREST CLAY REALTORS for filing without attorney review. (**Exhibit S**).

c.    **Conducting pre-filing searches for potentially conflicting trademarks. (Exhibit B).**

Particularly, non-lawyer assistants at Trademark Engine prepared pre-filing

searches for potentially conflicting marks for EVEREST CLAY REALTORS without attorney review. (**Exhibit Q**).

d. **Analyzing** **or** **pre-approving** **documents** **before** **filing.** **(Exhibit B).**

Trademark Engine admits it analyzed and pre-approved in an email during a critical step of "class selection and description modification step" (**Exhibit P**) as well on the recorded audio conversation where agents "Michelle" admits "our processors changed the description to make it more acceptable to the USPTO" (**Exhibit D**).

In addition, non-lawyer assistants at Trademark Engine prepared and filed the trademark application for EVEREST CLAY REALTORS for filing without attorney review. (**Exhibit S**).

40.    Upon reason and belief, Trademark Engine performs the "Modification Step" to ensure that it does not file ineffectual trademark applications that are highly likely to get rejected by the USPTO. It seems, upon reason and belief, Trademark Engine's non-lawyer staff are not well trained to provide this legal advice.

44. Upon reason and belief, after Trademark Engine's Trademark Document Specialists provide critical legal advice during this Modification Step, the mark proceeds to the "trademark search" phase. This "trademark search" phase is

again performed non-lawyer staff without review by licensed attorneys in violation of the USPTO's practice of law definition in **Exhibits A and B**.  After the search is delivered by non-attorney staff to the customer (**Exhibit Q**), the phone support of Trademark Engine in the post trademark search step sometimes provide legal advice by advising customers by giving them advice as to which specific trademarks in the search report are more likely to block a registration upon reason and belief.

45. After the customer approves the search report, Trademark Engine enters the customer's information directly into the USPTO website and requests a link from the USPTO to the signature form using an internal Trademark Engine non-attorney staff's email ID. (**Exhibit F**).  **Trademark Direct does not share this USPTO link to the customer to sign**, and accordingly did not share it with Plaintiff Abhyanker for the EVEREST CLAY REALTORS trademark application.

46. In contrast, Trademark Direct signs the USPTO link approving the trademark using non-attorney staff based on the partial customer's approval on the TrademarkEngine.com website (**Exhibit R**), upon reason and belief.   The reason that the approval is partial is because the TrademarkEngine.com website does not ask the customer to waive their privacy protections.   **Trademark Engine unilaterally waives privacy protections and underlying copyright**

**publication rights to the USPTO**.    Specifically, Trademark Engine's non-lawyer staff again go to a different USPTO link emailed to Trademark Engine by the USPTO which expressly waives each customer's right to privacy and has Trademark Engine attest that Trademark Engine has the authority to grant the USPTO permission to make information submitted available on its online database regardless of the underlying copyrights (**Exhibit W**).   On this same form, Trademark Engine pays the government fee to the USPTO on its own Trademark Engine credit card and/or deposit account with the USPTO. Upon reason and belief, Trademark Engine does not refund $50 of the collected $275 government fee collected through its website if the non-lawyer staff at Trademark Engine determine that the trademark qualifies as a TEAS Plus application with the lower filing fee of $225.

47. Moreover, upon reason and belief, Trademark Engine maintains no client trust account (IOLTA account) for trademark matters, uses non-lawyer assistants to evaluate specimens of use in commerce for authenticity, and performs no conflict checks against other customers.

48. In contrast, as a law firm, Plaintiff LegalForce RAPC Worldwide and its licensed attorneys must conduct conflict checks with existing clients prior to taking on representation of prospective clients.[7]   It must place client funds in an

---

[7] **37 CFR §11.107 – Conflict of interest.**   (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a

IOLTA trust account prior to work being started.[8]   It must hire U.S. licensed attorneys to counsel clients on trademark classification selection, modifying description of goods and services, and reviewing specimens provided by its clients for completeness and applicability to the selected classification.[9]

49. If Plaintiff LegalForce RAPC Worldwide and its licensed attorneys were to adopt a similar model as Trademark Engine, it is very likely that the firm and its licensed attorneys would be disbarred and/or excluded from practicing law by the USPTO, any state in which they are licensed by a State Bar.

50. This is a real threat.   Recently, Matthew Swyers ("Swyers"), a former USPTO trademark examining attorney in private practice and founder of The Trademark Company, was excluded for practice by the USPTO for the conduct similar to Trademark Engine's (**Exhibit H**).      In addition, another attorney Tracy W. Druce ("Druce") was suspended for failure to supervise assistants even though the lawyer did not know of the conduct of his assistants signing documents on his behalf (**Exhibit I**).      Moreover, the USPTO also excluded from practice Leonard Tachner ("Tachner"), who, was a suspended attorney

---

significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

[8] **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

[9] **California Business and Profession §6125 – Unlawful Practice of Law.**  No person shall practice law in California unless the person is an active member of the State Bar.  **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

whose corporation prepared and filed trademark applications while he was suspended on the grounds of unauthorized practice of law. (**Exhibit J**).

51. Unlike Swyers, Druce, and Tachner, upon reason and belief, the USPTO and State Bars take no similar action against Trademark Engine Entities. This double standard is a great injustice that harms both attorneys and the public at large.   Attorneys who have spent years going through law school, taking a difficult bar exam, maintaining an IOLTA trust account, and performing conflict checks **cannot** effectively compete against non-law firm competitors like Trademark Engine on an even playing field.   It also lowers the standard of service to the public because Trademark Engine customers rely on the legal advice given by non-attorneys.   For these reasons, an injunction and damages false advertising, unfair competition, malpractice, and other causes of action are sought.

V.  TRADEMARK ENGINE ENTITIES' MISLEADING GOOGLE, BING, AND OTHER ONLINE ADVERTISING IS DAMAGING TO PLAINTIFFS' GOODWILL AND MISLEADING TO THE PUBLIC WITH FALSE COMPARISONS TO ATTORNEY LED SERVICES, AS SUCH ACTIONS CAUSING IRREPARABLE HARM TO PLAINTIFFS.

52. Plaintiff LegalForce RAPC Worldwide and Defendant Trademark Engine are among the largest purchasers of online advertising including on Google and

Bing per month for "trademark filing" (**Exhibit T**) and "trademark registration" (**Exhibit U**) related search terms.

53.  Upon reason and belief, Trademark Engine's non-attorney trademark filing service has threatened, and continues to threaten, Plaintiff LegalForce RAPC's business directly by competitively bidding against Plaintiff LegalForce RAPC Worldwide on Google and Bing for the keywords during the year 2017 through deceptive advertising which are predicated on the unauthorized practice of law.  (**Exhibit L**).

54.  Trademark Engine is not a law firm or authorized to practice law in any state.  Moreover, upon reason and belief, Trademark Engine is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

55.  Despite not being a law firm and despite not hiring any attorneys representing external clients, Trademark Engine purchases advertisements whenever consumers search terms related to the practice of trademark law including "trademark filing" (**Exhibit T**) and "trademark registration" (**Exhibit U**).  The advertising copy in the resulting advertisements is highly misleading, leading a consumer to believe that he or she will be represented by an attorney.

56. In contrast, rules for mandatory conflict checks, attorney client privilege, and storing client funds in IOLTA accounts have been adopted by every State

Bar, for the explicit purpose of protecting clients. Trademark Engine boasts about eschewing these long standing client protections.  While not having power of attorney, not holding attorney client privilege, and not conducting conflict checks, yet still providing legal advice, Trademark Engine's advertising copy is explicitly designed to wrongfully imply that avoiding conflict checks is a benefit to clients.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
FEDERAL FALSE & MISLEADING ADVERTISING AND UNFAIR
COMPETITION IN VIOLATION OF THE FEDERAL TRADE
COMMISSION ACT, 15 U.S.C. § 45, 15 U.S.C. § 52, 15 U.S.C. § 53
 (Against all Defendants and DOES 1-50)

57. Plaintiffs incorporate herein by reference paragraphs **1-56** above.

58.  Through its acts of preparing and filing trademarks, Trademark Engine harms the  "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers.

59.  Since Trademark Engine is not a "law firm", then it is necessarily a non-lawyer that operates beyond the reach of protections built into the legal profession. Because regulatory protections are built into the legal profession, but no regulatory protections are in place for online legal services, consumers are

worse off getting bad legal advice from Trademark Engine than from Plaintiff.

60. The Plaintiffs are bound to the rules governing the legal profession and USPTO, and that those rules are designed to protect consumers. If it in fact achieves what it sets out to disclaim, Trademark Engine's disclaimer and terms of use demonstrate that there is some merit to the argument that limiting the practice of law to lawyers benefits consumers by guaranteeing protections built into the legal profession.

61. Consider the following excerpt directly from the home page of Trademark Engine's website (**Exhibit C**) or on the Terms and Conditions page (**Exhibit V**):

a.  "Trademark Engine is not a "lawyer referral service" and does not provide legal advice or participate in any legal representation. Use of Trademark Engine is subject to our Terms of Service and Privacy Policy." (**Exhibit C**).

b.  We are not a law firm. We do not provide and cannot provide legal advice to you. (**Exhibit V**).

c.  This Agreement, Below, Contains A Binding Arbitration Provision Governed By The Federal Arbitration Act And A Waiver Of Class Actions. (**Exhibit V**).

d.  We are a technology platform that helps create forms and we are not a law firm or legal service provider. (**Exhibit V**).

e.  We are not a substitute for an attorney and we cannot provide you any legal advice. Our customer service representatives cannot answer legal questions and because we do not have an attorney-client relationship, any communications with our customer service representatives are not privileged and you should not share confidential information with them. (**Exhibit V**).

f.  We may, but are not authorized to, review the information you provide to us for completeness, inconsistencies or other administerial errors. At no time do we review your answers for legal sufficiency, draw legal conclusions, provide legal advice, opinions or recommendations about your legal rights, remedies, defenses, options, selection of forms, or strategies, or apply the law to the facts of your particular situation. If you believe you have received any legal services or advice from us, you will not make your purchase. (**Exhibit V**).

62.  By renouncing the attorney-client relationship and purporting to provide legal information rather than legal advice, Trademark Engine hopes to achieve two business advantages at the expense of consumers: (1) sidestepping professional responsibilities governing the legal profession and (2) avoiding liability.  Inconsistently, it says "If you believe you have received any legal services or advice from us, you will not make your purchase", despite providing legal advice only after making a purchase on its website.(**Exhibit V**).

63.  The Plaintiffs' emphasize that Trademark Engine avoids the

responsibilities of law practice by characterizing its services as "self-help" for pro se litigants and maintaining that the website cannot substitute for an attorney, without regard to any understandable assumptions otherwise. Trademark Engine's employees are trained to disseminate legal "advice." Despite this, if taken at face value, Trademark Engine's disclaimer and terms of use allow it to operate "free from the confines of ethical rules enforceable upon attorneys.

64. Plaintiffs further argue that by falling outside the existing regulatory space for legal services—where regulations are designed by and applied to licensed lawyers—Trademark Engine Entities deny consumers redress that they would otherwise have for faulty legal advice.

65. For example, communications with the Trademark Engine's website are protected only by the company's Privacy Policy, not the attorney-client privilege or work product doctrine of Plaintiff LegalForce RAPC Worldwide. Trademark Engine has no duty of confidentiality, which would otherwise prevent an attorney from revealing information relating to the representation. Under the existing regulatory structure, Trademark Engine also operates beyond the reach of comparable disciplinary authorities for charging an unreasonable fee1 or obtaining consent for representing clients with conflicts of interest.

66. Deceptive advertising is another particularly relevant problem for many

customers using Trademark Engine. Plaintiffs' argue that if Trademark Engine were a law firm, its practices would be disciplined by potential violations for communicating false or misleading information about its services.

67. Moreover, Plaintiffs points out that Trademark Engine limits its own liability for problems arising from its services in ways impermissible for practicing lawyers. By operating outside the professional rules, Trademark Engine bypasses the duties of competence and diligence required of all lawyers practicing law—duties which, if violated, could give teeth to malpractice actions. A comprehensive liability limitation clause requires that customers hold Trademark Engine and its officers, directors, employees, and agents harmless for any indirect, punitive, special, incidental, or consequential damage, except as prohibited by law. Without a lawyer to fall back on, customers relying on Trademark Engine may sometimes fail to comply with jurisdiction-specific requirements, resulting in an increase of reliance on lawyers conducting post-mortem fixes to remedy problems. Though the disclaimer is not guaranteed to waive Trademark Engine of all liability, it makes it more difficult for clients to avoid shouldering liability for costly errors in legal documentation.

68. The Federal Trade Commission Act prohibits any unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, and declares such acts or practices unlawful.

69. Trademark Engine is not a law firm in the United States and is not authorized to practice law in any state. Trademark Engine is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

70. The Federal Trade Commission Act prohibits false and misleading advertising and prohibits advertisers like Trademark Engine from making any claim, and directly or indirectly, in words or in substance, qualified or unqualified, that contain express or implied falsehoods.

71. Trademark Engine has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers and unfairly competing with Plaintiffs for the keywords "trademark filing", "trademark registration" among hundreds of other keywords. The conduct is unfair and unethical because Trademark Engine makes a number of false and misleading statements in its advertising copy.

72. As described above, Trademark Engine has made false and/or misleading statements of fact concerning the non-attorney nature of its services and products in its online advertising and promotion, while giving legal advice through non-attorneys and covertly hiding the identity of its owner attorney Crabtree. Moreover, Trademark Engine had misled consumers by :

A.  Representing that customers can "Let the Professionals File Your Trademark

Today" while bidding on keywords including "trademark filing", "trademark registration", and misdirecting users to their $69 or $198 non-attorney guided trademark filing service. **In fact, none of Trademark Engine's employees preparing trademark filings are licensed trademark professionals of any kind, much less attorneys.**

B.   Representing that customers "protect their identity" through Trademark Engine's "Identity Protection Program" (**Exhibit Y**) when, in fact, it waives the right of confidentiality unilaterally for all its customers including those that purchase this recurring service including the Plaintiff Raj Abhyanker (**Exhibit W**).

73. Trademark Engine uses the search terms "trademark filing", "trademark registration" to redirect customers to Trademark Engine's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce. As a result, Trademark Engine has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Federal Trade Commission Act.

74.Trademark Engine's non-attorney, unlicensed trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United

States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

75. Trademark Engine's false and misleading advertisements have deceived a substantial segment of the audience exposed to it, or have the capacity for such deception, and have influenced, or are likely to influence, consumer purchasing decisions.

76. Trademark Engine sells, offers for sale, distributes, and/or advertises goods and services to consumers that directly compete with Plaintiffs' sales of their own services and products.

77. Trademark Engine's conduct demonstrates an intentional, willful, and malicious intent to deceive consumers and unfairly compete with Plaintiffs.

78. Trademark Engine's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law.   In addition, as a result of Trademark Engine's false and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.  Furthermore, Trademark Engine has been unjustly enriched at the expense of Plaintiffs as a consequence of Trademark Engine's false and misleading advertising.  Accordingly, Plaintiffs are entitled to injunctive relief and to recover actual damages, enhanced profits

and damages, costs, Trademark Engine's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
(Against all Defendants and DOES 1-50)

79. Plaintiffs incorporate herein by reference paragraphs **1-78** above.

80. Trademark Engine's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to Trademark Engine's non-attorney service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

81. Trademark Engine falsely represents that customers can "Let the Professionals File Your Trademark Today" while bidding on keywords including "trademark filing" when no licensed professional is involved. (**Exhibit T**) In fact, none of Trademark Engine's employees preparing trademark filings are licensed trademark professionals of any kind, much less attorneys.

B.    Representing that customers "protect their identity" through Trademark Engine's "Identity Protection Program" (**Exhibit Y**) when, in fact, it waives the right of confidentiality unilaterally for all its customers, even the Plaintiff Raj Abhyanker that purchased this plan by signing away rights on the government

form (**Exhibit W**).

82. Trademark Engine uses the search terms "trademark filing", "trademark registration" to redirect customers to Trademark Engine's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce. As a result, Trademark Engine has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Section §17200 *et seq.* of the California Business and Professions Code.

83. Trademark Engine's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

84. As a result of Trademark Engine's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of hundreds of thousands of dollars of income, profits and valuable business opportunities and if not preliminarily or permanently enjoined, Trademark Engine will have unfairly derived and will continue to derive income, profits and business opportunities as a result of its wrongful acts.

85. Pursuant to California Business and Professions Code Section §17200 *et*

*seq.*, Plaintiffs seek an order of this Court preliminarily and permanently enjoining Trademark Engine from continuing to engage in the unlawful, unfair and fraudulent acts or practices set forth herein, as well as compensatory damages and restitution.

### THIRD CLAIM FOR RELIEF

CALIFORNIA FALSE & MISLEADING ADVERTISING IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17500 *ET SEQ.* and § 17600 *ET SEQ.*
(Against all Defendants and DOES 1-50)

86. Plaintiffs incorporate herein by reference paragraphs **1-85** above.

87. Trademark Engine's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to Trademark Engine's non-attorney service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

88. Beginning on a date unknown to Plaintiffs but likely within at least the last year preceding the filing of the Complaint, Trademark Engine, acting directly or indirectly with the intent to induce members of the public to engage Trademark Engine's services and purchase Trademark Engine's products, made or caused to be made, in violation of Business and Professions Code Section §17500, untrue or misleading statements in the state of California via its website, that include, but are not limited to, the following:

89. Representing that customers can "Let the Professionals File Your Trademark Today" while bidding on keywords including "trademark filing", "trademark registration", and misdirecting users to their $69 or $198 non-attorney guided trademark filing service.   In fact, none of Trademark Engine's employees preparing trademark filings are licensed trademark professionals of any kind, much less attorneys.

90. Representing that customers "protect their identity" through Trademark Engine's "Identity Protection Program" (**Exhibit Y**) when, in fact, it waives the right of confidentiality unilaterally for all its customers, even the Plaintiff Raj Abhyanker that purchased this plan by signing away rights on the government form (**Exhibit W**).

91. Falsely implying that Trademark Engine is trustworthy because it was covered in leading news publications, when in fact it never was.   **Exhibit C** is a view of the TrademarkEngine.com home page[10], showing prominently logos of the Wall Street Journal, Forbes, the Huffington Post, CNN, and Mashable, leading a reasonable consumer to believe that Trademark Engine has been written up by editorials of these publications.   Upon reason and belief, Trademark Engine has never been featured in these publications either in print or online.

92. Falsely implying that Trademark Engine is trustworthy because it assisted

---

[10] TrademarkEngine.com homepage, last checked December 24, 2017.

with the protection of famous trademarks. **Exhibit C** shows a rotating collection of recently trademarked companies under the heading "Recently Trademarked Companies" including "threadless", "slack", "stripe", and "soundcloud" leading a reasonable consumer to believe that Trademark Engine has been involved in the protection of trademarks for leading Internet companies.   In fact, upon reason and belief, and upon search of USPTO records, Trademark Engine Entities were never involved in the protection of trademarks for these prominent brands.

93. Trademark Engine uses the search terms "trademark filing", "trademark registration" to redirect customers to Trademark Engine's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce. As a result, Trademark Engine has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Section §17200 *et seq.* of the California Business and Professions Code.

94. Trademark Engine's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

95. Trademark Engine is not a law firm in the United States and is not authorized to practice law in any state.  Trademark Engine is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

96. Trademark Engine has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers searching Google and Bing for "trademark filing" and "trademark registration" to non-attorney trademark landing pages.  This creates unfair competition for Plaintiffs which file all trademarks of their clients before the USPTO with representation by licensed attorneys at LegalForce RAPC Worldwide's offices, in either California or Arizona.  The conduct is unfair and unethical because it misleads customers to selecting Trademark Engine's services instead of those of the Plaintiffs based on fraudulent premises.

97. While using AdWords to trigger and disseminate the misleading advertisements herein alleged, Trademark Engine knew, or by the exercise of reasonable care should have known, that the advertisements were untrue and misleading and so acted in violation of Section §17500 of the Business and Professions Code.  Trademark Engine's advertising further violates Section §17509 and Section §17600 et seq. in that the advertisements herein alleged for the reoccurring "Identity Protection Program" (**Exhibit Y**) includes false and

untrue promises of protecting identity, while Trademark Engine expressly waives this confidentiality and privacy rights unilaterally without customer consent when paying government fees (**Exhibit W**).

98. Trademark Engine's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the USPTO, and filing trademarks before the USPTO.

99. Trademark Engine has been unjustly enriched through its false and misleading advertising.

100. Plaintiffs have lost business caused by the false and misleading Trademark Engine advertisements as a result of at least one customer refusing to do business with Plaintiffs due to the fact that Trademark Engine advertisements falsely implying that Trademark Engine offers trademark filing services with the USPTO in an ethically compliant manner, upon reason and belief.

101. Unless restrained by this court, Trademark Engine will continue with its untrue and misleading advertising, as alleged above, in violation of Section §17500 of the Business and Professions Code and in violation of Section §17509 of the California Business and Professions Code, thus, tending to render judgment in the instant action ineffectual and will cause additional injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

102.   Pursuant to California Business and Professions Code Section §17500, Plaintiffs seek an order of this Court preliminarily and permanently enjoining Trademark Engine from continuing to engage in the false and misleading advertising set forth herein, as well as compensatory damages and restitution.

103.   Trademark Engine's business practices and acts, fully described above, constitute an unlawful practice of law and create false and misleading impressions on potential clients of Plaintiff LegalForce RAPC Worldwide.

104.   Trademark Engine's business model and acts, including but not limited to its website and false and misleading advertising, constitute unfair practices, intentionally aimed at getting ahead of any competitors with lawful business conduct such as that of the Plaintiffs. The acts alleged herein continue to present a threat to Plaintiffs and average consumers, especially the ones with limited resources.

105.   Trademark Engine's acts were, and are, likely to deceive an average consumer, and thus constitute unfair business practices as described herein.

106.   Trademark Engine has engaged in unlawful, unfair and fraudulent business practices and damaged the public and Plaintiffs through the conduct alleged herein.

107.   Plaintiffs are informed, believe, and thereupon allege that Trademark Engine's conduct as described herein was, and is, unlawful, unfair and/or

fraudulent in violation of Section §17000 *et. sq.* of the California Business and Professions Code and has the potential to cause, and has in fact caused, confusion in the marketplace.

108.   Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of Trademark Engine's unlawful acts unless enjoined by this Court.

109.   The conduct herein complained of was extreme, outrageous, surreptitious, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.

110.   Plaintiffs are entitled to an injunction restraining Trademark Engine, and all persons acting in concert with them, from engaging in such further acts of unfair competition, including:

i.   Enjoining non-lawyer assistants of Trademark Engine to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers and pay government fees on behalf of customers who are not represented by a lawyer.

ii.   Enjoining Trademark Engine from purchasing misleading advertising related to "trademark filing", "trademark registration", and related keywords for non-attorney trademark filing services offered by Trademark Engine with

respect to U.S. trademark matters.

## FOURTH CLAIM FOR RELIEF
PROFESSIONAL NEGLIGENCE
(Against Defendant Crabtree, Gray Reed & McGraw and DOES 1-50)

111.   Plaintiffs incorporate herein by reference paragraphs **1-110** above.

112.   Trademark Engine is not a law firm in the United States and is not authorized to practice law in any state.

113.   In addition, upon reason and belief, Defendants owed a duty to Plaintiff Raj Abhyanker when they collected more than $450 in legal service and government fees from Plaintiff Raj Abhyanker without depositing the funds into an IOLTA trust account and conducting a conflict check against existing customers and adverse parties for the EVEREST CLAY REALTORS trademark in the Gray Reed & McGraw P.C. law firm or with customers of Trademark Engine LLC.

114.   Defendants have breached that duty by purposefully engaging in the unauthorized practice of law with respect to the filing of the EVEREST CLAY REALTORS trademark on behalf of Plaintiff Raj Abhyanker respectively while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that professional attorney help will be provided.

115.   Moreover, Defendants breached their duty to Plaintiff Raj Abhyanker

by not supervising non-lawyer assistants Aaron, Jake, Michelle, and others who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for EVEREST CLAY REALTORS.

116.   In addition, Defendants and DOES 1-50, each of them owed a duty to Plaintiff Raj Abhyanker to act at all times in good faith and in Plaintiff Raj Abhyanker's best interests, and had a duty, among other things, to perform the services for which their corporate entity Trademark Engine was retained with reasonable care and skill to prepare and file the EVEREST CLAY REALTORS trademark, to act in the Plaintiff Raj Abhyanker highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary risk or peril.

117.   By providing legal advice in the selection of classification and description of goods and services to Plaintiff Raj Abhyanker using non-lawyer assistants (**Exhibit D**),  Defendants exposed Plaintiff Raj Abhyanker to risk or peril for their EVEREST CLAY REALTORS trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delaying and prolonging in the trademark application process, potentially leading to abandonment of the EVEREST CLAY REALTORS application, and jeopardizing the validity of any resulting registration.

118.   Defendants each breached their neglected fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.   Specifically, Defendants each failed to supervise a non-practitioner assistant employed or retained by or associated with Trademark Engine while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

119.   At all times mentioned here, Defendants failed to exercise the required standard of care and by failing have jeopardized the validity of the Plaintiffs' EVEREST CLAY REALTORS trademark.

120.   Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of Defendants, Plaintiff Raj Abhyanker have sustained damages, among other things loss in legal fees paid to Trademark Engine in the amount of $198 and other amounts which will be determined according to proof at trial.

### FIFTH CLAIM FOR RELIEF
BREACH OF FIDUCIARY DUTIES
(Against Defendant Crabtree, Gray Reed & McGraw and DOES 1-50)

121.   Plaintiffs incorporate herein by reference paragraphs **1-120** above.

122.   Trademark Engine is not a law firm in the United States and is not

authorized to practice law in any state.

123.   Upon reason and belief, Defendants breached their fiduciary duty to Plaintiff Raj Abhyanker when they collected more than $450 in legal service and government fees from Plaintiff Raj Abhyanker without depositing funds into an IOLTA trust account and conducting a conflict check against existing customers and adverse parties for the EVEREST CLAY REALTORS trademark through a corporation they formed and in which they are substantial individual shareholders, Trademark Engine LLC.

124.   In addition, Defendants have breached a fiduciary duty by purposefully engaging in the unauthorized practice of law with respect to the filing of the EVEREST CLAY REALTORS trademark on behalf of Plaintiff Raj Abhyanker respectively while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that attorney help will be provided.

125.   Moreover, Defendants breached their fiduciary duty to Plaintiff Raj Abhyanker by not supervising non-lawyer assistants Aaron, Jake, Michelle as well as unknown others who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for EVEREST CLAY REALTORS.

126. In addition, Defendants and DOES 1-50, each of them owed a fiduciary duty to Plaintiff Raj Abhyanker to act at all times in good faith and in their best interests, and had a duty, among other things, to perform the services for which their corporate entity Trademark Engine was retained with reasonable care and skill to prepare and file the EVEREST CLAY REALTORS trademark, to act in the Plaintiffs' highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary risk or peril.

127. By providing legal advice in the selection of classification and description of goods and services to Plaintiff Raj Abhyanker using non-lawyer assistants (**Exhibit D**), Defendants exposed Plaintiff Raj Abhyanker to risk or peril for his EVEREST CLAY REALTORS trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delay and prolong in the trademark application process, potentially leading to abandonment of the EVEREST CLAY REALTORS trademark applications, and jeopardizing the validity of any resulting registration.

128. Defendants each breached their neglected fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers. Specifically, Defendants each failed to

supervise a non-practitioner assistant employed or retained by or associated with Trademark Engine while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

129.   At all times mentioned here, Defendants failed to exercise the required standard of care and by failing to have jeopardized the validity of the EVEREST CLAY REALTORS trademark application.

130.   Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of Defendants, Plaintiff Raj Abhyanker have sustained damages, among other things loss in legal fees paid to Trademark Engine in the amount of $198 and other amounts which will be determined according to proof at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment as follows:

1.   Temporary and permanent injunctions as defined herein be entered in their favor and against all Defendants, and any company or entity in which Defendants have an ownership or beneficial interest, first temporarily and then permanently restraining and enjoining them, directly or indirectly, on their own or as a partner, or an employee from operating websites known as www.trademarkengine.com,     www.grayreed.com,     www.swiftfilings.com,

www.legalvorce.com, or any other website that attempts to offer any legal services requiring the practice of law including, but not limited to, U.S. trademark filing and prosecution services for office actions, statements of use, oppositions, trademark watch, renewal, opposition, and litigation services.

2.   From further acts of false and misleading advertising and unfair competition that would damage or injure Plaintiffs.

3.   The Court find Trademark Engine's acts of false and misleading advertising and unfair competition to be knowing and willful, and an exceptional case within the meaning of 15 U.S.C. §1117 and California law.

4.   Restitution as allowed under applicable statutes.

5.   Compensatory damages in an amount believed to be in excess of one million dollars ($1,000,000) to be determined at trial.  Plaintiffs' damages are continuing each day as they are unable to compete fairly due to Defendant' unlawful actions, and they will seek treble recovery of all additional damages they incur during the pendency of this lawsuit.

6.   Punitive damages in an amount to be determined at trial.

7.   Legal and equitable further relief as this court finds just and proper.

8.   Permanent exclusion from practice of law before the USPTO and the State of Texas of Defendant Trademark Engine and its owner Travis Crabtree.

9.   Order compelling the USPTO to follow its stated procedures for

notification to affected applicants of an excluded marks for all trademarks in which government fees were paid by the excluded party (**Exhibit X**) including, but not limited notifications to the affected applicant or registrant that:

    i.  Trademark Engine is not entitled to practice before the USPTO in trademark matters and, therefore, may not represent the applicant or registrant.

    ii.  Any trademarks and documents filed by Trademark Engine are *void ab initio*, meaning they were invalid from the start of any action taken by the excluded party.

    iii.  Trademark Engine may not sign checkboxes, pay government fees, prepare trademark applications, assist with responses to the USPTO's actions, authorize examiner's amendments or priority actions, conduct interviews with USPTO employees, or otherwise represent an applicant, registrant, or party to a proceeding before the USPTO.

    iv. All correspondence concerning the application or registration will be sent to the domestic representative if one has been appointed, or, alternatively, and in most circumstances, to the applicant or registrant at his/her address of record.

10.  Plaintiffs be awarded costs, prejudgment interest and attorneys' fees

pursuant to 15 U.S. Code § 7706 of the Federal Trade Commission Act for exceptional case, and other applicable statutes.

Respectfully submitted this Tuesday December 26, 2017.

LEGALFORCE RAPC WORLDWIDE P.C.

/s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker

## **JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial for all causes of action alleged in this Complaint.

Respectfully submitted this Tuesday December 26, 2017.

LEGALFORCE RAPC WORLDWIDE P.C.

By   /s/ Raj V. Abhyanker

Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker