1  HOLLAND & KNIGHT LLP
   Allison D. Martin Rhodes (SBN 261496)
2  Dayna E. Underhill (*pro hac vice*)
   Nicholas B. Melzer (SBN 246536)
3  Daniel P. Kappes (SBN 303454)
   50 California Street, 28th Floor
4  San Francisco, CA 94111
   Telephone: (415) 743-6900
5  Facsimile: (415) 743-6910
   E-mail: allison.martinrhodes@hklaw.com
6  E-mail: dayna.underhill@hklaw.com
   E-mail: daniel.kappes@hklaw.com
7
   Attorneys for  Defendants
8  *Trademark Engine, LLC and Travis Crabtree*

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN JOSE DIVISION**

13

14 | LEGALFORCE RAPC WORLDWIDE, P.C.; | Case No. 5:17-cv-7303-LHK
   | and LEGALFORCE INC.,             |

15 | Plaintiffs,                       | **DEFENDANTS TRADEMARK ENGINE
                                        | LLC AND TRAVIS CRABTREE'S
16 | vs.                               | MOTION FOR SANCTIONS**

17 | TRADEMARK ENGINE LLC; and TRAVIS   | Hearing Date:   August 30, 2018
   | CRABTREE,                          | Hearing Time:   1:30 p.m.
18 |                                    | Before:         Hon. Lucy H. Koh
19 | Defendants.

20

21

22

23

24

25

26

27

28

---

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on August 30, 2018, or as soon thereafter as this matter may

4

be heard, in Courtroom 8 of the United States District Court for the Northern District of California,

5

located at 280 South 1st Street, San Jose, California, Trademark Engine, LLC and Travis Crabtree

6

("Defendants") will, and hereby do, move pursuant to 28 U.S.C. § 1927, to sanction Plaintiffs and

7

their counsel for the bad-faith, vexatious conduct outlined below in the Memorandum of Points and

8

Authorities and supporting documents.  This motion is based on this Notice of Motion; the

9

accompanying Memorandum of Points and Authorities; the pleadings and papers on file in this

10

matter; and such other matters as may be presented to the Court at the hearing.

11

## STATEMENT OF RELIEF SOUGHT

12

Defendants Travis Crabtree ("Mr. Crabtree") and Trademark Engine, LLC seek sanctions

13

against Plaintiffs and/or their counsel pursuant to 28 U.S.C. § 1927.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-i-

DEFENDANTS' MOTION FOR SANCTIONS                                    Case No. 5:17-cv-7303-LHK

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' since-withdrawn Motion for Sanctions for "Discovery Misconduct and Witness Tampering" (the "Tampering Motion") (Dkt. 48) is a perfect example of the type of abusive litigation tactics that this Court has the inherent power to sanction.  The Tampering Motion, filed seven days before it was withdrawn without explanation, had no more basis in fact than it had legal merit.  It was brought in bad faith, and designed simply to harass, threaten, and impugn the character of Defendant Travis Crabtree, a fellow attorney, as well as waste Defendants' (and this Court's) time and resources.  Given the outrageous allegations and accusations of criminal conduct contained in the Tampering Motion, Defendants had no choice but to immediately, and at great expense, investigate Plaintiffs' allegations—all of which turned out to be false.

Plaintiffs' frivolous and defamatory Tampering Motion alleged that Mr. "Crabtree threatened" a "percipient witness" and former Trademark Engine employee, Ms. Jordan Franklin, in "deliberate interference with her cooperation with Plaintiffs and delay Witness' admission as a registered attorney."  Plaintiffs made this allegation and sought sanctions against Mr. Crabtree not based on any evidence, but solely on their "reason and belief."  They made no attempt to confirm the veracity of their assertions.  In truth, as Ms. Franklin attests to in a declaration submitted herewith, she withdrew her acceptance of Plaintiffs' job offer because Plaintiffs duped her into a "job interview," which they secretly-recorded, and then used her statements out of context in pleadings without her knowledge or consent.  She denies that Mr. Crabtree threatened her in any way and denies that she agreed to cooperate with Plaintiffs in any lawsuit.  Had Plaintiffs inquired of Ms. Franklin, they could easily have learned these facts.  Instead, they accused Mr. Crabtree of criminal conduct and filed the Tampering Motion on "reason and belief."

To make matters worse, Plaintiffs withdrew the Tampering Motion without explanation after Defendants spent significant time and money investigating Plaintiffs' salacious allegations (as Plaintiffs no doubt intended they would), leaving their defamatory allegations on the Court's docket for anyone to see, without providing Defendants any opportunity to reveal the truth, or address

1  Plaintiffs' misconduct.  This entire episode reeks of bad-faith and sharp tactics.  Plaintiffs and their
2  counsel should be sanctioned for having engaged in it.

3  **II.      BACKGROUND**

4          According to Plaintiffs' Tampering Motion, a former Trademark Engine Employee, Jordan
5  Franklin, began interviewing with Plaintiffs on March 1, 2018.  Tampering Mot. at 2.  She was
6  offered a job with LegalForce RAPC Worldwide and accepted.  Tampering Mot. at 4.  She was then
7  identified in Plaintiffs' initial disclosures as a percipient witness on March 8, 2018.  Tampering
8  Mot. at 2.  On March 12, 2018, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss in
9  which they recited some of Ms. Franklin's statements for the first time.  On March 19, 2018,
10 Plaintiffs filed their FAC, including quotes attributable to Ms. Franklin, that Plaintiffs now
11 categorize as "admissions."  Tampering Mot. at 3.  *See* FAC, ¶¶ 10, 31.  Thereafter, according to
12 Plaintiffs, on March 21, 2018, Mr. Crabtree contacted Ms. Franklin, "caused her to question her
13 'loyalty, character and morals' and causing her to believe that these traits 'were adversely affected'
14 by . . . providing voluntary evidence to the Plaintiffs with respect to their investigation of the causes
15 of action alleged in the FAC."  Tampering Mot. at 3.  Plaintiffs further alleged that "*[u]pon reason
16 and belief*, Crabtree threatened Percipient Witness in deliberate interference with Percipient
17 Witness' cooperation with the Plaintiffs and delay Percipient Witness' admission as a registered
18 attorney."  Tampering Mot. at 4. (emphasis added).  As a result of this "tampering," Plaintiffs
19 claim, Ms. Franklin "ceased assisting the Plaintiffs and withdrew" from the job opportunity she had
20 accepted.  Tampering Mot. at 4.

21         Here are the facts as attested to by Ms. Franklin in the attached sworn declaration:  Ms.
22 Franklin is a former Trademark Engine employee.  Declaration of Jordan Franklin ("Franklin
23 Decl."), (attached as Exhibit 1 to the concurrently-filed Declaration of Nicholas B. Melzer in
24 Support of Defendants' Motion for Sanctions ("Melzer Decl.")), ¶ 1.  She possesses a Bachelor in
25 Philosophy from Baylor and a Juris Doctor from the Southern University Law Center.  Franklin
26 Decl., ¶ 2.  She has recently taken the Texas Bar Exam and her admission to the Texas State Bar is
27 pending.  Franklin Decl., ¶ 3  She lives in Houston, Texas.  Franklin Decl., ¶ 1.

28

DEFENDANTS' MOTION FOR SANCTIONS                                    Case No. 5:17-cv-7303-LHK

1      On March 1, 2018, Mr. Abhyanker reached out to Ms. Franklin, unsolicited, via a website

2   where she had posted her resume.  Franklin Decl., ¶ 4.  He expressed interest in interviewing her for

3   a position at LegalForce, stating "I would like to interview you for opportunities at LegalForce

4   RAPC Worldwide.  When are you available for an interview?  We are a trademark and patent firm."

5   Franklin Decl., ¶ 4, Ex. A.  Having just sat for the Texas bar and excited about the prospect of a

6   new job opportunity, Ms. Franklin agreed to, and participated in, an interview over the phone with

7   Mr. Abhyanker, Ryan Bethel, and Heather Sapp on March 2, 2018.  Franklin Decl., ¶ 5.   Mr.

8   Abhyanker told Ms. Franklin that he was calling from California.  *Id.*  The call was recorded

9   without Ms. Franklin's knowledge.  *See* Franklin Decl., ¶ 12 ("At no time did Mr. Abhyanker or

10  anyone else tell me that any of my interviews were recorded"); Declaration of Raj V. Abhyanker in

11  support of Plaintiffs' Motion for Sanctions for Discovery Misconduct and Witness Tampering

12  ("Abhyanker Decl."), ¶ 7 (the statements attributed to Ms. Franklin in the FAC were made "in an

13  audio recorded interview").  The following day, Mr. Abhyanker emailed Ms. Franklin, stating "[w]e

14  were impressed with your background and enjoyed speaking with you" and invited her to Tempe,

15  Arizona for an additional, in-person interview.  Franklin Decl., ¶ 6, Ex. B.  In that email, Mr.

16  Abhyanker disclosed that he and his companies were in litigation against LegalZoom and

17  Trademark Engine and others, but assured Ms. Franklin that "we would keep you isolated from

18  these litigations to the extent possible as these litigations are led from our office in Silicon Valley."

19  Franklin Decl., ¶ 7, Ex. B.  Mr. Abhyanker did not disclose the fact that he was also suing Travis

20  Crabtree, Ms. Franklin's long time mentor.  Franklin Decl., ¶ 9.  Ms. Franklin accepted Mr.

21  Abhyanker's offer to travel to Tempe for another interview, and Mr. Abhyanker quickly booked a

22  hotel and a car for her.  Franklin Decl., Ex. B.  After the interview in Tempe, Ms. Franklin accepted

23  an offer of employment as a law clerk with LegalForce, and agreed to move to Tempe, Arizona.

24  Franklin Decl., ¶10.  The contract did not take effect until April 2, 2018.  Franklin Decl., Ex. C.

25      At no time during the interview process was Ms. Franklin told that she was providing

26  evidence for use in Plaintiffs' pleadings, or that she was listed as a witness in any legal document or

27  legal proceeding.  Franklin Decl., ¶11.  She was not told that any of her interviews were recorded.

28  Franklin Decl., ¶ 12.  And, she was not told that Plaintiffs considered her a "cooperating" witness in

1  this litigation.  Franklin Decl., ¶ 13.  To the contrary, Ms. Franklin believed she was simply

2  interviewing for a job.  Franklin Decl., ¶ 14.

3          On March 12, 2018, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss.  In

4  this Motion, they recited Ms. Franklin's audio-recorded statements and inexplicably referenced a

5  fully redacted "pending protective order," marking this exhibit as 'Highly Confidential for

6  Attorneys Eyes Only'"—an exhibit one can only assume was a transcript of Ms. Franklin's job

7  interview.  *See* Dkt. 39 at 16-17; Dkt. 39-1 at 58.  On March 19, 2018, Plaintiffs sent Ms. Franklin

8  an offer of employment and a contract soliciting her commitment to work for Legal Force, having

9  not yet disclosed to her that they had quoted her in their Opposition Motion filed the week before.

10  Franklin Decl., ¶17.  Unaware of the false pretense of the entire interaction, Ms. Franklin accepted

11  the offer.  That same day, Plaintiffs filed the FAC, which included quotes from "a recent interview"

12  with a "non-lawyer assistant who previously worked for Mr. Crabtree and Trademark Engine,"

13  again, a veiled reference to Ms. Franklin's secretly recorded job interview.  FAC ¶ 10.

14          Shortly thereafter, Defendant Travis Crabtree, Ms. Franklin's long-time employer and

15  mentor, spoke with Ms. Franklin about a subject unrelated to Trademark Engine or this litigation.

16  Franklin Decl., ¶ 15.  During the course of that discussion, Ms. Franklin volunteered to Mr.

17  Crabtree that she had she had interviewed with LegalForce and had accepted a job in Tempe.  *Id.*

18  Mr. Crabtree asked if she knew whether her statements were used in the FAC.  Franklin Decl., ¶ 16.

19  She was not, and asked to see a copy.  Franklin Decl., ¶ 17.  Mr. Crabtree agreed to provide her a

20  copy, but did not ultimately do so.  Franklin Decl., ¶¶ 17, 19.  Mr. Crabtree assured Ms. Franklin

21  that he was not upset with her and that he would not take any offense if she chose to pursue

22  employment with Plaintiff.  Franklin Decl., ¶ 18.  Ms. Franklin located a copy of the FAC on her

23  own through online resources.  Franklin Decl., ¶ 19.  After seeing her words used out of context and

24  without her consent, she concluded that she was not interested in working for Plaintiff.  Franklin

25  Decl., ¶¶ 20, 21.  Thereafter, on March 21, 2018, Ms. Franklin emailed Mr. Abhyanker, explaining

26  that she was now aware her statements were used in the litigation against Trademark Engine

27  without her knowledge.  Franklin Decl., ¶ 22.  She withdrew her acceptance of the job offer, and

28  informed him:

> I was willing to proceed with the opportunity until my loyalty, character and morals were adversely affected.  Not only was I made aware of the amended lawsuit, I was informed of quotes used that were directly from me and obtained during the initial phone interview, even though my identity was kept secret. . . .  I feel as though the use of my words for the personal objectives of LegalForce has left me in a compromising and very uncomfortable position.  As a professional, I pride myself on being such and as a human being I pride myself on exhibiting loyalty and good character even when I am the only person in the room.  I would have preferred anything said during what I assumed to be an interview for a job opportunity not be used against someone I have a personal connection with in order to further your litigation objectives especially without my knowledge. . . .  Had I known this was a possible outcome I would have made sure to answer the questions directed more to my knowledge of the subject matter and not any logistics.

Franklin Decl., ¶ 22, Ex. D.  Mr. Abhyanker responded later that day:

> I am sorry to hear this.  I have heard that Ryan and Heather were very impressed with you, and were really looking forward to you joining us.  Attached is our filed FAC, in which we intentionally made sure we left your identity private.  We hope that you reconsider.

*Id*.  Ms. Franklin responded, making her position clear:

> Raj, I respect your passion behind what you do, however I would have preferred to stay out of the litigation entirely and not have my words used to support claims against someone I consider a mentor even though my identity was kept private. Had I known this was a possible outcome I would have made sure to answer the questions directed more to my knowledge of the subject matter and not any logistics.

*Id*.  Other than this correspondence, Ms. Franklin has had no communications with Mr. Abhyanker or anyone else at LegalForce about withdrawing her acceptance of their job offer.  Franklin Decl., ¶ 23.  Plaintiffs did not contact her or attempt to inquire further before making their allegations of threats, witness tampering and interference with contract.  Nowhere in the above email correspondence does Ms. Franklin state or imply to Plaintiffs that Mr. Crabtree threatened her in anyway, including with respect to employment, or her role as a witness in this case, because he did not.  Franklin Decl., ¶ 24 ("At no time did Mr. Crabtree threaten me.  Mr. Crabtree has never threatened me in any way.").  To the contrary, Ms. Franklin believes that she was misled by Mr. Abhyanker, tricked into discussing Trademark Engine and Mr. Crabtree, and offered a job with LegalForce under false pretenses. Franklin Decl., ¶ 26.  Not surprisingly, she did and does not want to work for him.

DEFENDANTS' MOTION FOR SANCTIONS                                        Case No. 5:17-cv-7303-LHK

1       All of these facts were in Plaintiffs' possession at the time Plaintiffs advanced their bad faith

2  Tampering Motion.  Yet, Plaintiffs failed to disclose (i) the entire context of Ms. Franklin's

3  interactions with them, (ii) the true reasons that she stated she was rejecting the offer of

4  employment, and (iii) the complete absence of any statements by Ms. Franklin that amount to

5  threats, coercion, or interference by Mr. Crabtree.  Mr. Abhyanker attested to the Tampering

6  Motion and signed a Declaration under penalty of perjury, with full knowledge of the collective

7  falsity of these allegations, in violation California Rule of Professional Conduct 5-200(a) and (b).

8       Despite the fact that Ms. Franklin told Mr. Abhyanker that she was rejecting the job because

9  her words were used without her knowledge or consent, and despite the fact that Mr. Abhyanker did

10  not ask Ms. Franklin if Mr. Crabtree threatened or interfered with her, and despite the fact that none

11  of the above occurred in the context of Ms. Franklin "cooperating" with Plaintiffs in this litigation,

12  on March 21, 2018, Mr. Abhyanker sent an email to counsel for Defendants entitled "URGENT -

13  Witness Tampering & Third Party Interference of Contract - Travis Crabtree."  Declaration of

14  Allison Rhodes in Support of Defendants' Motion for Sanctions ("Rhodes Decl."), ¶ 2.  In it, Mr.

15  Abhyanker falsely claimed he had learned "Mr. Crabtree has interfered with a key witness in this

16  case, and interfered with a fully executed employment contract with our firm," demonstrating,

17  according to Mr. Abhyanker, "that Mr. Crabtree has tampered with a key witness in this litigation."

18  Rhodes Decl., ¶ 3.  Mr. Abhyanker also included a not-so-veiled threat of criminal charges, stating

19  "[a]s you likely know, In the United States, the crime of witness tampering in federal cases is

20  defined by statute at 18 U.S.C. § 1512, which defines it as 'tampering with a witness, victim, or an

21  informant,'" and demanded an immediate meet and confer.[1]  Rhodes Decl., ¶ 4.  Counsel for

22  Defendants requested additional information.  Rhodes Decl., ¶ 5.  Mr. Abhyanker responded by

23  identifying Ms. Franklin as the witness in question, providing a copy of the employment contract,

24  and claiming that Mr. Crabtree "is praying [sic] on Jordan Franklin's pending admission to the State

25  Bar of Texas."  Rhodes Decl., ¶ 6.

26

27

28

---

[1] California Rule of Professional Conduct expressly forbids attorneys from making such threats.  *See* Cal. Rule of Prof. Conduct 5-100(A) ("A member shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.")

DEFENDANTS' MOTION FOR SANCTIONS              Case No. 5:17-cv-7303-LHK

On March 22, 2018, counsel for Defendants, and Mr. Abhyanker on behalf of Plaintiffs, participated in an ADR conference with ADR Program Staff Attorney/Mediator Tamara Lange. During that conference, Mr. Abhyanker stated to Ms. Lange that Defendants had engaged in "witness tampering" and, as a result, that Plaintiffs refused to engage in any ADR other than Early Neutral Evaluation with Defendants.  Rhodes Decl., ¶ 7.   Later on March 22, 2018, counsel for Defendants informed Plaintiffs that they were looking into the allegations and were not prepared to confer further on the issue at that time.  Rhodes Decl., ¶ 8.  Mr. Abhyanker, armed with the information that Defendant was investigating and expending resources investigating his false allegations, filed the Tampering Motion on March 26, 2018.

Defendants and counsel for Defendants took Plaintiffs' allegations very seriously. Immediately after learning of Mr. Abhyankar's allegations, counsel contacted Ms. Franklin by phone in order to investigate the accusation.  Ms. Franklin agreed to speak with Defendants' counsel.  Rhodes Decl., ¶ 9.   Ms. Franklin was sitting for the MPRE on March 24th and was not available to be interviewed until mid the following week.  Rhodes Decl., ¶ 10.   In light of the seriousness of the matter, on March 29, 2018, Nicholas Melzer, a Holland & Knight partner, flew from Los Angeles to Houston, Texas in order to investigate the allegations.  Melzer Decl., ¶ 2.  He met with Ms. Franklin on March 30, 2018, and was accompanied in the interview by an associate. Melzer Decl., ¶ 3.  At that meeting, Ms. Franklin offered to sign a declaration (which is now submitted in support of this motion).  Melzer Decl., ¶¶ 4-5.  Upon discovering the full extent of Plaintiffs' false and misleading factual basis for the Tampering Motion, counsel worked diligently to prepare an Opposition Motion that would be ready for filing immediately following the deadline to file Defendants' renewed Motion to Dismiss.  Rhodes Decl., ¶ 11.  In the time since Mr. Abhyanker first levied his false claim of witness tampering, counsel for Defendants spent a significant number of hours addressing this issue.  Rhodes Decl., ¶ 12.   The attorney's fees and costs incurred in doing so are readily calculable and prepared for submission to this Court.  Rhodes Decl., ¶ 13.

Prior to filing this Motion, Defendants' counsel offered to meet and confer with Mr. Abhyanker.  Rhodes Decl., ¶ 14.  Specifically, Defendants offered to consider foregoing the filing

1    of this Motion if Mr. Abhyanker would "publish a full retraction of [his] statements and agree to

2    pay all of [Defendants'] attorney fees associated with investigating and responding to [his] untrue

3    allegations."  Mr. Abhyanker again claimed that Mr. Crabtree threatened Ms. Franklin and claimed

4    falsely that "[a]t all times, the witness know [sic] we intended to use all facts in litigation and we

5    were capturing her views for that specific purpose."  Rhodes Decl., ¶ 15; Ex. A.  Then, Mr.

6    Abhyanker inexplicably copied Ms. Franklin on the conferral communications between counsel and

7    made what can only be interpreted as a veiled-threat against Ms. Franklin, stating "[s]he has a bar

8    license pending, and she wants to practice as an attorney."  *Id.*

9    **III.   ARGUMENT**

10          In light of the egregious behavior outlined above and attested to in the attached declarations,

11   Defendants request that the Court levy sanctions against Plaintiffs' counsel, Mr. Abhyankar,

12   pursuant to its inherent authority.  This Court has discretion to impose sanctions pursuant to 28

13   U.S.C. § 1927, which provides:

14          Any attorney or other person admitted to conduct cases in any court of the United
15          States or any Territory thereof who so multiplies the proceedings in any case
             unreasonably and vexatiously may be required by the court to satisfy personally
16          the excess costs, expenses, and attorneys' fees reasonably incurred because of
             such conduct.
17

18   An award under 28 U.S.C. § 1927 requires a finding of "subjective bad faith," where counsel

19   "knowingly or recklessly raise a frivolous argument, or argues a meritorious claim for the purpose

20   of harassing an opponent."  *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th

21   Cir. 2015).  Whether to impose inherent power sanctions is "a determination that rests in the sound

22   discretion of the district court."  *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

23          Bad faith "includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d

24   989, 992 (9th Cir. 2001).  To impose sanctions under its inherent authority, the district court must

25   make an explicit finding to that effect.  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir.

26   2002); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107–08 (9th Cir. 2002) (attorney's

27   knowing and reckless introduction of inadmissible evidence was tantamount to bad faith and

28   warranted sanctions under § 1927 and the court's inherent power); *Fink v. Gomez*, 239 F.3d 989,

993–94 (9th Cir. 2001) (attorney's reckless misstatements of law and fact, combined with an improper purpose, are sanctionable under the court's inherent power).

Plaintiffs' actions in this case bear similarities to a series of recent events before the Honorable Jacqueline Scott Corley.  In *Lee v. Pep Boys*, plaintiff withdrew the bulk of his proposed changes to his deposition testimony, but purposefully waited until the day defendants' motion to strike was due to do so.  *See Lee v. Pep Boys-Manny Moe & Jack of California*, No. 12-CV-05064-JSC, 2015 WL 9268118, at *8 (N.D. Cal. Dec. 21, 2015).  As in this case, plaintiff *was subjectively aware* that defendants were expending time and resources in response to his antics, because Judge Corley had previously provided a clear deadline for defendants' motion to strike.  *Id.*  Judge Corley concluded:

> It is hard to imagine that Plaintiff's counsel's timing in withdrawing the 11 untimely errata were not vexatious for the purposes of Section 1927 sanctions and in bad faith for the purposes of inherent authority sanctions.  While Plaintiff's counsel has repeatedly averred that he had no idea when Defendants were planning to file the motion to strike the errata, the deadline was clear from the Court's order.  (See Dkt. No. 127 at 2.)  Moreover, Plaintiff's counsel has never offered any reasonable explanation of why they waited until the day the motion to strike was due to withdraw the majority of the errata at issue.  Instead, Plaintiff's counsel offers only the statement that co-counsel for Plaintiff conferred over the course of several days before ultimately agreeing to withdraw the 11 proposed changes the day the motion to strike was due. Under the circumstances presented here, despite Plaintiff's counsel's protests to the contrary, the timing implies gamesmanship.

Ultimately, Judge Corley determined in that case that defendants had not established prejudice because of the eleventh hour withdrawal, because the withdrawal "actually saved defendants from incurring further fees in addressing the changes in defendants' reply brief."  *Id.* at *9.  This is not the case we have here, however, because even though Defendants "withdrew" their motion for sanctions, Defendants expended substantial time and resources investigating the demonstrably false and defamatory allegations and preparing an opposition.  Moreover, Plaintiffs' pleading, defamatory false-statements and all, remains a permanent filing in this docket, accessible by anyone with access to the ECF system.  Defendants' prejudicial, vexatious, and meritless Tampering Motion was solely intended to permanently tarnish another attorney's reputation by accusing him of "tampering" with and "threatening" a witness, based on nothing more than a serial litigant's

1    "information and belief."  Mr. Abhyanker engaged in reckless misstatements of law and fact for a

2    transparently improper purpose—to harass and defame Defendants, increase their litigation

3    expenses, and distract Defendants' counsel shortly before the filing deadline of numerous

4    dispositive briefs.  The Court can, and should, sanction this conduct.

5    **IV.    REQUEST FOR SANCTIONS**

6           Defendants request their reasonable fees in pursuit of this matter.  Reasonable attorneys'

7    fees for purposes of a 28 U.S.C. § 1927 motion are based on a "lodestar" calculation.  *Yan v. Lei*,

8    No. 11-CV-01814-RS (JSC), 2018 WL 1382358, at *1 (N.D. Cal. Mar. 19, 2018) (citing *Fischer v.*

9    *SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).  The lodestar is determined by multiplying (1)

10   "the number of hours reasonably expended on the litigation" by (2) "a reasonable hourly rate."

11   *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  If called upon to do so by this Court, Defendants

12   have prepared a lodestar calculation of the fees expended on this issue to date.  Rhodes Decl., ¶ 16.

13   **V.     CONCLUSION**

14          For the reasons stated above, Defendants respectfully request that the Court sanction

15   Plaintiffs and/or their counsel for filing the Tampering Motion in bad faith, which included reckless

16   and defamatory misstatements of law and fact, for a clearly improper purpose.  The Tampering

17   Motion had, on its face, no evidentiary support at the time it was filed.  Withdrawing it does not

18   cure the damage its allegations caused to Mr. Crabtree, both in fees and costs, and to his

19   professional reputation.

20

21   Dated:  April 4, 2018                                          Respectfully submitted,

22                                                                              HOLLAND & KNIGHT LLP

23                                                                              /s/  Allison Martin Rhodes
                                                                                 _____
24                                                                              Allison Martin Rhodes

25                                                                              Attorneys for Defendants
26                                                                              *Trademark Engine, LLC and Travis Crabtree*

27

28