RAJ V. ABHYANKER, California SBN 233284
Email: raj@legalforcelaw.com
WENSHENG MA, California SBN 299961
Email: vincent@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:   (650) 965-8731
Facsimile:    (650) 989-2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C. and
LegalForce, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.; and<br>LEGALFORCE, INC.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TRADEMARK ENGINE LLC; and<br>TRAVIS CRABTREE,<br><br>                    Defendants. | Case No.: 3:17-CV-7303-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' TRADEMARK ENGINE LLC AND TRAVIS CRABTREE'S MOTION FOR SANCTIONS**<br><br>Date:        June 15, 2018<br>Time:        9:00 A.M.<br>Dept.        Courtroom 7<br>Judge:       Honorable Maxine M. Chesney |

1

2

# TABLE OF CONTENTS

**I. INTRODUCTION**                                                                                    **3**

**II. ARGUMENT**                                                                                       **4**

A. Defendants' Motion for Sanctions should be denied because Plaintiffs' counsel Abhyanker
and Plaintiffs acted in good faith at all times with respect to witness Franklin, and legitimately
intended to hire her for openings at the Firm.                                                          4

B. Defendants' Motion for Sanctions should be denied because Plaintiffs had a good faith
reason to bring the Sanctions motion based on the facts known to them prior to bringing the
sanctions motion.                                                                                       6

C. Defendants' Motion for Sanctions should be denied because Plaintiffs counsel Abhyanker
made a good faith effort to Meet & Confer with Defendants' counsel prior to bringing his
Sanctions motion.                                                                                       7

D. Defendants' Motion for Sanctions should be denied because Defense counsel abused the
judicial process by failing to notify Plaintiffs' counsel and failing to Meet & Confer with
Plaintiffs' counsel prior to bringing their Sanctions motion.                                           8

E. Defendants' Motion for Sanctions should be denied because Plaintiffs provided valid reasons
why it withdrew its motion for judicial efficiency and to save judicial resources, and withdrew
its motion in a timely manner despite it having significant merits.                                     8

F. Defendants' Motion for Sanctions should be denied because recent information reveals that
the ████████████████████████████████████████████████
████████████████████████████████████                                                                   9

**II. CONCLUSION**                                                                                     **14**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' TRADEMARK ENGINE LLC
AND TRAVIS CRABTREE'S MOTION FOR SANCTIONS
CASE NO.: 3:17-CV-7303-MMC

1    Plaintiffs LegalForce RAPC Worldwide, P.C. and LegalForce, Inc. oppose the

2   Defendants' Motion for Sanctions ("Sanctions") filed by defendants Trademark Engine LLC

3   and Travis Crabtree on April 4, 2018 (Dkt. 60).   The plaintiffs file this Opposition under seal to

4   protect the percipient witness Jordan Franklin, whose identity defendants have inserted into the

5   public record through their Motion for Sanctions, as well as the anonymous caller described

6   herein.

7   **I. INTRODUCTION**

8    Defendants' motion for sanctions is brought in response to plaintiff's dismissing their

9   own motion for sanctions against defendant Crabtree (Dkt. 48).    Defendants state that the

10  plaintiffs brought their motion in bad faith and engaged in vexatious litigation by bringing their

11  motion only to drop it prior to an opposition by the defendants.    The defendants ignore the fact

12  that plaintiffs would not have brought their motion in the first place had the counsel for the

13  defendants timely met and conferred.  Only after waiting for four days after asking for a meet

14  and confer, and being denied that opportunity, did the plaintiffs bring their motion for sanctions.

15   Moreover, at all times, the plaintiffs were honest with the percipient witness and had

16  good faith reasons for bringing their motion for sanctions.  As the Declarations of Sapp, Bethell,

17  and Abhyanker show, the plaintiffs acted, at all times, in good faith with respect to Franklin.

18  Moreover, plaintiffs continue to believe that ███████████████████████████

19  ████████████████████████████████████████████████████████

20  ███████  There are no facts to support that Franklin was provided an opportunity in writing to

21  seek the assistance of independent counsel prior to defense counsel securing a declaration from

22  her.    Given that, and the anonymous call received hours after the defendants unwittingly

23  placed Franklin's name in public view for the first time through their filing of a sanctions

24  motion, plaintiffs believe that if anyone should be sanctioned it should be the defendants and

25  defendants' counsel for engaging in sharp and bad faith litigation tactics such as taking the

26  expensive step of flying to Houston with a firm partner and an associate to get statement from

27  Franklin instead of a simple phone call after advising Franklin of seeking independent counsel

28  in writing.

## II. ARGUMENT

    **A.**    **Defendants Motion for Sanctions should be denied because Plaintiffs' counsel Abhyanker and Plaintiffs acted in good faith at all times with respect to witness Franklin, and legitimately intended to hire her for openings at the Firm.**

Attorney Heather A. Sapp ("Sapp"), a Senior Trademark Attorney/Training & Communications Manager of LegalForce RAPC Worldwide P.C., recommended that plaintiffs extend Franklin an interview for the position of Law Clerk at LegalForce RAPC. (Sapp Decl., ¶¶ 1-4) At the time that Sapp made the recommendation, Franklin had on her LinkedIn profile that she was "Actively seeking an opportunity." (Exhibit F). Sapp did not consider the fact that Franklin was a former employee of the defendant, instead basing her decision on Franklin's extensive trademark experience. (Sapp Decl., ¶ 4). On March 2, 2018, Sapp, attorney Ryan Bethell ("Bethell"), and attorney Raj Abhyanker ("Abhyanker") spoke by telephone with Franklin to interview her for a job opening at the firm's Tempe office. (Sapp Decl., ¶ 5).

The primary goal for the call was to interview Franklin for a current opening at the LegalForce RAPC office in Tempe, Arizona for a law clerk. (Abhyanker Decl., ¶ 6). The Firm's phone lines have a greeting which indicates that all calls may be audio recorded for training purposes (Abhyanker Decl., ¶ 7). The interview with Franklin was audio recorded. (Abhyanker Decl., ¶ 7).

During the interview, Abhyanker informed Franklin that plaintiffs are in litigation around businesses like Trademark Engine and LegalZoom because plaintiffs have a higher cost structure, and that Franklin would need to be aware of those litigations, but that her role, if she was hired, would not involve those litigations because she would be hired by the Tempe, Arizona office, not the Silicon Valley office. (Abhyanker Decl., ¶ 8 & *Transcript* in Exhibit A, Page 21, lines 3-11). Moreover, the primary goal of the interview was to interview Franklin, not take testimony from her as evidenced by the transcript of the interview itself. (*Transcript* in Exhibit A). In fact, at the time the interview with Franklin occured, the plaintiffs had no reason to believe that her mentor was Crabtree based on Franklin's resume or Linkedin profile (Exhibit F) or that she would have any testimony that would help to establish any facts not

1      already known by the plaintiffs with respect to this litigation.  (Exhibit F).

2      **During the interview, after informing Franklin of pending litigations, Abhyanker**

3      **asked if that made sense to Franklin and if that was okay with her.  (Abhyanker Decl., ¶ 9**

4      **& *Transcript* in Exhibit A, Page 21, lines 12-16).**

5      **Franklin responded "Yes sir, that's absolutely fine."**  (Abhyanker Decl., ¶ 10 &

6      *Transcript* in Exhibit A, Page 21, lines 17).

7      As the call progressed, Sapp concluded that Franklin would be an excellent candidate for

8      employment based upon her energy and enthusiasm for trademark law. (See Sapp Decl., ¶ 5) As

9      a former USPTO examining attorney -- for more than a decade before going into private

10      practice -- quality training and proper understanding of trademark law and procedure was very

11      important to Sapp. (See Sapp Decl., ¶ 5) It was clear that Franklin had both a strong command

12      of trademark law and a passion for the field. (See Sapp Decl., ¶ 5) For this reason, midway

13      through the call, Sapp decided to make a positive recommendation to Ryan Bethell and Raj

14      Abhyanker to proceed with an in person interview with Sapp in Tempe. (See Sapp Decl., ¶ 5)

15      Based on the information that Franklin voluntarily revealed, Abhyanker placed Franklin

16      as a witness on the initial disclosures provided to defense counsel on March 8, 2018. (See

17      Abhyanker Decl., ¶ 11).   On March 19, 2018, Franklin interviewed at Plaintiffs' Tempe office

18      with Ryan Bethell and Sapp. (See Sapp Decl., ¶ 6) This in-person interview was not audio

19      recorded. (See Sapp Decl., ¶ 6). Sapp was directly involved in the interview and made a

20      recommendation to Bethell leading to a positive hiring decision. (See Sapp Decl., ¶ 6)

21      Bethell made the final decisions on hiring of Franklin at the Firm's offices in Tempe,

22      Arizona. (See Bethell Decl., ¶ 4).  Bethell's decision to hire Franklin was based solely on the

23      merits of her application materials and interviewing skills. (See Bethell Decl., ¶ 8). Franklin was

24      extended an offer of employment at the LegalForce RAPC Worldwide office in Tempe, Arizona

25      ("Tempe Office") on March 19, 2018. (See Bethell Decl., ¶ 9).

26      The Tempe Office is the US Operational Headquarters of LegalForce RAPC Worldwide,

27      focused entirely on providing trademark related services to RAPC's clients. (See Bethell Decl.,

28      ¶ 10). The Tempe Office does not play an active role in any litigation to which Plaintiffs are a

1   party. (See Bethell Decl., ¶ 11). In Franklin's role as a Law Clerk of Legalforce RAPC
2   Worldwide in the Tempe Office, Franklin would not participate in the matter now pending
3   before this court. (See Bethell Decl., ¶ 12).

4         On March 20, 2018 at 9:43 A.M., Franklin accepted an offer for employment from
5   LegalForce RAPC Worldwide, and a contract was fully executed that morning as shown in
6   Exhibit B. (See Sapp Decl., ¶ 7). On Wednesday March 21, 2018 at 11:37 P.M. California
7   Time, Franklin withdrew from her accepted and signed Employment Contract with the Plaintiffs
8   by sending the email shown in Exhibit C. (See Sapp Decl., ¶ 8).

9    **B.    Defendants Motion for Sanctions should be denied because Plaintiffs had a
10        good faith reason to bring the Sanctions motion based on the facts known to
          them prior to bringing the sanctions motion.**

11        Based on Franklin's email in Exhibit C in which she said "*however, after speaking with
12   *my mentor this morning I was made aware of the amended complaint against him and his*
13   *company. I was willing to proceed with the opportunity until my loyalty, character and morals*
14   *were adversely affected*", all three attorneys Sapp, Bethell, and Abhyanker understood
15   Franklin's email excerpt above to mean that her mentor was "Crabtree" and that she was
16   threatened by him (See Sapp Decl., ¶ 9, Bethell Decl., ¶ 15, Abhyanker Decl., ¶ 21, &
17   *Transcript* Exhibit A, Page 9, lines 25-26).

18        It should be noted that Defense counsel conveniently left out the first part of the sentence
19   above in their Motion for sanctions in an effort to mislead the Court. (See: Document 60, Page 7
20   of 12, lines 1-8 in which Defense counsel deceivingly omits these initial sentences of Franklin's
21   email).

22        Sapp understood Franklin's email excerpt above to mean that her mentor was Crabtree
23   because Franklin mentioned this both on her initial call and during the in-person interview.
24   Moreover, Sapp also assumed that Mr. Crabtree was the person who questioned Franklin's
25   loyalty, character and morals based on the email above, and that Mr. Crabtree was implying that
26   taking this position with RAPC might affect the type of character and fitness recommendations
27   he would proffer to the State Bar of Texas. (See Sapp Decl., ¶ 9).

28        Plaintiffs brought their initial sanctions motion in good faith only after all three attorneys

1   Sapp, Bethell, and Abhyanker assumed that Mr. Crabtree was the person who questioned

2   Franklin's loyalty, character and morals based on the email above, and after giving the defense

3   counsel an opportunity to meet and confer and cure. (See Sapp Decl., ¶ 9, Bethell Decl., ¶ 15,

4   Abhyanker Decl., ¶¶ 16-21).

5           **C.      Defendants Motion for Sanctions should be denied because Plaintiffs counsel
                    Abhyanker made a good faith effort to Meet & Confer with Defendants
6                   counsel prior to bringing his Sanctions motion.**

7           On Wednesday March 21, 2018 at 1:11 P.M., California Time, Abhyanker informed

8   Dayna Underhill and other defense counsel of the tampering by Crabtree of Franklin's

9   communications by what Abhyanker perceived to be threats to Franklin causing her to withdraw

10  from an accepted Employment contract. (See Abhyanker Decl., ¶ 17). On March 21, 2018 at

11  3:58 P.M. California Time, Allison Martin Rhodes, Co-Chair of the Legal Profession Team at

12  Holland & Knight ("Rhodes") responded to Abhyanker and requested more details so that they

13  could consider the concerns or be "prepared for a productive meet and confer." (See Abhyanker

14  Decl., ¶ 18).

15          On Wednesday March 21, 2018 at 6:19 P.M., California Time, Abhyanker provided

16  opposing counsel with detailed facts and requested again to meet & confer, and provided a 24

17  hour opportunity to cure. (See Abhyanker Decl., ¶ 19).

18          Instead of meeting and conferring to resolve Abhyanker's concerns, and instead of

19  denying that Crabtree tampered with the witness, on Thursday March 22, 2018 at 6:50 P.M.,

20  California Time, opposing counsel responded saying "We are looking into your allegations and

21  not prepared to confer further on this issue at this time." (See Abhyanker Decl., ¶ 20).

22          Abhyanker waited an additional four days prior to bringing a motion for sanctions on

23  Monday March 26, 2018. Abhyanker left the identity of Franklin private in this motion for

24  sanctions. Abhyanker believes this motion for sanctions could have been entirely avoided had

25  opposing counsel agreed to meet & confer with Abhyanker in good faith. (See Abhyanker

26  Decl., ¶ 21).

27  ///

28  ///

1
2
3
4
5

On April 2, 2018, after reading the footnote in Defendants' motion to dismiss, that Defendants could have explained to Abhyanker proactively when Abhyanker asked to meet and confer or anytime prior to bringing their motion to dismiss, Abhyanker decided to withdraw his motion for sanctions to save judicial resources and prevent a side show. (See Abhyanker Decl., ¶ 22).

6
7
8

Despite dropping Plaintiffs' motion for sanctions, at all times, including at the time of drafting this opposition, Abhyanker continues to believe that Crabtree tampered with witness Franklin. (See Abhyanker Decl., ¶ 23).

9
10
11

**D.**    **Defendants Motion for Sanctions should be denied because Defense counsel abused the judicial process by failing to notify Plaintiffs counsel and failing to Meet & Confer with Plaintiffs counsel prior to bringing their Sanctions motion.**

12
13
14
15

On April 3, 2018, defense counsel unilaterally requested a sanctions hearing with the clerk without informing Abhyanker. Abhyanker exchanged emails with defense counsel why they were not honestly and openly communicating with Abhyanker shown in Exhibit D, and requested that they do so moving forward. (See Abhyanker Decl., ¶ 24).

16
17

Defense counsel did not respond to Abhyanker's last email on this subject. (See Abhyanker Decl., ¶ 24).

18
19
20

**E.**    **Defendants Motion for Sanctions should be denied because Plaintiffs provided valid reasons why it withdrew its motion for judicial efficiency and ot save judicial resources, and withdrew its motion in a timely manner despite it having significant merits.**

21
22
23
24
25

On April 2, 2018, after reading the footnote in Defendants' motion to dismiss, that Defendants could have explained to Abhyanker proactively when Abhyanker asked to meet and confer or anytime prior to bringing their motion to dismiss, Abhyanker decided to withdraw his motion for sanctions to save judicial resources and prevent a side show. (See Abhyanker Decl., ¶ 22).

26
27
28

Despite dropping Plaintiffs motion for sanctions, at all times, including at the time of drafting this opposition, Abhyanker continues to believe that Crabtree tampered with witness Franklin. (See Abhyanker Decl., ¶ 23).

1       In Plaintiff's notice for voluntary dismissal of its sanctions motion, Plaintiffs clearly

2   stated their reasons for dropping their sanctions motion was for the sake of judicial economy

3   and judicial efficiency. (Document 55 Filed 04/02/18 Page 2 of 3).

4       **F.    Defendants Motion for Sanctions should be denied because recent**

5           **information reveals that the** ████████████████████████████████

6   ████████████

7       Within hours of filing their Sanctions motion on Wednesday April 4, 2018 at 5:31 P.M.

8   in which Franklin's name was first put into the public record, Plaintiffs received an anonymous

9   phone call from ████████████████████████████████████████████████████

10   ████████████████ (Hidalgo Decl. ¶ 6-9, Bethell Decl. #2 ¶ 6). ████████████

11   ██████████████████████████ (See Bethell Decl. #2, ¶ 7, See Hidalgo Decl., ¶

12   6). ████████████████████████████████████████████████████

13   ████████████████████ (See Bethell Decl. #2, ¶ 8). ████████████████

14   ██████████████████████ (See Bethell Decl. #2, ¶ 11). ████████████

15   ████████████████████████████████████████████████████

16   ████████████████████ (Bethell Decl. #2 ¶ 13 & Exhibit E).

17       Specifically, Steve Hidalgo, a Customer Service Manager of LegalForce, Inc. received a

18   call the very next morning at Thursday April 5, 2018, at approximately 10:19 A.M. from a

19   blocked telephone number at the Firm phone number of 650-965-8731 from a ████████████

20   ████████████████████████████████ (See Hidalgo Decl., ¶ 5)   The caller told

21   Hidalgo that ████████████████████████████████████████████████████

22   ████████ (See Hidalgo Decl., ¶ 7, 9).

23       Hidalgo forwarded this telephone call to attorney manager Ryan Bethell. (See Hidalgo

24   Decl., ¶ 10).   On Thursday April 5, 2018, at approximately 10:20 A.M., Bethell was forwarded

25   a telephone call from Steve Hidalgo, who operates the Firm's telephone switchboard. (See

26   Bethell Decl. #2, ¶ 4).   The caller identification on Bethell's phone read "anonymous,"

27   indicating that the number that was source of the call was being blocked.  (See Bethell Decl.

28   #2, ¶ 5). ████████████████████████████████████████████ (See Bethell

1   Decl. #2, ¶ 6). ███████████████████ ████████████████████████

2   ███████████████████████ (See Bethell Decl. #2, ¶ 9).  The caller told Bethell ██████████████

3   ███████████████████████████████████████████ despite Bethell's

4   repeated requests.  (See Bethell Decl. #2, ¶ 10). ███████████████████████████

5        The caller said that ████████████████████████████████████████████

6   ███████████████████████████████ (See Bethell Decl. #2, ¶ 12).  The caller said that

7   ██████████████████████████████████████████████████████████████████████

8   ██████████████████████████████████ (See Bethell Decl. #2, ¶ 13). ████████████████

9        The caller claimed that █████████████████████████████████

10  █████████████████████████████ (See Bethell Decl. #2, ¶ 14).  The caller said that the

11  real owners of Trademark Engine LLC are the owners of the Lincoln Academy that were

12  previously represented by Crabtree.   (See Bethell Decl. #2, ¶ 15).  Shortly after the call, Bethell

13  memorialized his contemporaneous notes from the call on paper, which is attached as Exhibit E.

14  (See Bethell Decl. #2, ¶ 16).  Bethell immediately informed Abhyanker of his call at around 11

15  A.M. (See Bethell Decl. #2, ¶ 17).

16        After researching the web, Bethell believes the litigation referenced by the caller was

17  brought by the Texas Attorney General for operating websites selling fraudulent diplomas in

18  which the business was shut down and a $1.4M settlement was paid to the State of Texas, upon

19  information and belief.  (Cause No. 2014-14329). (See Bethell Decl. #2, ¶ 18, and complaint in

20  Exhibit G).

21         Upon further research based on the call Hidalgo and Bethell received, the undersigned

22  counsel researched additional facts.   On March 17, 2014, the State of Texas filed a complaint

23  *The State of Texas v. Lincoln Academy, Rylex, LLC (d.b.a., Brownstone Academy)* et. at., (Cause

24  No. 2014-14329 in the District Court of Harris County, Texas, 295th Judicial District).   The

25  defendants included numerous members of the Lubbat family including Charles J. Lubbat J.D.,

26  David Lubbat, Catherine Lubbat, Nancy Lubbat, and Costandi Lubbat.

27  ///

28  ///

The State of Texas wrote in its complaint that:

"Defendants operate a fraudulent online high school diploma mill, headquartered in Houston, Texas, known as Lincoln Academy, which **sells bogus online high school diplomas to consumers nationwide**, including Texas, for fees starting at $299"

"Defendants claim to provide an "official" and "accredited" high school diploma that consumers can use to apply to college, enlist in the military, or apply for a job. But Defendants' program provides no coursework, no instruction, and no legitimate textbooks or reference materials. **Despite Defendants' claims that students will have access to "state-certified teachers" and "24/7 tutoring services," in fact consumers receive little or no value from the goods and services purchased from Defendants**."
(See Exhibit G, pg. 9, para. 24, *emphasis added*).

The State of Texas commented in its complaint in a heading that "Defendants Routinely Have Attempted To Obscure The Actual Ownership Of Their Business Interests."   (See complaint in Exhibit G page 18)  The State of Texas went on to say:

"Defendants have filed false information with the Texas Secretary of State, misrepresenting to the Secretary of State who owns one or more of the Entity Defendants, thus obscuring the identities of the parties actually owning the business from consumers. (Acosta Aff. A-IS, A-16) **Defendants also filed an assumed name certificate in a remote county where no business operations exist to deceive consumers as to the location of the sham accreditation business**."  (See complaint in Exhibit G page 18-19, para. 41-42)

Charles Joseph Lubbat J.D. publicly listed himself as the "Head of School" for the Brownstone Academy, using his J.D. qualifications as a suffix.   Charles J. Lubbat J.D. is an expert front-end developer, and online digital marketer who graduated from the Texas Southern University Thurgood Marshall School of Law on December 14, 2013 with a Juris Doctorate degree while simultaneously under investigation by the State of Texas.   However, Charles J. Lubbat J.D. is not qualified to practice law in any state, upon reason and belief.

Another one of these defendants, Costandi Lubbat was criminally charged for Fraud against the United States of America in a RICO (Racketeering Act) case filed on March 5, 2013 a year prior to the settlement in the Lincoln Academy case (See: 2:13-cv-00474, See complaint in Exhibit G, and settlement in Exhibit H).       Costandi Lubbat was sentenced by the United

1    States to "5 years probation, with conditions. Defendant shall pay restitution in the amount of

2    $156,200 at a rate of at least $1,000 per month, beginning 30 days from this date. Defendant

3    ordered to pay a fine of $5,000 after restitution is completed." (See: 2:13-cv-00474).

4        On December 20, 2013, Costandi Lubbat filed a motion to release himself from probation

5    (Doc. 154, 2:13-cv-00474).   In this motion, Costandi Lubbat represented that he "retired from

6    working with his construction company" because of health ailments and that he had been "an

7    exemplary probationer."   On January 2, 2014, Judge Patricia Miland of the United States

8    District Court, Lake Charles Division, ordered the termination of Costandi Lubbatt's supervised

9    release and cited that he is in declining health.

10       The State of Texas specifically listed Costandi Lubbat as a defendant in the Lincoln

11   Academy litigation because Charles J. Lubbat J.D. and other defendants were allegedly

12   channeling profits to Costandi Lubbat to hold their ill gotten gains.    Specifically, the State of

13   Texas alleged that Costandi Lubbat should be "a relief defendant because on information and

14   belief he holds ill-gotten gains derived from the illegal activities of Defendants that are the

15   subject matter of this lawsuit and, therefore, he is subject to any court orders, injunctions, or

16   equitable disgorgement orders from the Court."   (See complaint in Exhibit G page 6, para. 17).

17       Months after the ordered ending of Costandi Lubbatt's probation, the online websites of

18   the Lincoln Academy were ordered to shut down, and Costandi Lubbat and Charles J. Lubbat

19   J.D. were among members of the Lubbat family who were ordered to pay the State of Texas

20   $1.4 million in damages on July 31, 2014.

21       On August 4, 2014, a final settlement was reached in the Lincoln Academy litigation, just

22   months after Charles J. Lubbat's graduation from law school and Costandi Lubbatt's supervised

23   release.   Defendant Crabtree was their lead counsel in this settlement as a senior attorney of

24   Gray Reed & McGraw P.C. for both Charles J. Lubbat J.D. and Costandi Lubbat, and Crabtree

25   personally signed the settlement on behalf of all defendants including Costandi Lubbat and

26   Charles J. Lubbat (See Exhibit H).

27       Next, less than a year on or about July 6, 2015, attorney Crabtree joined an online

28   business filing service called Swyft Filings LLC with the very same "Head of School" of the

1  Brownstone Academy, Charles J. Lubbat J.D. in the Lincoln Academy litigation.   Swyft
2  Filings LLC is a website that offers incorporation services.

3  Charles J. Lubbat J.D. provided defendant Crabtree with skills in paid-search, marketing
4  and web development which Crabtree lacked and the association enabled him to embark on his
5  new online schemes. Once Gray Reed & McGraw discovered Crabtree's association with their
6  former client Charles J. Lubbat J.D. who was the "Head of School" of the fraudulent online
7  school the Brownstone Academy in the Lincoln Academy litigation through a new startup
8  called Swyft Filings LLC, Gray Reed & McGraw withdrew its Class C Shareholder offer to
9  Crabtree prior to the effective date of July 1, 2016, despite issuing a press release months earlier
10 announcing Crabtree as a new Shareholder. (J. Cary Reed Decl., ECF Doc. 24-1, ¶¶ 3-4). On
11 information and belief, Crabtree expanded his association with Charles J. Lubbat and family
12 when he launched the non-attorney online trademark filing service www.trademarkengine.com
13 on or about August 2016, about a year after his association with Swyft Filings LLC.

14 Indeed, Crabtree has declared that he is "a minority" member of the three member
15 Trademark Engine LLC. (Doc. 26-2)  Similar to the State of Texas's claims in the Lincoln
16 Academy/Brownstone Academy case, Trademark Engine LLC has "attempted to obscure the
17 actual ownership of their business interests"  because  there are *no public records* anywhere to
18 be found that name any of the two other members of Trademark Engine LLC besides Crabtree.
19 Based on the anonymous phone call from a person threatened and scared into silence, the other
20 two members appear to be Charles J. Lubbat and another unknown member of the Lubbat
21 family.   Moreover, the only contact former employee Franklin had with anyone at Trademark
22 Engine LLC in a management capacity was Crabtree.    Upon reason and belief, similar to the
23 Lincoln Academy case, Costandi Lubbat is believed to be holding ill-gotten gains derived from
24 the illegal activities of Trademark Engine LLC.  For this reason, it is requested that the court
25 order defendant Trademark Engine LLC to immediately disclose its true parties of interest and
26 ownership.
27 ///
28 ///

1

## II.   <u>CONCLUSION</u>

2       For all the reasons set forth above, Defendants Trademark Engine LLC and Travis

3   Crabtree's Motion for Sanctions should be denied, defendant Crabtree should be ordered to

4   prevent any further contact with his former employees including Franklin, and Trademark

5   Engine LLC should be ordered to reveal who is are the true parties of interest and members in

6   Trademark Engine LLC.

7

8   Dated: April 24, 2018                              Respectfully submitted

9                                                       LEGALFORCE RAPC WORLDWIDE P.C.

10

11                                                      /s/ Raj V. Abhyanker
                                                        Raj V. Abhyanker (233284)
12                                                      Attorney for Plaintiffs: LegalForce RAPC
                                                        Worldwide, P.C. and LegalForce, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' TRADEMARK ENGINE LLC
AND TRAVIS CRABTREE'S MOTION FOR SANCTIONS
CASE NO.: 3:17-CV-7303-MMC