RAJ V. ABHYANKER, California SBN 233284
Email: raj@legalforcelaw.com
WENSHENG MA, California SBN 299961
Email: vincent@legalforcelaw.com

LEGALFORCE RAPC WORLDWIDE, P.C.
1580 W. El Camino Real, Suite 10
Mountain View, CA 94040
Telephone:    (650) 965-8731
Facsimile:    (650) 989-2131

Attorneys for Plaintiff,
LegalForce RAPC Worldwide, P.C.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C., <br><br> Plaintiff, <br><br> v. <br><br> TRADEMARK ENGINE LLC; TRAVIS CRABTREE; and DOES 1-50, INCLUSIVE, <br><br> Defendants. | Case No.:  3:17-CV-07303-MMC <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> 1.  DECLARATORY JUDGMENT, 28 U.S.C. § 2201; <br> 2.  FALSE OR MISLEADING ADVERTISING 15 U.S.C. § 1125(a); <br> 3.  UNFAIR COMPETITION, CAL. BUS. & PROF. CODE § 17200, ET SEQ. <br><br> **JURY TRIAL DEMANDED** |

1.   LegalForce RAPC Worldwide, P.C. ("Plaintiff" or "RAPC") complains and alleges against defendant Trademark Engine LLC ("TE") and defendant Travis Crabtree ("Crabtree") (collectively "Defendants") as follows:

## NATURE OF ACTION

2.   RAPC brings this action to stop TE and Crabtree from misrepresenting the nature and characteristics of its trademark services by false or misleading advertising, and from unfairly competing with RAPC by providing the services unlawfully and unfairly. RAPC also brings this action to recover losses caused by TE and Crabtree's unlawful and unfair business practices.

3.   RAPC and TE compete to provide individuals and small businesses with affordable access to legal services that allow them to protect their marks through filings with the United States Patent and Trademark Office ("USPTO"). Both use technology and innovation to provide these services for hundreds of dollars instead of the thousands of dollars that traditional law firms charge.

4.   But while RAPC innovated within the existing legal framework that protects consumers from getting bad legal advice, TE and Crabtree employ unscrupulous, unlawful and unfair practices in its business. TE and Crabtree have gained substantial cost advantage over RAPC because TE and Crabtree employ non-attorneys to provide legal advice to customers. RAPC contends that TE and Crabtree's entire trademark business is built upon the foundation of the unauthorized practice of law.

## THE PARTIES

### The Plaintiff

5.   RAPC is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar. The firm practices patent and trademark law before the USPTO with a principal place of business located at 1580 W. El Camino Real, Suite 10, Mountain View, CA 94040, and a law office located at 446 E. Southern Ave, Tempe, AZ 85282.

### The Defendants

6.   Trademark Engine LLC is a Delaware corporation with a principal place of business at

1   12605 E. Freeway, Suite 540, Houston, TX 77014. It is not a law firm in the United States and

2   is not authorized to practice law in any state. TE operates website TrademarkEngine.com to

3   advertise, promote and provide trademark filing related services.

4       7.  Travis Crabtree ("Crabtree") is an attorney licensed in the state of Texas. He is a

5   co-founder, minority member and a managing member of Trademark Engine LLC. His principal

6   place of business is located at 12605 E. Freeway, Suite 540, Houston, TX 77014.

7       8.  DOES 1-50 are entities that participated in the transactions complained of herein in

8   ways which are unknown to Plaintiff. The true names, capacities, nature, and extent of

9   participation in the alleged activities by DOES 1-50, inclusive, are unknown to Plaintiff and

10  therefore Plaintiff sues these defendants by such fictitious names. Plaintiff will amend the

11  complaint to allege their true names and capacities when ascertained.

12                          **JURISDICTION AND VENUE**

13  **Subject Matter Jurisdiction**

14      9.  This Court has subject matter jurisdiction under federal question (28 U.S.C. § 1331)

15  because Defendants violated the Lanham Act. This court has supplemental jurisdiction over the

16  California UCL claim under 28 U.S.C. § 1367 because the UCL claim arises from the same

17  nucleus of operative facts as the Lanham Act claim.

18      10. Alternatively, if this Court finds that it has no federal question jurisdiction over the

19  Lanham Act claim, Plaintiff requests this Court to exercise diversity jurisdiction (28 U.S.C. §

20  1332) over the California UCL claim because Plaintiff and Defendants are citizens of different

21  States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

22  and costs.

23  **Personal Jurisdiction**

24      11. This Court has specific personal jurisdiction over Defendants because they have

25  minimum contacts with the State of California. They purposefully directed their advertisements

26  or promotions at consumers in California. These activities are intentional acts expressly aimed

27  at California that are likely to cause harm in California. RAPC's claims arose out of these

28  activities and exercising jurisdiction over Defendants would not be unreasonable. Moreover,

Defendants have waived their objections to personal jurisdiction. *See* Dkt. 41 at 2.

12. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred in this district. It is convenient for third-party witnesses to testify in this Court to prove the alleged illegal activities of all defendants. Judges in this district are more familiar with California laws than in judges in other states. In addition, California has a general policy interest in protecting residents harmed by violations of California law by out-of-state actors such as Defendants. Moreover, Defendants have waived their objections to improper venue by not raising the objections in their first Rule 12 response. *See* Dkt. 41.

## FACTUAL ALLEGATIONS

### I. TE's False And Misleading Statements

13. The Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits any person from using false or misleading statements to misrepresent the nature or qualities of his services in commercial advertising or promotion. TE violated the Lanham Act by making the following false and/or misleading statements on its website.

#### A. Using the word "professional" to represent the nature of TE's services

14. TE uses the word "professional" in at least two advertising statements to misrepresent the nature and quality of its trademark filing services. Apparently, TE attempts to use "professional" to represent that the service is provided by its staff who are "conforming to the technical or ethical standards of a profession."[1] As alleged in sections III and IV below, since TE's trademark filing services are unlawful, using the word "professional" to represent the nature of the services is both false and misleading.

15. **Statement #1:** "Let the Professionals File Your Trademark Today!" is one of TE's advertising statements on Google. *See* **Exhibit A**. When a potential customer types "trademark filing" in Google's search bar, the advertisement would appear at the second paid position in the search result. *See Id.* The Google search pages presented in this exhibit were recorded on December 24, 2017.

---

[1] *See* Definition of "professional" by Merriam-Webster: https://www.merriam-webster.com/dictionary/professional.

16. In addition, since August 2016, Statement #1 has been appearing in at least 270 different advertisements purchased by TE on Google. A sample of these Google advertisements are shown in **Exhibit B**. For better illustration, some of the Google advertisements are shown below:



17. **Statement #2:** "Professional Preparation of your federal trademark application" is one of TE's promotional statements on its webpage http://www.trademarkengine.com/pricing/trademark-registration-packages. *See* below and **Exhibit C** at 2. This webpage compares different services provided by TE's different level of packages. As shown on the page, "professional preparation" of clients federal trademark application is provided by all three levels of service package. The pages presented in this exhibit were recorded on August 8, 2018.



18. Using the word "professional" in Statements #1 and #2 to represent the nature of TE's trademark filing services is ***literally false***.

19. No unlawful service can be called a "lawful" service. As such, using the word "lawful" to describe an unlawful service, *e.g.*, a service arranging fake-marriages to obtain green cards in violation of immigration laws, would be literally false. Likewise, no unlawful service can be called a "professional" service. Thus, using the word "professional" to describe the fake-marriage arranging service would be literally false. Therefore, it follows logically that

SECOND AMENDED COMPLAINT
CASE NO.: 3:17-cv-07303-MMC

using the word "professional" to describe TE's unlawful services, which are provided in violation of federal and state laws, is also literally false. *See* Sections III and IV, *infra* (alleging TE's services are unlawful).

20. RAPC does not allege that the word "professional" is being used to represent that TE has better experience or service quality than others, and because TE turns out to have less experience or poor service quality, the word "professional" is false or misleading. The use of "professional" in that sense would be merely an opinion or nonactionable puffery, as the Court has pointed out.[2]

21. Instead, RAPC alleges that using the word "professional" to describe a service is a guarantee of at least one thing—that the service is at least a lawful service—for no unlawful service can be called a "professional" service. In this sense, "professional" becomes a statement of fact with a guarantee that the service is lawful. When the service is in fact not lawful, as RAPC alleges, using the word "professional" to represent the nature of that service is literally false.

22. Using the word "professional" in Statements #1 and #2 to represent the nature of TE's trademark filing services is also ***misleading***.

23. Using the word "professional" in these statements has actually misled or confused the consuming public, including actual TE customers, into believing that TE provides at least lawful services.

24. Out of the eighty (80) actual TE customers who were harmed by TE (*see* **Exhibit D**), many of them were actually misled by TE's use of the word "professional" into believing that TE provides at least lawful services.  These customers have agreed to serve as witnesses for Plaintiffs. Some notable facts from these customers are listed below:

    a.   Customer #4 confirmed that he thought TE was providing a lawful service.

    b.   Customer #8 "absolutely" believed that TE provides at least a lawful service.

---

[2] *See* Case No. 3:18-cv-00127-MMC, Dkt. 42 at pgs 7-8.

c. Customer #9 confirmed to Plaintiff's counsel that when she saw TE claiming on their website that they are professionals, she "absolutely" believed they were providing a lawful service.

d. Customer #11 "did assume [TE] were using professional and providing a lawful service [sic] as per their website description."

e. Customers #13, #21, #27, #34, #40, #41, #44, #45 and #46 believed that TE were providing a lawful service when they saw TE claiming on their website that they are "professionals".

f. Customers #31, #32, #33, #35, #38, #39, #54, #56 and #58 confirmed to Plaintiff's counsel that TE's advertising led them to believe that, among other things, TE was at least providing a lawful service.

25. As RAPC alleges that TE's service is not lawful, *see* Sections III and IV, *infra*, using Statements #1 and #2 to represent the nature of TE's service is misleading because the statements have actually misled TE customers into believing that TE is at least providing a lawful service.

**B. Statements about the privacy/identity protection program**

26. TE made the following upsell statements to paid customers of TE during the workflow of filing their trademark applications:

a. **Statement #3:** "Protect your Identity - Identity Protection Program";

b. **Statement #4:** "With our Trademark Privacy Protection program, the public will see our email and phone number rather than yours";

c. **Statement #5:** "Yes, I want to keep my information private ( $5/month) Highly Recommended".

27. These statements appear in **Exhibit E** and are shown below for better illustration.

28. At least since August 2017, these statements have been shown to paid customers of TE in the upsell page towards the end of the trademark filing workflow, *e.g.*, at 97% completion as shown above. TE customers are encouraged to select "Yes, I want to keep my information private ( $5/month) Highly Recommended". When TE customers select this service, they will be charged $5 per month for the purported service of protecting their privacy.

29. Using Statements #3, #4 and #5 to represent the nature and quality of TE's privacy/identity protection program is ***literally false***.

30. The statements are literally false because, regardless of whether a customer purchased the $5/month privacy protection program or not, TE always lists each of its customer's contact information, including emails and phone numbers, on USPTO's trademark application forms. As information of trademark applicant's contact information is public on USPTO's website, TE does not protect the privacy of its customers who purchased the privacy protection program.

31. The following customers of TE (listed in Exhibit D) actually purchased the privacy protection program by clicking "Yes, I want to keep my information private ( $5/month) Highly Recommended":

    a.  Customer #5 paid $5 a month to protect his privacy and is still paying for that service.

b. Customers #7, #49, #56, #58 and #61 signed up for the privacy protection program.

c. Customers #31, #32, #33 and #44 paid $5 a month to protect their privacy. They are upset that their private information has been published on USPTO public forms.

d. Customer #47 called and confirmed to Plaintiff's counsel that he purchased the $5 a month trademark privacy service from TE and feels victimized that his private information has been published.

32. None of the above paid customers' privacy information were protected by TE. Their information are publically available on USPTO's website. Thus, TE's upsell Statements #3, #4 and #5 are literally false.

33. Using Statements #3, #4 and #5 to represent the nature and quality of TE's privacy/identity protection program is also ***misleading***.

34. The TE customers listed above who purchased the privacy protection program were actually misled by the statements. Clicking on Statement #5 on the upsell page (Exhibit E), which also contains Statements #3 and #4, is the only way to purchase the program. No one would spend $5 per month on this program unless they were made to believe from the statements that their privacy information would be protected by TE.

35. Furthermore, Customer #12 confirmed to Plaintiff's counsel that "I purchased the privacy protection Service. I believed my information would be kept private." As clicking through the upsell page is the only way to purchase the program, Customer #12, along with other customers alleged above, were actually misled by these statements.

**II. Liability of Crabtree for TE's Lanham Act Violation**

36. Crabtree, as an officer of TE and a managing member of the LLC, authorized, directed or participated in TE's Lanham Act violation alleged above. Therefore, Crabtree is liable for the Lanham Act violation committed by TE.

37. Facts from the interview of a TE's ex-employee further demonstrates that Crabtree, as the co-founder who started the business of TE, actively manages the daily operations of TE. *See*

**Exhibit F**, *e.g.*, "[Crabtree]'s in the process of kind of branching off and doing his own thing ... he started a web engine, called Trademark Engines…" *Id.* at 4:13; "At the time he started the company…" *Id.* at 4:15; "[Crabtree] kind of let other people do [the common law searches]..." *Id.* at 5:7; "before I submitted anything, it had to go to [Crabtree] first." *Id.* at 7:6.

38. Thus, because advertising and promotion is key to a company's operation, upon information and belief, Crabtree authorized, directed or participated in the design and advertising of the five false and misleading statements alleged above. As such, Crabtree is personally liable for the Lanham Act violation committed by TE.

**III. The Unlawful Practices of TE**

**A. TE's practice violates the unauthorized practice of law**

39. TE's practice violates California and Texas state statutes which prohibit the unauthorized practice of law. Cal Bus. & Prof. Code § 6125 provides that "[n]o person shall practice law in California unless the person is an active member of the State Bar." Under Texas law, a person may not practice law unless the person is a member of the Texas state bar. Tex. Gov't Code § 81.102. Falsely holding oneself out as a lawyer with the intent to obtain an economic benefit is a felony of the third degree. Tex. Pen. Code § 38.122.

40. The USPTO defines the practice of law to include the following[3]:

   a. Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document;

   b. Preparing or prosecuting an application, response, post-registration maintenance document, or other related document;

   c. Advising applicants on proper responses to USPTO actions;

   d. Conducting pre-filing searches for potentially conflicting trademarks;

   e. Analyzing or pre-approving documents before filing; and

---

[3] See
https://www.uspto.gov/trademark/trademark-updates-and-announcements/warning-unauthorized-lawpractice; and
https://www.uspto.gov/learning-and-resources/support-centers/trademark-assistance-center.

f.  Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.

41. TE, a non-legal entity and a nonlawyer, unlawfully practices law by engaging in following conducts: performing pre-filing trademark searches; creating and reviewing trademark applications; making legal determinations about classification and other matters; advising clients on problems with their applications including recommending changes to classifications and descriptions of goods and services; and filing trademark applications on clients' behalf.

42. The facts alleged below further demonstrates that TE has committed the unauthorized practice of law as defined by USPTO.

**1. <u>TE modifies client's original description and classification of trademark</u>**

43. TE analizes client's original description and classification of trademark which client initially submitted to TE for review, advises client on how to modify the description and classification, and pre-prove the trademark application before filing.

44. TE's practice is demonstrated by the following facts from a recent EVEREST CLAY REALTORS trademark application submitted by Raj Abhyanker ("Abhyanker") via TE's website:

a.  In a chat session, a TE staff named Jake suggested a different class 36 and a modified description of goods and services to Abhyanker.

b.  In an email to Abhyanker on December 13, 2017, TE's staff modified the goods and description of EVEREST CLAY REALTORS provided by Raj Abhyanker from:

> Everest Clay is a real estate brokerage in California that will also do property management and create a website to help them find their real house as well as find their own real estate investments. We will also self manage my properties[,]

to:

> Real estate brokerage; Real estate service, namely, rental property management; Providing an internet website portal offering information in the field of real estate concerning the purchase and sale of new and resale homes and condos; Real estate investment services; Real estate

investment services in the nature of purchasing and selling of real estate for others; Financial investment in the field of {real estate}; Real estate management services.

45. TE's practice is further demonstrated by the following facts from actual customers of TE (listed in Exhibit D).

a. After Customer #7 submitted his/her original classification and description to TE, TE emailed him/her to suggest a modified description and class that were different from his/her original submission. TE's staff wrote the following in the email:

> The description of goods you provided is deficient and may create delays or rejections by the USPTO because it is too general as it is now. For example, a trademark application with a class description of "Clothing" will be rejected by the USPTO for being too general. A better description would be "Clothing, namely, pants, shirts, shorts, and shoes." Likewise, you cannot simply state that you plan on selling products in certain industry; you need to describe what kinds of products.

*See* Exhibit D at 3 ("Deficient Description of Goods").

b. TE suggested Customer #19 to change the classification of his mark from class 003 to 035 and he agreed to the suggestion. But later he found out that his trademark was in the wrong class.

c. TE amended or suggested amending the description and classification for Customers #4, #5, #18, #26, #27, #31, #32, #33, #40, #41, #42, #44, #46, #48, #56, #59, #60 and #61.

d. TE modified the original description submitted by Customer #37 but kept the classification she originally selected.

e. Astonishingly, TE sent Customer #41 a detailed email on October 30, 2017 which provides him with in-depth legal advice on the description of goods and services. *See* Exhibit D at 11 ("We Have a Question About Your Description of Goods or Services").

f. Customer #46 wrote to the Plaintiff's counsel that not only did TE assist him in selecting classification and adjusting his goods and services, "[they] spent a

month trying to determine the classification." *See Id.* at 13.

## 2. TE searches and advises potential conflicting trademarks

46. The following facts demonstrate that TE performs pre-filing searches for potential conflicting trademarks and advises clients of the conflict and possible solutions.

   a. During the EVEREST CLAY REALTORS trademark application process, TE prepared Abhyanker a search report of trademarks that may conflict with EVEREST CLAY REALTORS .

   b. Customer #37 was advised by TE that her trademark name was not in conflict with a construction company. *See* Exhibit D at 9.

   c. After pre-filing search for potentially conflicting trademarks, TE advised Customer #41 that "we have found an exact match for the mark you are attempting to trademark." Exhibit D at 10 ("Direct-hit Located"). TE further advised him that "[j]ust because there is an exact match, it does not mean that you cannot also register your name if it is in a different category." *Id.* at 10.

### B. TE's practice violates Article One of California State Constitution

47. Cal. Const., art. I, § 1 provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

48. TE unilaterally waives client's right to privacy when its staff, without clients' knowledge, agreed to the following while submitting trademark applications for clients on USPTO's website: (1) waiving clients' rights to cancel the filing or refund the government fee; (2) waiving clients' rights to privacy by allowing their names, phone numbers, emails and street addresses to be published publicly; and (3) permitting USPTO to make clients' information available for public search on USPTO's online databases and other online databases. *See* **Exhibit G**.

49. For better illustration, the USPTO's trademark application submission form clearly states the following:

STEP 3: Read and check the following:

Important Notice:

(1) Once you submit this application, we will not cancel the filing or refund your fee. The fee is a processing fee, which we do not refund even if we cannot issue a registration after our substantive review. This is true regardless of how soon after submission you might attempt to request cancellation of the filing.

Therefore, please review ALL information carefully prior to transmission.

(2) All information you submit to the USPTO at any point in the application and/or registration process will become public record, including your name, phone number, e-mail address, and street address. By filing this application, you acknowledge that YOU HAVE NO RIGHT TO CONFIDENTIALITY in the information disclosed. The public will be able to view this information in the USPTO's on-line databases and through internet search engines and other on-line databases. This information will remain public even if the application is later abandoned or any resulting registration is surrendered, cancelled, or expired. To maintain confidentiality of banking or credit card information, only enter payment information in the secure portion of the site after validating your form. For any information that may be subject to copyright protection, by submitting it to the USPTO, the filer is representing that he or she has the authority to grant, and is granting, the USPTO permission to make the information available in its on-line database and in copies of the application or registration record.

(3) Be aware that private companies not associated with the USPTO often use trademark application and registration information from the USPTO's databases to mail or e-mail trademark-related solicitations (samples of non-USPTO solicitations included).

If you have read and understand the above notice, please check the box before you click on the Pay/Submit button.

*50.* TE Customers #2, #4, #5, #31, #32, #33, #34, #35, #39, #44, #45, #46, #47, #48, #49, #54, #56, #57, #60 and #61 stated that they were not aware or informed by TE that their rights to privacy would be waived by TE. *See* Exhibit D. Thus, TE's practice violates Article One of California State Constitution.

**C. TE's practice violates 18 U.S.C. § 1001**

*51. Third*, TE's practice violates 18 U.S.C. § 1001 which generally prohibits knowingly and willfully making false or fraudulent statements, or concealing information, in "any matter within the jurisdiction" of the United States. Violation of 18 U.S.C. 1001 carries a maximum

penalty of 5 years.[4]

52. A preliminary search of public data reveals that TE has been submitting or aiding and abetting its customers in submitting fraudulent specimens to the USPTO.[5] These fraudulent specimens include fabricated proofs of use submitted to the USPTO on behalf of customers of TE. *See* **Exhibit H**, Declaration Of Randall Hull In Support Of Plaintiff's Second Amended Complaint.

**IV. The Unlawful Practices of Crabtree**

53. A lawyer can practice law by himself personally, or practice law in a law firm. But a lawyer cannot practice law behind a non-legal corporation or LLC. As an officer and a managing member of TE, a non-legal LLC, Crabtree personally violates Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102 and Tex. Pen. Code § 38.122 by aiding and abetting TE to practice law.

54. Facts from the interview of the TE's ex-employee demonstrate that Crabtree covertly practiced law behind the LLC. *See, e.g.*, the facts below.

    a.   The non-lawyer assistant "select[ed] the class that was close to or exactly" related to the goods and services offered by the customer. Exhibit F at 5:14;

    b.   Mr. Crabtree "normally answered any type of Office Actions" from USPTO. *Id.* at 5:19.

    c.   Before the non-lawyer assistant submitted anything to USPTO, "it had to go to [Mr. Crabtree] first." *Id.* at 7:6.

55. Furthermore, as an officer and a managing member of TE who actively manages the daily operations of TE, Crabtree either directly submitted or aided and abetted TE to submit fake and fraudulent specimens to the USPTO, thereby violating 18 U.S.C. § 1001 himself personally.

---

[4] *See also Nationstar Mortg. LLC v. Mujahid Ahmad*, 2014 TTAB LEXIS 350, *9 (Trademark Trial & App. Bd. Sep. 30, 2014) ("Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with its application with intent to deceive the USPTO.").

[5] See the following fake specimens submitted by TE for its customers: 87819123, 87787183, and 87817340.

56. Moreover, Crabtree, as a trademark practitioner before the USPTO, also violated the following federal regulations:

    a. Crabtree violated 37 C.F.R. § 11.104(a)(2) by failing to reasonably consult with clients about the means by which the clients' objectives are to be accomplished because TE customers' rights to privacy were waived without their knowledge.

    b. Crabtree violated 37 C.F.R. § 11.503(b) by failing to make reasonable efforts to ensure that the conduct of his non-practitioner assistants at TE (*e.g.,* Jake) is compatible with the professional obligations. Crabtree violated this federal regulation because Jake and other non-practitioner assistants at TE have engaged in the unauthorized practice of law.

    c. Upon information and belief, Crabtree violated 37 C.F.R. §§ 11.107 and 11.109 by failing to check conflict of interest among his current and former clients prior to retaining new clients for TE.

    d. Upon information and belief, Crabtree violated 37 C.F.R. § 11.115(c) by failing to deposit legal fees and expenses paid in advance by his customers into a client trust account.

**V. RAPC's Lawful and Innovative Practice**

57. RAPC also offers trademark filing services for $199 plus government filing fees through LegalForce, Inc.'s Trademarkia.com website. Unlike TE, RAPC is a law firm.

58. Like TE, RAPC's $199 service provides clients with legal advice and representation in the prosecution of a trademark application. But unlike TE, RAPC's service is attorney-supervised. An attorney is involved in all critical steps of the application process. A licensed attorney personally signs off on each filing.

59. RAPC has accomplished its mission by innovating within the bounds of the regulations governing the legal profession:

    a. *Client/Matter Management Technology.* RAPC has developed its own platform for client and matter management that automates many processes, detects and corrects errors through artificial intelligence, streamlines the work flow, and

focuses attorney attention on only attorney tasks. USPTO uses similar but perhaps even less advanced technology to manage its process.

    b. *Volume.* With over 400 new trademark clients a month, RAPC attorneys spend all of their time doing the same types of tasks--which not only develops their expertise, but makes them more efficient. Five of the top ten most successful filers ranked by the 2017 World Trademark Review industry publication are RAPC attorneys.

    c. *Bifurcated Supply Chain Management.* RAPC applied best manufacturing practices to legal services by taking all non-attorney work off of attorneys' plates and globalizing it to improve quality while reducing costs.

    d. *Training.* RAPC attorneys undergo a three-month intensive training process modeled after the USPTO examiner training program to ensure they are proficient and efficient trademark attorneys.

## VI. The Unfair Competition By TE and Crabtree

60. As explained above, RAPC provides superior technology, is more innovative, and provides more qualified, higher quality services than TE at the same price. But it is losing the battle because it is being fought on uneven playing field: RAPC and its attorneys are bound by the rules of conduct governing the legal profession. TE has eschewed those rules by thus far operating outside of the existing regulatory framework. Many of those rules protect consumers: they ensure competence and loyalty and provide remedies when those duties are violated.

61. TE purports to operate outside those duties and disclaims them in its terms of use and other fine-print disclaimers on its site. Consumers are worse off because they don't get the protections they expect from the legal profession. For example, the following are statements on TE:

    a. Our customer service representatives cannot answer legal questions and because we do not have an attorney-client relationship, any communications with our customer service representatives are not privileged and you should not share confidential information with them.

b. At no time do we review your answers for legal sufficiency, draw legal conclusions, provide legal advice, opinions or recommendations about your legal rights, remedies, defenses, options, selection of forms, or strategies, or apply the law to the facts of your particular situation.

c. TE is not a "lawyer referral service" and does not provide legal advice or participate in any legal representation. Use of TE is subject to our Terms of Service and Privacy Policy.

d. We are not a substitute for an attorney and we cannot provide you any legal advice.

62. Terms require the use of arbitration on an individual basis to resolve disputes, rather than jury trials or class actions, and also limit the remedies available to in the event of a dispute. By renouncing the attorney-client relationship and purporting to provide legal help by professionals rather than legal advice, TE achieves two business advantages at the expense of consumers: (1) sidestepping professional responsibilities governing the legal profession and (2) avoiding liability.

63. In short, TE touts its experience and expertise in helping people with legal problems. But in the fine print, TE seeks to avoid the responsibilities of law practice by characterizing its services as self-help and maintaining that the website cannot substitute for an attorney, regardless of the contrary assumptions of consumers that are reinforced by TE's promotional statements. Despite this, if taken at face value, TE's disclaimer and terms of use allow it to operate free from the confines of ethical rules enforceable upon attorneys while denying consumers redress that they would otherwise have for the faulty legal advice it provides.

64. TE's false and misleading promotional statements deceive consumers into purchasing inferior services, but its success in exploiting advantages by not operating as a law firm -- despite surreptitiously practicing law -- have also given it a broader competitive advantage:

a. TE professionals are cheaper labor: they make about $14 an hour, when compared with a $67,000 median starting salary for a licensed attorney at a law firm with fewer than 25 employees (larger firms have even higher starting salaries)

1  including at RAPC.

2  b.  TE does not expend time or money on conflict checks, does not forego clients
3     with conflicts, and as a result and can simultaneously assist direct competitors and
4     adversaries in litigation from filing trademarks for the same or confusingly similar
5     trademarks at any time.

6  c.  TE does not have the limitations, expense, and administrative burden of trust
7     accounts, reporting, continuing legal education, bar fees, malpractice insurance,
8     and other regulatory burdens imposed on lawyers and law firms. As a result, they
9     are able to better regulate their cash flow cycles to meet short term expenses by
10    not having client funds for trademark filings for which work has not started
11    locked away in an IOLTA trust account.

12 d.  TE does not have the limitations, expense, and administrative burden of ethics
13    compliance audits, regular consultation with outside ethics counsel, and vigilant
14    adherence to rules governing lawyers.

15 e.  TE does not have the limitations of not splitting legal service fees for trademark
16    filings and prosecution with non-attorneys, giving them new ways of hiring and
17    incentivizing non-lawyer staff through commissions, bonuses, and incentives for
18    the sale of U.S. trademark filing and prosecution services by customers of TE, and
19    such incentives cannot be offered by lawyers and law firms including RAPC.

20 f.  TE does not have the limitations, expense, and administrative burden of
21    supervising non-attorney work using licensed lawyers. As a result, its legal staff
22    are able to have unregulated reign on counseling customers on U.S. trademark
23    filing and prosecution matters without oversight by a regulated professional.

24 g.  TE do not face the expense and burden of responding to regulatory inquiries,
25    requests for information, and investigations from the Bar and USPTO's OED
26    (even where no action has ultimately been taken), or face exclusion and reciprocal
27    discipline.

28 h.  TE are not disciplined for incentivizing its non-attorney employees such as

Lubbat through ownership in an entity that directly gains revenue from U.S. trademark filing. By subverting the restriction on non-lawyer ownership of law firms, TE are able to provide non-attorney employees with stock option and Restricted stock units (RSUs) incentives for employees. Such incentives are unavailable to lawyers and law firms including RAPC making it difficult for it to compete for talented non-attorney labor.

    i. Institutional investors are able to purchase equity in TE giving the company capital required to grow and invest in capital assets at a rate faster than RAPC, making it difficult to compete.

    j. TE disclaim responsibility for the consequences of the professional legal help it gives, while lawyers must maintain malpractice insurance and exercise caution and diligence to avoid even the appearance of impropriety or incompetence that could lead to a malpractice action or a bar/OED investigation.

65. It is thus important that TE is enjoined and held accountable for its false and misleading promotions and unfair competitions as described herein.

66. As a result of Defendants' false and misleading advertisement and unfair competition, RAPC has suffered lost revenue, loss of market share, reduced asset value, diverted sales to TE, and increased advertising costs.

67. RAPC has lost revenue in two ways: First, TE's false advertising and unfair competition have caused consumers to purchase TE's services instead of RAPC's services. Second, TE's operation outside the law firm regulatory framework has allowed it to raise capital that RAPC cannot. As a result, RAPC lost significant competitive bidding opportunities on approximately $1.4 million dollars of advertising spend in the year 2017 alone to TE. RAPC has reduced its trademark legal service prices from $499 to $199 and sometimes even $69 to match the unfair competition of TE.

68. But for TE's conduct of false advertising and unfair competition, a good percentage of consumers likely would have purchased RAPC's trademark filing services, not TE's. In total, RAPC's lost sales and opportunities exceeding $3,000,000 dollars based on the lifetime value

per customer.

69. RAPC has also lost asset value. It has seen its market share decline from nearly 2.4% of all U.S. trademarks filed in the United States in 2015 to approximately 1.8% in 2017. As a consequence of TE' unfair competition, RAPC has lost market share of approximately 0.6% of the overall trademark market since 2015 (approximately 2670 trademarks filings per year) in the relevant market for U.S. trademark filing and prosecution, upon information and belief. Tellingly, RAPC ceased making the INC5000 list of the fastest growing companies in America in 2015 after four consecutive years of making the list. See https://www.inc.com/profile/legalforce-rapc. The value of RAPC's business has been directly reduced and negotiations with potential acquirers have stalled.

70. Moreover, upon information and belief, RAPC's advertising costs have increased. RAPC's cost per click and total advertising attract trademark clients has gone up by approximately 10% as a direct consequence of TE' unfair competition. In addition, as a direct consequence of TE' wrongful acts, upon information and belief, RAPC has reduced their attorney led service prices from $499 to $199 and sometimes lower to match the unfair competition from TE.

71. Defendants' conduct of false and misleading advertising and unfair competition proximately caused RAPC's injury. Defendants, along with about a dozen other unauthorized trademark online filers, advertise through Google and other online marketplaces where RAPC also advertises. They purchase the same or similar advertising keywords which RAPC also purchases. If Defendants do not engage in the alleged conduct, e.g., unauthorized practice of law, in the advertisement they would have to significantly limit the scope of their service to the point which there is not much value-added service. They can simply fill out forms and but cannot provide any filing related legal advice to customers, such as suggesting and modifying descriptions and classifications. Because RAPC provides full-scale trademark legal service and so advertises in its ads, potential trademark service customers, comparing the advertisement of both RAPC and Defendants, would have chosen RAPC instead of Defendants. Therefore, Defendants take away potential sales from RAPC and proximately caused injury to RAPC.

72. In addition to the theory of proximate causation alleged above, Defendants' conduct also proximately caused RAPC's injury on alternative theories of causation. "If a plaintiff can prove that an entire industry was tortious, the doctrine of enterprise liability shifts the burden to members of that industry to prove that they did not [] caused the injury." *Barron v. Martin-Marietta Corp.*, 868 F. Supp. 1203, 1208 (N.D. Cal. Nov. 2, 1994) (citation omitted). Moreover, "[u]nder the doctrine of market share liability, where it is impossible for the plaintiff to prove which member of the market was responsible for the injury, each member of the market is responsible for a percentage of the recovery matching its share of the market." *Id.* (citation omitted).

## VII. Substantial Consumer Harm

73. TE and Crabtree have caused substantial harm to consumers because of their unfair competition and unlawful practices. Listed in **Exhibit D** is a small sample of TE customers (full names, serial numbers, and contact information can be submitted under seal and have already been provided to Defendants counsel prior to the filing of this SAC) who have been misled by Defendants' advertising and/or harmed by Defendants' unlawful and unfair practices. All have agreed to be witnesses for Plaintiff.

### FIRST CLAIM FOR RELIEF
#### DECLARATORY JUDGMENT
(Against TE and DOES 1-50)

74. RAPC repeats each and every allegations contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

75. An actual controversy has arisen and now exists between RAPC and TE regarding TE's false advertising and unfair business practices, which necessarily requires a foundational determination as to whether TE has engaged in the unauthorized practice of law.

76. RAPC's injury is fairly traceable to TE's conduct of unauthorized practice of law. Because TE, as a nonlawyer, unlawfully practices law, TE can perform all the legal services that a trademark law firm such as RAPC can perform, but at a price and business expense much lower than a law firm. Therefore, TE unfaily competes with RAPC and causes RAPC's injury.

77. RAPC's injury will be redressed by the Court's declaration addressing the question of

whether TE is engaged in the unauthorized practice of law. If the answer to this question is affirmative, then TE can no longer provide trademark related legal services and RAPC will be able to redress its injuries and fairly compete with TE.

78. Wherefore, RAPC seeks a declaration from this Court that TE's trademark filing services, specially the practices and facts alleged in Section III.A, violate Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102 or Tex. Pen. Code § 38.122.

## SECOND CLAIM FOR RELIEF
### FALSE OR MISLEADING ADVERTISING
### THE LANHAM ACT, 15 U.S.C. § 1125(a)
(Against TE, Crabtree and DOES 1-50)

79. RAPC repeats each and every allegations contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

80. TE violated 15 U.S.C. § 1125(a) by making false and misleading advertising Statements #1 to #5 as alleged *supra* in Sections I.

81. Crabtree violated 15 U.S.C. § 1125(a) because he is personally liable as alleged *supra* in Sections II.

82. Statements #1 to #5 are commercial advertisements or promotions because:

    a. They were designed to promote the services of TE;

    b. They propose commercial transactions, including but not limited to the purchase of TE's $69 "basic package" trademark filing service. *See* Exhibit B;

    c. They promote TE' commercial activities;

    d. They were motivated by TE' economic interests; and

    e. The statements were sufficiently disseminated to the relevant purchasing public, namely consumers seeking trademark protection assistance.

83. The statements were made in connection with services offered by TE. The statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of TE's services.

84. Defendants' false or misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to RAPC's for which there is no adequate

remedy at law. In addition, as a result of Defendants' false advertisements, RAPC has been injured, including but not limited to, lost customers, direct diversion of sales from RAPC to Defendants, decline in sales and market share, lost profits, having to pay increased advertising costs, loss of goodwill, and additional losses and damages. Furthermore, Defendants have been unjustly enriched at the expense of RAPC as a consequence of Defendants' false and misleading advertising. Accordingly, RAPC is entitled to injunctive relief and to recover up to three times the damages sustained by RAPC, as well as Defendants' profits, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**THIRD CLAIM FOR RELIEF**
CALIFORNIA UNFAIR COMPETITION
CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
(Against TE, Crabtree and DOES 1-50)

85. RAPC repeats each and every allegations contained in the paragraphs above and incorporate by reference each preceding paragraph as though fully set forth herein.

86. RAPC has standing to sue because it has suffered injury in fact and lost money, including diverted sales to Defendants, lost revenue, loss of market share, reduced asset value, and increased advertising costs.

87. TE violated the unlawful prong of UCL because of the following reasons:

    a.  TE violated Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102 and Tex. Pen. Code § 38.122 as alleged *supra* in Section III.A.

    b.  TE violated Cal. Const., art. I, § 1 as alleged *supra* in Section III.B.

    c.  TE violated 18 U.S.C. § 1001 as alleged *supra* in Section III.C.

88. Crabtree violated the unlawful prong of UCL because of the following reasons:

    a.  Crabtree violated Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102 and Tex. Pen. Code § 38.122 as alleged *supra* in Section IV.

    b.  Crabtree violated 18 U.S.C. § 1001 as alleged *supra*.

    c.  Crabtree violated the following federal regulations as alleged *supra*: 37 C.F.R. § 11.104(a)(2), 37 C.F.R. § 11.503(b), 37 C.F.R. §§ 11.107 and 11.109, and 37 C.F.R. § 11.115(c).

89. TE and Crabtree have violated the unfair prong of UCL because of the following reasons:

    a. The consumer injury caused by submitting fraudulent specimens to the USPTO and violations of unauthorized practice of law and various other state and federal statutes is substantial. Consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers. Public interest is greatly harmed. *See supra* Section VII "Substantial Consumer Harm".

    b. Unauthorized practice of law and submitting fraudulent specimens to the USPTO offer no countervailing benefits to consumers or competition.

    c. Consumers themselves cannot reasonably have avoided the injury because a reasonable consumer (1) is not familiar with the trademark filing process and does not understand what constitutes the practice of law in the process; and (2) does not understand that unauthorized practice of law is a crime under California and Texas laws.

    d. It is unfair to the competition for trademark filing related services generally if Defendants are able to offer trademark filing services unlawfully by violating state and federal laws and regulations, while the vast majority of attorneys practicing before the USPTO abide by the laws and regulations.

90. RAPC is informed and believe that TE, as a competitor to RAPC, performed the acts alleged herein for the purpose of injuring RAPC and competition generally. The acts alleged herein continue to this day and present a threat to RAPC, the general public, the trade and consumers.

91. As a result of TE and Crabtree's wrongful acts, RAPC has suffered and will continue to suffer loss of millions of dollars of income, profits and valuable business opportunities and if not preliminarily or permanently enjoined, Defendants will have unfairly derived and will continue to derive income, profits and business opportunities as a result of its wrongful acts.

92. RAPC seeks an order of this Court under California Business & Professions Code §17200 *et seq.* that preliminarily and permanently enjoins TE and Crabtree from continuing to engage in the unlawful and unfair acts or practices set forth herein, as well as restitution.

## REQUEST FOR RELIEF

WHEREFORE, RAPC requests relief as follows:

93. Declare that TE is engaged in the unauthorized practice of law while providing trademark related services to its clients;

94. Enter judgment against TE and Crabtree;

95. Award RAPC all available damages including restitutionary damages against TE and Crabtree in an amount to be proven at trial;

96. Award RAPC its costs and expenses of this action against TE and Crabtree, including RAPC's reasonable attorney fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 1117(a);

97. Award RAPC pre- and post-judgment interest at the applicable rates on all amounts awarded;

98. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint;

99. Order any other such relief as the Court deems appropriate.


Respectfully submitted this Friday August 10, 2018.


LEGALFORCE RAPC WORLDWIDE P.C.


/s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiff:
LegalForce RAPC Worldwide, P.C.

## JURY TRIAL DEMANDED

Plaintiff hereby request a bench trial for the declaratory relief and jury trial for all other causes of action alleged in this Second Amended Complaint.

Respectfully submitted this Friday August 10, 2018.

LEGALFORCE RAPC WORLDWIDE P.C.

By  /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233284
Attorney for Plaintiff:
LegalForce RAPC Worldwide, P.C.