HOLLAND & KNIGHT LLP
Allison D. Martin Rhodes (SBN 261496)
Dayna E. Underhill (*pro hac vice*)
Nicholas Melzer (SBN 246356)
Jessica M. Brown (SBN 295293)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
T 213.896.2400 | F 213.896.2450
E-mail: allison.martinrhodes@hklaw.com
E-mail: dayna.underhill@hklaw.com
E-mail: nicholas.melzer@hklaw.com
E-mail: jessica.brown@hklaw.com

Attorneys for Defendants
*Trademark Engine, LLC and Travis Crabtree*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE, P.C.,<br><br>Plaintiff,<br><br>vs.<br><br>TRADEMARK ENGINE LLC.; TRAVIS CRABTREE; and DOES 1-50, INCLUSIVE,<br><br>Defendants. | Case No. 3:17-cv-7303-MMC<br><br>**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Hearing Date: October 26, 2018<br>Time:      9:00 am<br>Courtroom:   7<br>Before:     Hon. Maxine M. Chesney |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................... 1

II. BACKGROUND ..................................................................................... 2

    A. Procedural Background ................................................................. 2

    B. RAPC's Allegations Against Defendants ..................................... 3

III. LEGAL STANDARDS APPLICABLE TO MOTION TO DISMISS ................... 3

IV. ARGUMENT ........................................................................................ 4

    A. Plaintiff's Declaratory Judgment Action Should Be Dismissed with Prejudice. ............................................................................... 4

        i. RAPC's Declaratory Judgment Claim Is Subject to Dismissal under Rule 41(b). ............................................................... 4

        ii. RAPC's Declaratory Judgment Claim Is Subject to Dismissal under Rule 12(b)(6). ........................................................... 5

    B. Plaintiff's Lanham Act Claim Should Be Dismissed with Prejudice. ......................... 7

        i. The SAC Does Not Cure the FAC's Pleading Deficiencies ........................... 8

        ii. TME's Use of The Word "Professional" is Not an Actionable Statement. ...... 9

        iii. TME's Use of The Word "Professional" Does Not Plausibly Mislead Consumers ................................................................. 10

        iv. TME's Privacy-Related Statements Also Fail to Support a Lanham Act Claim ................................................................. 12

        v. RAPC Cannot Plead Causation or Demonstrate Standing to Advance a Lanham Act Claim ...................................................... 13

        vi. RAPC's Lanham Act Claims against Crabtree Also Fail ............................ 14

    C. Plaintiff's UCL Claims Should Be Dismissed with Prejudice ................................. 15

        i. RAPC Lacks Standing for Failure to Plead Its Own Reliance on TME's Alleged Fraud or Misrepresentation. ...................................... 15

        ii. RAPC Fails to Plausibly Allege a Violation of the UCL's "Unlawful" Prong. .......................................................... 17

            a. California Constitution, Article 1, § 1 .............................. 18

i

b.    18 U.S.C. § 1001 .................................................................... 19

c.    The Unauthorized Practice of Law ..................................... 19

d.    The USPTO's Rules of Professional Conduct ................... 22

iii.    RAPC Fails to Allege an Impact on Competition as Required to State a
Claim under the UCL's "Unfair" Prong. ....................................... 22

D.    Certain Damages Claims Must Be Dismissed ........................................ 24

E.    The SAC Should Be Dismissed with Prejudice. .................................... 25

V.    CONCLUSION .................................................................................................... 25

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allen v. City of Beverly Hills*
    911 F.2d 367 (9th Cir. 1990) ................................................................ 25

*Allen v. Wright*
    468 U.S. 737 (1984) ........................................................................... 6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................... 3, 4, 19

*Balistreri v. Pacifica Police Dep't*
    901 F.2d 696 (9th Cir. 1990) ................................................................ 3

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................... 3, 4, 21

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
    429 U.S. 477 (1977) .......................................................................... 23

*Clegg v. Cult Awareness Network*
    18 F.3d 752 (9th Cir. 1994) ................................................................ 11

*Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*
    173 F.3d 725 (9th Cir. 1999) ........................................................... 7, 12

*Cunningham v. Singer*
    2015 WL 124572 (N.D. Cal. Jan. 8, 2015), *aff'd*, 667 F. App'x 961 (9th Cir.
    2016) ............................................................................................ 7

*Ferdik v. Bonzelet*
    963 F.2d 1258 (9th Cir. 1992), *cert. denied*, 506 U.S. 915 (1992) ................. 4

*Freeman v. Time, Inc.*
    68 F.3d 285 (9th Cir. 1995) ................................................................ 11

*Ghazali v. Moran*
    46 F.3d 52 (9th Cir. 1995) ................................................................... 5

*Gordon v. Mass. Mut. Life Ins. Co.*
    2006 WL 3218778 (E.D. Cal. Nov. 7, 2006) ........................................... 24

*Guttmann v. La Tapatia Tortilleria, Inc.*
    2015 WL 7283024 (N.D. Cal. Nov. 18, 2015) ........................................ 16

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:17-cv-7303-MMC

*Hollander v. Etymotic Research, Inc.*
    726 F. Supp. 2d 543 (E.D. Pa. 2010) ................................................................. 15

*Kane v. Chobani, Inc.*
    2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ..................................................... 16

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ............................................................................... 23

*Leis v. Flynt*
    439 U.S. 438 (1979) .............................................................................................. 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    134 S. Ct. 1377 (2014) ....................................................................................... 13

*Ling Tie v. Peng Chan*
    2010 WL 10930695 (C.D. Cal. Dec. 12, 2010) .................................................... 6

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*
    312 U.S. 270 (1941) .............................................................................................. 5

*Paciulan v. George*
    229 F.3d 1226 (9th Cir. 2000) ............................................................................. 7

*Rose v. City of Waterbury*
    2013 WL 3967649 (D. Conn. July 31, 2013) ....................................................... 5

*Rosen v. Uber Techs., Inc.*
    164 F. Supp. 3d 1165, 1177-78 (N.D. Cal. 2016) .............................................. 16

*Ruiz v. Gap, Inc.*
    540 F. Supp. 2d 1121 (N.D. Cal 2008) .............................................................. 18

*Ruiz v. Singer*
    2015 WL 12803451 (C.D. Cal. Mar. 30, 2015) ................................................... 7

*Sanderson v. Int'l Flavors & Fragrances, Inc.*
    950 F. Supp. 981 (C.D. Cal. 1996) .................................................................... 14

*In re Sony Grand Wega KDF-E A O/A20 Series Rear Projection HDTV Television
    Litigation*
    758 F.Supp.2d 1077 (S.D. Cal. 2010) ................................................................ 11

*Sperry v. State of Fla. ex rel. Florida Bar*
    373 U.S. 379 (1963) ............................................................................................ 20

*In re Suprema Specialties, Inc. Sec. Litig.*
    438 F.3d 256 (3d Cir. 2006) ............................................................................... 15

*Swartz v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) .............................................................................. 14

iv

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*
   862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...................................................................... 14

*United States v. Yermian*
   468 U.S. 63 (1984) ........................................................................................................ 19

*Vess v. Ciba–Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 4

*Warth v. Seldin*
   422 U.S. 490 (1975) ........................................................................................................ 6

**California Cases**

*Agran v. Shapiro*
   127 Cal. App. 2d Supp. 807, (Cal. App. Dep't Super. Ct. 1954) ............................... 20

*Berryman v. Merit Prop. Mgmt., Inc.*
   152 Cal. App. 4th 1544 (Cal. App. 2007) .................................................................... 19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
   20 Cal. 4th 163 (Cal. 1999) .................................................................................. *passim*

*Durell v. Sharp Healthcare*
   183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (Cal. 2010) ....................................... 16

*Folgelstrom v. Lamps Plus, Inc.*
   195 Cal. App. 4th 986 (Cal. Ct. App. 2011) ............................................................... 18

*People ex rel. Herrera v. Stender*
   212 Cal. App. 4th 614 (2012) ...................................................................................... 24

*Hill v. Nat'l Collegiate Athletic Ass'n*
   7 Cal. 4th 1 (1994) ....................................................................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal. App. 4th 1134 (Cal. 2003) .............................................................................. 24

*Kwikset Corp. v. Superior Court*
   51 Cal. 4th 310 (Cal. 2011) ......................................................................................... 16

*Madrid v. Perot Systems Corp.*
   130 Cal.App.4th 440 (2005) ........................................................................................ 25

**Other State Cases**

*Spurlock v. Johnson*
   94 S.W.3d 655 (Tex. App. 2002) ................................................................................... 6

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:17-cv-7303-MMC

**Federal Statutes**

15 U.S.C.
    § 1125(a)(1) ........................................................................................ 8

18 U. S. C.
    § 1001 .......................................................................................... 18, 20

15 U.S.C. § 1125(a) (Lanham Act) ................................................................ *passim*

**California Statutes**

Cal Bus. & Prof. Code
    § 6125 ....................................................................................... 4, 6, 21

Cal Bus. & Prof. Code
    § 17200 et. seq .......................................................................... *passim*

**Other State Statutes**

Tex. Gov't Code Ann.
    § 81.101(c) ................................................................................ 20, 23

Tex. Gov't Code
    § 81.102 ..................................................................................... 4, 6, 21

Tex. Pen. Code
    § 38.122 ..................................................................................... 4, 6, 21

Texas Government Code
    § 81.101 ............................................................................................. 3

**Other Authorities**

37 C.F.R. 11.100 et seq. ................................................................................. 23

37 C.F.R. § 11.104(a)(2) ................................................................................ 23

37 C.F.R. § 11.503(b) ..................................................................................... 23

37 C.F.R. § 11.107 .......................................................................................... 23

37 C.F.R. § 11.109 .......................................................................................... 23

37 C.F.R. § 11.115(c) ...................................................................................... 23

California Constitution Article I, § 1 ........................................................... *passim*

Federal Rules of Civil Procedure Rule 8(a)(2) ................................................. 3

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................ 3,5

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:17-cv-7303-MMC

Federal Rules of Civil Procedure Rule 9(b)................................................................*passim*

Federal Rules of Civil Procedure Rule 41(b)................................................................4, 5

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
Case No. 3:17-cv-7303-MMC

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

 PLEASE TAKE NOTICE that on October 26, 2018, at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate, San Francisco, California, Trademark Engine, LLC and Travis Crabtree will, and hereby do, move under Rules 9(b), 12(b) and 41(b) of the Federal Rules of Civil Procedure ("Rule(s)"), to dismiss LegalForce RAPC Worldwide, P.C.'s ("RAPC") Second Amended Complaint ("SAC") filed on August 10, 2018.  This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers on file in this matter; and such other matters as may be presented to the Court at the hearing.

## STATEMENT OF RELIEF SOUGHT

 Defendants Travis Crabtree ("Crabtree") and Trademark Engine, LLC ("TME") seek dismissal of RAPC's SAC for each of the following reasons: (1) RAPC fails to state a claim upon which relief may be granted under Rule 12(b)(6); (2) RAPC failed follow the Court's Order mandating leave to amend be requested and obtained prior to adding new claims, making a Rule 41(b) dismissal as to RAPC's Declaratory Judgment Act cause of action and various claims under the UCL's unlawful prong appropriate; (3) RAPC's conclusory allegations fail to state plausible causes of action as required by Rule 8(a); and (4) RAPC's SAC once again fails to comply with the heightened pleading requirements of Rule 9(b).

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I.    INTRODUCTION

Plaintiff LegalForce RAPC Worldwide P.C.'s ("RAPC") third shot at pleading a claim against Defendants Trademark Engine LLC ("TME") and Travis Crabtree ("Crabtree") is, like its predecessors, a confusing attempt to throw the kitchen sink at the wall and see what sticks.  The claims have changed, the theories have changed, the parties have changed, but the allegations are no more sufficient now than they were last time, or the time before that.  Though RAPC's pleadings may not be clear, the reason they continue to fail is.  The premise underlying all of RAPC's claims—that somehow TME unlawfully competes with RAPC (a law firm) by tricking TME's customers into using its non-lawyer professionals to process simple trademark applications more efficiently and at a lower cost than RAPC's attorneys can—is simply false.  RAPC is not a victim.  It is a competitor, losing in the marketplace and lashing out in a last ditch attempt to save itself.

RAPC's Second Amended Complaint ("SAC") improvidently seeks for the first time a declaratory judgment that TME is engaged in the unauthorized practice of law.  In doing so, it violates this Court's Order requiring it to seek leave to add new claims.  It also lacks standing to seek such a judgment.  In addition, the SAC attempts to state a claim under the Lanham Act, accusing TME of making false statements by saying to its customers things like "Let the Professionals File Your Trademark Today" and "Protect your Identity."  But, none of the statements RAPC identifies as false or misleading are actionable, nor could they mislead any reasonable consumers.  And lastly, RAPC claims that Defendants have violated California's Unfair Competition Law ("UCL") by allegedly engaging in the unauthorized practice of law and violating a laundry list of inapplicable federal and state statutes.  However, in alleging a veritable catalogue of laws Defendants have supposedly run afoul of, RAPC fails to adequately allege—and cannot allege—the necessary elements of any.

This attempt to hold TME liable for RAPC's inefficient and outdated business model should be its last.  RAPC has had three bites at the apple.  It should not get a fourth.

## II. BACKGROUND

The Court is familiar with the facts of this case. Mr. Abhyanker, LegalForce, and RAPC have embarked on a crusade against their more-efficient competitors—non-lawyer, online trademark service providers—and filed at least nine largely copycat lawsuits in California federal court, as well as at least one in California state court[1]—alleging that companies like TME engage in the unauthorized practice of law by making trademark filing services available to consumers who choose to forego the assistance of costly intellectual property attorneys like Mr. Abhyanker.

### A. Procedural Background

The instant action, now against TME and Crabtree, was originally filed on December 26, 2017. (Dkt. 1.) On February 26, 2018, Defendants timely filed a motion to compel arbitration (dkt. 26) and a motion to dismiss (dkt. 27). Then-Plaintiffs Mr. Abhyanker, LegalForce, Inc., and RAPC opposed both motions (dkts. 39 & 40) and Defendants replied to Plaintiffs' oppositions on March 19, 2018 (dkts. 41 & 42). The same day that Defendants filed their reply papers, at approximately 11:52 p.m., RAPC and LegalForce, Inc. filed the First Amended Complaint ("FAC") dropping Mr. Abhyanker as a plaintiff and alleging new theories and causes of action. (Dkt. 44.)

This Court granted Defendants' Motion to Dismiss the FAC on July 19, 2018, dismissing all claims in their entirety and without prejudice. (*See* Order Granting Defendants' Motion to Dismiss First Amended Complaint, July 19, 2018, dkt. 106 ("7/19/18 Order").) In its Order, the Court: Dismissed Plaintiffs' Lanham Act claims against Crabtree for failing to allege sufficient facts to support an alter ego claim; Dismissed Plaintiffs' Lanham Act and California false advertising claims against TME for failure to plead with sufficient specificity, under Rule 9(b); and Declined to exercise supplemental jurisdiction over the remaining state law claims. *Id.* The Court afforded Plaintiffs leave to file another amended complaint, but cautioned that the "plaintiffs may not add therein any new defendants or any new claims, without first obtaining leave of court." (*Id.* at 11.)

---

[1] *See* Legalzoom (No. 3:17-CV-07194); FileMy LLC (No. 5:17-cv-7331); Trademarks Information International LLC (No. 5:17-cv-7354); The Trademark Company LLC (No. 5:17-cv-7318); Trademark Enginexpress.com and UrgentTrademark.com (No. 5:18-cv-43); Sharp Filings, Inc. (No. 5:18-cv-127); MyCorporation Business Services, Inc. (No. 5:18-cv-142); UpCounsel (No. 4:18-cv-2373-YGR); yet another LegalZoom case (No. 2-18-cv-6147-ODW) (LegalZoom); and state case against MyCorporation Business Services, Inc. (No. LC107317, LA County Sup. Ct.).

RAPC then filed the SAC on August 10, 2018, dropping LegalForce, Inc. as a plaintiff, alleging new theories and, in violation of the Court's Order, a new cause of action. (Dkt. 107.) [2]

### B. RAPC's Allegations Against Defendants

RAPC now alleges three causes of action against TME and Crabtree. The first cause of action is entirely new in violation of this Court's prior order requiring that plaintiff first obtain leave to amend and add new claims (*see* 7/18/19 Order at 11) —and requests the Court declare that TME is engaged in the unauthorized practice of law under both California and Texas law (SAC ¶ 75). The second cause of action alleges that TME violated the Lanham Act by (i) its use of the term "professional" in its advertising, and (ii) in statements concerning its privacy/identity protection program. (SAC ¶¶ 13-35, 79-84). It also alleges a Lanham Act violation by Crabtree in his individual capacity. (SAC ¶¶ 36-38, 79-84). Lastly, the third cause of action alleges that TME and Crabtree have violated the unlawful and unfair prongs of California's UCL by, among other things, engaging in the unauthorized practice of law. (SAC ¶¶ 39-73, 85-92). As explained below, this Court should dismiss each of these allegations in their entirety and with prejudice.

## III. LEGAL STANDARDS APPLICABLE TO MOTION TO DISMISS

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). While Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation, citation, and alteration omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[2] Because LegalForce is a Delaware corporation like TME, (*see* dkt. 44 (FAC) at ¶¶ 3-4), in order to avoid complete dismissal in the event this Court finds no federal question jurisdiction, RAPC now files this SAC as the lone plaintiff and urges this Court to exercise diversity jurisdiction over its UCL claims should the federal claims be dismissed. (Dkt. 107 at 2-3 (SAC ¶¶ 5, 10)). TME does not dispute that diversity exists between it and RAPC, assuming the requisite amount in controversy.

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. And, particularly relevant here, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678 (internal quotation and citation omitted).

Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just [generally] deny that they have done anything wrong." *Id.* (internal quotation marks and citations omitted).

## IV. ARGUMENT

### A. Plaintiff's Declaratory Judgment Action Should Be Dismissed with Prejudice.

RAPC seeks a declaration from this Court "that [TME]'s trademark filing services . . . violate Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102 or Tex. Pen. Code § 38.122" – statutes prohibiting the unauthorized practice of law. (SAC ¶ 77). Even assuming TME's services violate those statutes (they do not), RAPC's declaratory judgment claim must fail. It is improvidently brought and RAPC lacks standing to pursue it.

#### i. RAPC's Declaratory Judgment Claim Is Subject to Dismissal under Rule 41(b).

First and foremost, RAPC's declaratory judgment claim is entirely new and pled in violation of the Court's Order dismissing the FAC, in which the Court afforded Plaintiffs' leave to file a SAC, but cautioned that "plaintiffs may not add therein any new defendants or any new claims, without first obtaining leave of court." 7/19/18 Order at 11. RAPC did not seek leave to add this claim. Accordingly, it should be dismissed with prejudice and without consideration on its merits pursuant to Rule 41(b), which allows the Court to dismiss a claim "[i]f the plaintiff fails . . . to comply with . . . a court order."[3] Fed. R. Civ. Proc 41(b); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260

---

[3] Defendants do not seek to use Rule 41(b) as a terminating sanction as to the entire case, only with respect to the

(9th Cir. 1992), *cert. denied*, 506 U.S. 915 (1992) ("Pursuant to Federal Rule of Civil Procedure 41(b), the district court may dismiss an action for failure to comply with any order of the court.").[4] Before dismissing an action pursuant to Rule 41(b), the district court should weigh several factors, including "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

Here, all of the applicable factors that the Court must consider weigh in Defendants' favor. As explained below, RAPC has no standing to advance this cause of action. The public has an interest in the expeditious resolution of this case, which the declaratory judgment claim will only delay. This Court has already explained to RAPC how to amend its pleadings and retains discretion to manage its docket.[5] The risk of prejudice to defendant is great should RAPC be granted leave to amend this meritless claim. This claim cannot and should not be decided on its merits. And finally, the sanction of dismissal with prejudice is appropriate on this set of facts, where RAPC has been warned of the appropriate local rules and procedures but willfully violated them nonetheless.

### ii. RAPC's Declaratory Judgment Claim Is Subject to Dismissal under Rule 12(b)(6).

The declaratory judgment claim is also subject to dismissal under Rule 12(b)(6) as it fails to state a claim upon which relief can be granted. Where a plaintiff seeks declaratory relief, the complaint must allege sufficient facts to demonstrate an "actual controversy" exists. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941). That is to say, a plaintiff must

---

declaratory judgment claim.

[4] *See, e.g., Rose v. City of Waterbury*, 2013 WL 3967649, at *2-3 (D. Conn. July 31, 2013) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. . . . Thus, where a party files an amended complaint where leave or consent is required and no leave or consent has been given, the complaint has no legal force or effect.") (internal citations omitted)).

[5] In a related case, this Court previously and explicitly warned plaintiffs of the consequences of not following the applicable Federal Rules and Local Rules of this District that govern leave to amend, as well as the procedure to follow. *See* Case No. 17-cv-07194-MMC, Dkt. 83 ("Under the Local Rules of this District, a party seeking leave to file an amended complaint 'must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.' *See* Civil L.R. 10-1. Here, plaintiffs, in support of the instant motion, have not submitted a proposed Second Amended Complaint, nor even explained what proposed amendments they seek to make.").

have standing to seek adjudication of the controversy. *See Allen v. Wright*, 468 U.S. 737, 752 (1984) (questions of standing turn on "whether the particular plaintiff is entitled to an adjudication of the particular claim asserted"). In order to have standing, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Here, RAPC does not seek a declaratory judgment that TME harmed it by violating the Lanham Act or violating California's Unfair Competition Law. Instead, TME seeks a judgment that TME violated three statutes that confer no rights or interests on RAPC:

*California Business and Professions Code § 6125* – Section 6125 states only: "No person shall practice law in California unless the person is an active member of the State Bar." Section 6125 creates no private right of action and confers no rights or interest on RAPC.[6] As such, it lacks standing to seek a declaratory judgment that TME has violated it.

*Texas Government Code § 81.102* – The same is true in Texas with regard to Texas Government Code § 81.102 which simply states that "a person may not practice law in this state unless the person is a member of the state bar." It confers no private right of action or cognizable rights or interests on RAPC. *See* Tex. Disciplinary Rules of Prof'l. Conduct, preamble ¶ 15. ("Violation of a rule does not give rise to a private cause of action..."); Tex. Judicial Canon 8A. ("The Code . . . is not intended as a basis for civil liability.").

*Texas Penal Code § 38.122* – Lastly, Texas Penal Code § 38.122 criminalizes the unauthorized practice of law in Texas as "a felony of the third degree." It does not create a civil cause of action and only the relevant Texas prosecuting agency may police and enforce it. *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App. 2002) ("[T]he Texas Penal Code does not create private causes of action; therefore, these allegations fail to state a viable claim for relief.").

---

[6] A subsequent provision creates a right of action, but only for individuals who obtained services offered in violation of Section 6125. *See Ling Tie v. Peng Chan*, 2010 WL 10930695, at *4 (C.D. Cal. Dec. 12, 2010) (reasoning that section 6126.5(a) only confers a private right of action for individuals "who obtained services offered or provided in violation of [s]ection 6125." (citation omitted)). RAPC nowhere alleges that it, as an entity, obtained legal services offered or provided in violation of section 6125. It cannot.

6

Quite simply, "[t]he fact that someone is engaged in (or through a conspiracy is allowed to engage in) the unauthorized practice of law does not by itself create any basis for a . . . cause of action." *See Ruiz v. Singer*, 2015 WL 12803451, at *4 (C.D. Cal. Mar. 30, 2015).[7] RAPC's attempt to create one by seeking declaratory judgment regarding the alleged violation of statutes in which it has no interest should be rejected and the Court should dismiss it with prejudice.

**B.       Plaintiff's Lanham Act Claim Should Be Dismissed with Prejudice.**

The SAC seeks to impose liability on Defendants under the Lanham Act for five statements contained in Google advertisements and/or on TME's website at various times, all of which RAPC claims are allegedly false and misleading:

(1) *"Let the Professionals File Your Trademark Today!"*

(2) *"Professional Preparation of your federal trademark application."*

(3) *"Protect your Identity - Identity Protection Program."*

(4) *"With our Trademark Privacy Protection program, the public will see our email and phone number rather than yours."*

(5) *"Yes, I want to keep my information private ($5/month) Highly Recommended."*

(SAC ¶¶ 15, 17, & 26). None of these statements are sufficient to impose liability on Defendants under the Lanham Act. To state a claim under the Lanham Act, RAPC must allege that TME made a false or misleading statement of <u>fact</u>, and none of the above statements are actionable statements of fact. *See Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Liability under the relevant provision of the Lanham Act requires, among other things, a 'false or misleading representation of fact'") (emphasis in original); 15 U.S.C. § 1125(a)(1). Moreover, RAPC does not allege with sufficient specificity under Rule 9(b) where, how, and why these statements are false or misleading. Perhaps more importantly, it also fails to draw any causal connection between them and RAPC's alleged injury.

---

[7]    Moreover, as Judge Alsup in this District reasoned in a similar factual scenario: "federal law does not regulate the practice of law." *Cunningham v. Singer*, 2015 WL 124572, at *2 (N.D. Cal. Jan. 8, 2015), *aff'd*, 667 F. App'x 961 (9th Cir. 2016). As observed in *Paciulan v. George*, 229 F.3d 1226, 1229 (9th Cir. 2000), "[s]tates have traditionally enjoyed the exclusive power to license and regulate members of their respective bars." *See Leis v. Flynt*, 439 U.S. 438, 442 (1979).

7

### i.  The SAC Does Not Cure the FAC's Pleading Deficiencies

The court previously dismissed RAPC's Lanham Act claims regarding TME's use of the word "professional" because Plaintiffs failed to identify "the nature of the 'ad copy'" in which the statements were found (7/19/18 Order at 6), failed "to allege where on the website it can be located, and, particularly, where it is located in relation to statements disclaiming that Trademark Engine provides legal services" (*id*.), failed to satisfy the pleading requirements of Rule 9(b) (*id*. at 6-7), did not allege that TME's statements were "literally false" (*id*.), and failed "to allege any facts to support their conclusory assertion that the challenged statement has actually 'give[n] consumers' the misleading impression that Trademark Engine provides legal advice" (*id*. at 7).  Now, in an attempt to plead around the Court's prior ruling, RAPC has included screenshots of the challenged statements (SAC ¶¶ 16-17), alleged they are "literally false" (SAC ¶¶ 18, 29), and alleged that consumers are misled "into believing that [TME] provides at least lawful services" (*see* SAC ¶ 24). These allegations are, like the allegations before them, insufficient.

The SAC again fails to meet the heightened pleading standard of Rule 9(b).  Plaintiff's Lanham Act claim remains grounded in fraud because Plaintiff alleges TME "violates the Lanham Act by making . . . false and/or misleading statements on its website" (SAC ¶ 14) and the "statements relate to descriptions or representations of fact that misrepresent the nature, characteristics, and quality of [TME]'s services" (SAC ¶ 14).  It continues to allege that these statements deceive customers.  (SAC ¶¶ 13, 23, 34).  As the Court previously held, where claims, including claims of misleading advertising "sound in fraud," Rule 9(b)'s heightened pleading standard applies.  7/19/18 Order at 5.  Despite the Court's instruction, RAPC again fails to allege where on the website the alleged fraudulent statements "can be located, and, particularly, where it is located in relation to statements disclaiming that Trademark Engine provides legal services." 7/19/18 Order at 6.  RAPC's omission is telling—there is a disclaimer on the webpage containing TME's complained-of use of the word "professional" (and most others) that states "Trademark Engine provides information and software only.  Trademark Engine is not a 'lawyer referral service' and does not provide legal advice or participate in any legal representation."  (*See* SAC, Exhibit C at 4.)  Of course, only a conveniently cropped portion of that webpage was included in

8

the body of the SAC. (*See* SAC ¶ 17.) Without more, neither Defendants nor the Court can fairly determine the "the who, what, when, where, and how" of these allegedly false statements and RAPC's Lanham Act claim should be dismissed under Rule 9(b).

### ii. TME's Use of The Word "Professional" is Not an Actionable Statement.

RAPC now claims that statements (1) and (2) are false and misleading because use of the word "professional" misrepresents "the nature and quality of [TME's] trademark filing services." (SAC ¶ 14.) Specifically, RAPC alleges that TME provides its services in violation of various statutes including those prohibiting the unauthorized practice of law, and as such, its "services are unlawful." (*Id.*) According to RAPC, since the services are "unlawful," "[u]sing the word 'professional' in Statements #1 and #2 to represent the nature of [TME]'s trademark filing services is ***literally false***." (SAC ¶ 18 (emphasis in original)). This is because "no unlawful service can be called a 'professional' service." (SAC ¶ 19). "In this sense, 'professional' becomes a statement of fact with a guarantee that the service is lawful." (SAC ¶ 21). Because of this alleged "literal" falsity, RAPC claims, "[u]sing the word 'professional' in these statements has actually misled or confused the consuming public, including actual [TME] customers, into believing that [TME] provides at least lawful services." (SAC ¶ 23.)

RAPC's twisted reasoning is as hard to follow as it is wrong. It strains credulity to claim that use of the word "professional" in this context is anything beyond non-actionable opinion or puffery. RAPC admits that "use of 'professional'" to "represent that [TME] has better experience or service quality than others" would "be merely an opinion or nonactionable puffery." (SAC ¶ 20). Nothing in the SAC's tortured logic changes that fact and makes TME's use of the word "professional" "literally false." To simply allege that it does is only to couch a legal conclusion as a fact, one that the Court need not accept. *See* 7/19/18 Order at 3 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). RAPC's self-serving allegations cannot define what is factual and what is not.

To permit RAPC's claim to proceed on this theory, the Court would need to accept as true RAPC's legal conclusion that TME's use of the term "'professional' <u>becomes a statement of fact with a guarantee that the service is lawful.</u>" (SAC ¶ 21). It need not do so. This Court has

9

previously dismissed near identical Lanham Act claims in a related case. *See* Case No. 18-cv-00127-MMC, Dkt. 33 at 7-9 ("A number of courts have considered whether 'professional' connotes a factual assertion, and have concluded under the circumstances presented therein that it did not . . . [a]ccordingly, to the extent the Lanham Act claim is based on 'Get unbeatable professional service for less money!,' the claim is subject to dismissal."). This claim should be similarly dismissed.

### iii.    *TME's Use of The Word "Professional" Does Not Plausibly Mislead Consumers*

Because TME's use of the word "professional" cannot be literally false, then, as this Court ordered in dismissing the FAC:

> [P]laintiff must establish the statement "has misled, confused, or deceived the consuming public." Stated otherwise, "where the advertisements are not literally false," the plaintiff "cannot obtain relief by arguing how consumers could react; [the plaintiff] must show how consumers actually do react."

7/19/18 Order at 7 (citations omitted). In order to overcome this burden, RAPC has alleged that "[u]sing the word 'professional' in these statements has actually misled or confused the consuming public, including actual [TME] customers, into believing that [TME] provides at least lawful services." (SAC ¶ 23). To support his allegation, RAPC has apparently embarked on a (likely tortious) survey of TME customers, select results of which are attached to the SAC.[8]

Specifically, RAPC alleges that thirteen TME customers "were actually misled by [TME]'s use of the word 'professional' into believing that [TME] provides at least lawful services." (SAC ¶ 24). Per the SAC, each of these customers "thought" or "believed" or "assumed" that TME was "providing a lawful service" – responses that appear to presume TME somehow acted unlawfully. (*See* SAC ¶ 24). To find these allegations sufficient, the Court must accept as true RAPC's implausible legal conclusion (as these customers were surely led to believe by RAPC during the

---

[8]    The email Mr. Abhyanker sent to (likely thousands of) TME customers states, in part: "We filed a federal lawsuit against Trademark Engine LLC claiming that they are engaged in illegal practices when filing U.S. trademark applications. We are looking for witnesses to share their facts. You may also be eligible to receive compensation for financial damages. If you want to protect your privacy and consumer rights, please use this link to sign up . . . Trademark Engine's conduct and methods of filing your trademark may lead to the abandonment of your trademark application and jeopardize the validity of any resulting registration." While disconcerting in its misleading attempt to manufacture evidence, Abhyanker also sent the email to Defendant Crabtree soliciting him as a potential client while he was obviously represented by counsel.

10

survey), that TME is wholesale violating various state and federal laws and thus providing an "unlawful" service. Again, this Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)

Moreover, even considering the content of these alleged survey responses, it does not follow, nor is it plausible to conclude, that consumers have been misled into believing (by use of the word "professional") that TME was engaged in the practice of law—particularly in light of the numerous disclaimers cited in the SAC explicitly indicating otherwise. As alleged in the SAC, the TME terms of use and other disclaimers on the TME website explicitly advise consumers that TME does not practice law, cannot provide legal advice, and does not serve as a substitute for an attorney:

> a. *Our customer service representatives cannot answer legal questions and because we do not have an attorney-client relationship, any communications with our customer service representatives are not privileged and you should not share confidential information with them.*
>
> b. *At no time do we review your answers for legal sufficiency, draw legal conclusions, provide legal advice, opinions or recommendations about your legal rights, remedies, defenses, options, selection of forms, or strategies, or apply the law to the facts of your particular situation.*
>
> c. *Trademark Engine is not a 'lawyer referral service' and does not provide legal advice or participate in any legal representation. Use of Trademark Engine is subject to our Terms of Service and Privacy Policy.*
>
> d. *We are not a substitute for an attorney and we cannot provide you any legal advice.*

(SAC ¶ 61). No reasonable consumer would be misled by the word "professional" in light of these disclaimers. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) ("[T]he reasonable person standard is well ensconced in the law in a variety of legal contexts in which a claim of deception is brought. It is the standard for false advertising and unfair competition under the Lanham Act."); *In re Sony Grand Wega KDF-E A O/A20 Series Rear Projection HDTV Television Litigation*, 758 F.Supp.2d 1077, 1088 (S.D. Cal. 2010) (a reasonable consumer may not be misled by advertisements when sufficient disclaimers are present).

Accordingly, the court need not accept RAPC's implausible allegations about consumer confusion related to its use of the term "professional" and this claim should be dismissed.

### iv.    TME's Privacy-Related Statements Also Fail to Support a Lanham Act Claim

RAPC also alleges that three other statements by TME concerning its privacy/identity protection program are "literally false": (3) "Protect your Identity – Identity Protection Program"; (4) "With our Trademark Privacy Protection program, the public will see our email and phone number rather than yours"; and (5) "Yes, I want to keep my information private ($5/month) Highly Recommended."  (SAC ¶ 26).

As explained above, RAPC's Lanham Act claim (including its claim as to these three statements) sounds in fraud and is subject to Rule 9(b).  And, without more specificity, it is wholly unclear how "Protect your Identity – Identity Protection Program" or "Yes, I want to keep my information private ($5/month) Highly Recommended" could be actionable statements of fact. They are not.  The first is not even a sentence.  Only statements of fact are actionable.  *See Coastal Abstract Serv., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Liability under the relevant provision of the Lanham Act requires, among other things, a 'false or misleading representation of fact.'").

With respect to statement (4) – "With our Trademark Privacy Protection program, the public will see our email and phone number rather than yours." – RAPC alleges it is literally false because TME "always lists each of its customer's contact information, including emails and phone numbers, on USPTO's trademark application forms" and points to specific instances of TME customers' "information being publically available on USPTO's website."  (SAC ¶ 32).  These are, again, conclusory allegations lacking any detail that the Court need not accept.  They do not provide sufficient information to determine the "the who, what, when, where, and how" of this allegedly false statement, and they do not satisfy the heightened pleading requirements of Rule 9(b).

### v. RAPC Cannot Plead Causation or Demonstrate Standing to Advance a Lanham Act Claim

Moreover, even assuming TME employs the term "professional" incorrectly, and even assuming specific TME customers' contact information appears on the USPTO's website, these allegations alone do not adequately establish or plead harm sufficient **_for RAPC_** to advance a Lanham Act violation. In order to have standing to invoke the Lanham Act for false advertising, RAPC must "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 (2014).

RAPC fails to connect TME's use of the term "professional" in its advertising, or TME's statements about its privacy/identity protection program, to any "economic or reputational injury" that RAPC suffered, as required by *Lexmark*. RAPC's survey responses of alleged TME customers are totally silent on how TME's use of the term "professional," or TME's advertising of its privacy/identity protection program, causes these consumers to withhold business from RAPC. That is because RAPC cannot plausibly trace TME's use of the word "professional" in its advertising, or TME's upsell statements about its privacy/identity protection program to TME's own customers,[9] to RAPC's alleged "lost revenue, loss of market share, reduced asset value, diverted sales to [TME], and increased advertising costs." (SAC ¶ 66.) Though it makes conclusory allegations that "Defendants' false and misleading advertisement" caused it injury (SAC ¶ 66), it makes no effort to allege facts demonstrating how these specific false statements caused that harm. This is because it is impossible to do so, especially where RAPC admits it offers trademark filing services plus government filing fees for the same price as TME. *See* Dkt. 107 at 17-18 (SAC ¶¶ 57-58, 60 ("As explained above, RAPC provides superior technology, is more

---

[9]   RAPC alleges that "these statements have been shown **to paid customers** of [TME] in the upsell page towards the end of the trademark filing workflow." (SAC ¶ 28 (emphasis added).) Claiming that RAPC suffered "lost revenue, loss of market share, reduced asset value, diverted sales to [TME], and increased advertising costs" as a result of a supposedly deceptive upsell to people who were already paid customers is clearly implausible. In truth, the harm that RAPC alleges occurred as a result of TME's alleged false privacy statements **is harm to TME's customers, not to RAPC**. (SAC ¶ 30 ("TE does not protect the privacy of its customers who purchased the privacy protection program.")).

innovative, and provides more qualified, higher quality services than [TME] at the same price."")). Because RAPC cannot advance facts to plausibly allege proximate cause leading to its own economic injury, it cannot maintain a Lanham Act claim.[10]

### vi.  RAPC's Lanham Act Claims against Crabtree Also Fail

RAPC also seeks to hold TME's co-founder, part-owner, and general counsel, Defendant Crabtree, personally liable for the same five allegedly false statements.  In doing so, RAPC has apparently abandoned its failed alter ego theory of liability from the FAC.  Instead, RAPC now alleges that Crabtree personally violated the Lanham Act by his own actions because he "actively manages the daily operations of [TME]" (SAC ¶ 37) and because "upon information and belief" he "authorized, directed or participated in the design and advertising of the five false and misleading statements alleged above" (SAC ¶ 38).  These allegations sound in fraud as they are predicated on the same allegedly false statements discussed above.  As such, if RAPC's claims against TME fail, so do its claims against Crabtree.  They are also subject to Rule 9(b).

To satisfy Rule 9(b), as RAPC must, a plaintiff must include "the who, what, when, where, and how" of the fraud *as to each defendant*.  *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017, 1019 (N.D. Cal. 2012).  Where there are multiple defendants who are alleged to have engaged in fraudulent conduct, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).  RAPC has not done so with the requisite specificity.

The SAC's conclusory allegations merely equate Crabtree's liability pursuant to the Lanham Act with his status as an officer and/or co-founder and/or managing member of the LLC.  This is

---

10    RAPC appears to recognize that it cannot adequately allege causation by proffering an alternative "market share liability" theory of causation, by which it supposedly "can prove that an entire industry was tortious" and thereby shift the burden to the defendant to show that it did not cause the injury.  (*See* SAC ¶ 72).  This theory is clearly unavailable to RAPC, as it only applies to plaintiffs who are injured by a fungible product.  *Sanderson v. Int'l Flavors & Fragrances, Inc*., 950 F. Supp. 981, 991 (C.D. Cal. 1996) ("Under the market share liability theory of liability, a plaintiff harmed by a fungible product that cannot be traced to a specific producer may sue various manufacturers of the product if the plaintiff joins a substantial share of those makers as defendants.").  TME does not sell a fungible product and RAPC does not claim that it was injured by one.

14

insufficient on its face.  The "facts" alleged in the SAC state only that Crabtree is involved in TME's operations.  (SAC ¶ 37).  Operations are distinct from authoring, drafting, editing, disseminating, and ultimately posting, the alleged five false and misleading advertisements on the TME website.  The SAC also concludes, on "information and belief," with no factual basis or particularity whatsoever, "because advertising and promotion is key to a company's operation . . . Crabtree authorized, directed or participated in the design and advertising of the five false and misleading statements alleged above."  (SAC ¶ 38).  Allegations on information and belief alone cannot satisfy Rule 9(b) without more supporting facts.  *See, e.g., Hollander v. Etymotic Research, Inc.*, 726 F. Supp. 2d 543, 556 (E.D. Pa. 2010) (reasoning that Rule 9(b) permits allegations based on 'information and belief' "but only if the pleading sets forth specific facts upon which the belief is reasonably based." (citation omitted)); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 282 (3d Cir. 2006) (reasoning that corporate director's knowledge, sufficient to satisfy Rule 9(b), "may not rest on a bare inference that a defendant 'must have had' knowledge of the facts" or "must have known" of the fraud given his or her position in the company).  These allegations, taken as a whole, lack the requisite Rule 9(b) particularity as to Crabtree's alleged involvement in authoring or disseminating the purportedly fraudulent or misleading statements.  Imposing individual liability, on these allegations, is not appropriate.  Dismissal with prejudice is.

**C.    Plaintiff's UCL Claims Should Be Dismissed with Prejudice.**

RAPC's UCL claims against both Defendants should be dismissed with prejudice because RAPC (i) lacks standing to allege them; (ii) fails to adequately plead facts underlying the predicate "unlawful" acts pursuant to that prong; and (iii) fails to allege an adverse impact on competition—not just on RAPC—pursuant to the "unfair" prong.

> ***i.    RAPC Lacks Standing for Failure to Plead Its Own Reliance on TME's Alleged Fraud or Misrepresentation.***

RAPC alleges that it has Article III standing to sue under the UCL "because it has suffered injury in fact and lost money, including diverted sales to Defendants, lost revenue, loss of market share, reduced asset value, and increased advertising costs."  (SAC ¶ 86).  But California courts have determined that the UCL requires more than just Article III standing.  All three prongs of the

15

UCL also require a showing of actual reliance in order to achieve standing where the asserted conduct stems from misrepresentation, deception, or fraud. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (Cal. 2011) (In 2004, the UCL was revised "to confine standing to those actually injured by a defendant's business practices."); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Cal. 2010) ("[O]mitting an actual reliance requirement when the defendant's alleged misrepresentation has not deceived the plaintiff 'would blunt Proposition 64's intended reforms.'" (citation omitted)); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013).

As courts of this district have recognized, "California courts have . . . extended this actual reliance requirement to claims under the unlawful prong of the UCL that are based . . . on allegations of misrepresentation and deception." *See Guttmann v. La Tapatia Tortilleria, Inc.*, 2015 WL 7283024, at *3 (N.D. Cal. Nov. 18, 2015) (citing *Durell*, 183 Cal. App. 4th at 1363). "Finally, courts have construed an actual reliance standing requirement to claims under the unfair prong of the UCL if those claims sound in fraud." *Id.* at *4 (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 326 n.17 (Cal. 2009)). *See also Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1177-78 (N.D. Cal. 2016) (dismissing UCL claim for failure to plead own reliance).

Here, RAPC lacks standing to assert any UCL claims under California law because RAPC cannot plausibly allege its own reliance on the asserted misrepresentation, deception, or fraud stemming from Defendants' purported: (i) covert, unauthorized practice of law (which, according to RAPC, it fraudulently misrepresents as "professional"); (ii) misrepresentation in advertising amounting to a violation of the California Constitution's right to privacy; or (iii) deceptive and fraudulent violation of a federal criminal fraud statute (which requires scienter) by "aiding and abetting its customers in submitting fraudulent specimens to the USPTO." (SAC ¶¶ 51-52). A clear read of RAPC's UCL allegations demonstrates that—despite its valiant effort to scrub the SAC's UCL section clear of alleged false and misleading acts or statements—RAPC's UCL claims continue to be based on TME's alleged misrepresentations. (*See, e.g.*, SAC ¶ 64 ("[TME's] false and misleading promotional statements deceive consumers into purchasing inferior services, but its success in exploiting advantages by not operating as a law firm—despite surreptitiously practicing

16

law—have also given it a broader competitive advantage[.]"); ¶ 65 ("It is thus important that [TME] is enjoined and held accountable for its false and misleading promotions and unfair competitions as described herein."); ¶ 66 ("As a result of Defendants' false and misleading advertisement and unfair competition, RAPC has suffered lost revenue, loss of market share, reduced asset value, diverted sales to [TME], and increased advertising costs."); ¶ 68 ("But for TE's conduct of false advertising and unfair competition, a good percentage of consumers likely would have purchased RAPC's trademark filing services[.]"); ¶ 71 ("Defendants' conduct of false and misleading advertising and unfair competition proximately caused RAPC's injury.").

Because RAPC does not and cannot plead its own reliance on TME's allegedly false advertising or misrepresentations, only the reliance of their potential customers (or perhaps the USPTO), RAPC lacks standing to pursue this UCL action and its entire claim should be dismissed with prejudice on the basis of futility.

### ii. RAPC Fails to Plausibly Allege a Violation of the UCL's "Unlawful" Prong.

Standing aside, to plead a violation of the "unlawful" prong of the UCL, RAPC must allege that the challenged practice violates another law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999). In order to survive a motion to dismiss under the "unlawful" prong, RAPC must adequately allege with "reasonable particularity" "anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* (quotations and citations omitted). RAPC bases its UCL claim on allegations that TME violated: (i) Article I, § 1 of the California Constitution (declaring persons' inalienable rights); that TME and Crabtree both violated (ii) 18 U. S. C. § 1001 (criminalizing false statements to a government agency) and (iii) various statutes prohibiting the unauthorized practice of law; and (iv) that Crabtree violated various federal regulations that apply to the representation of applicants before the USPTO by attorneys. (SAC ¶ 87). RAPC fails to meet the pleading standard for establishing a violation of each of these statutes and its UCL claim under the unlawful prong should be dismissed. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554-55 (Cal. App. 2007) ("In attempting to state a claim under this prong of the UCL, the SAC provide[d] a laundry list of state and federal statutes

17

[plaintiff] allegedly violated. . . . [T]he SAC nonetheless fails to plead facts to support its allegations that [plaintiff] has violated ***each*** of these statutes." (emphasis added.)).

### a. *California Constitution, Article 1, § 1*

RAPC alleges that Defendants violated the privacy rights of certain TME customers under Article 1, Section 1 of the California Constitution by "(1) waiving clients' rights to cancel the filing or refund the government fee; (2) waiving clients' rights to privacy by allowing their names, phone numbers, emails and street addresses to be published publicly; and (3) permitting USPTO to make clients' information available for public search on USPTO's online databases and other online databases." (SAC ¶ 48). These allegations, even if assumed to be true, are insufficient to plead an actionable violation of the California Constitution. There is no allegation that any TME customer was harmed as a result of TME's alleged conduct. There is also no suggestion as to how this specific information caused (or could cause) anyone embarrassment, as required to state a claim.

The California Constitution creates a privacy right that protects individuals from the invasion of their privacy by private parties. Cal. Const. Art. 1, § 1. But to be actionable "invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right.*" Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37, 39-40 (1994). Applying this strict standard, courts have found no violation of privacy interests even where a person's social security number was disclosed, where a name and address were obtained without a person's knowledge or permission, or even where a person was compelled to urinate under supervision during a drug test. *See Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1128 (N.D. Cal 2008) (social security number disclosure "d[id] not approach th[e] standard"); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (Cal. Ct. App. 2011) (obtaining plaintiff's address without knowledge or permission "not an egregious breach of social norms, but routine commercial behavior."); *Hill*, 7 Cal. 4th at 40. If such conduct does not implicate the constitutional privacy right, disclosure of names, addresses, and emails to the

USPTO (which were then allegedly published by the USPTO—not TME) is similarly insufficient as a matter of law.[11]

### b.    18 U.S.C. § 1001

RAPC's allegation that TME violated 18 U.S.C. § 1001 also fails as a matter of law. Section 1001 criminalizes "knowingly and willfully" making false statements "in any matter within the jurisdiction of" any branch of the federal government.[12]  RAPC alleges that TME has committed a federal crime by "submitting or aiding and abetting its customers in submitting fraudulent specimens to the USPTO."  However, "[t]o establish a violation of § 1001, the Government must prove beyond a reasonable doubt that the statement was made with knowledge of its falsity." *United States v. Yermian*, 468 U.S. 63, 64 (1984).  RAPC ***does not allege***, that any defendant "knowingly and willfully" made false statements or concealed information.  (*See* SAC ¶¶ 51-52). In fact, RAPC has done no more than plead the elements of the statute and identify specimens that it believes are "fake."  (*See* SAC ¶¶ 51-52).  These threadbare allegations, which fail to allege a required element of the supposed crime, are clearly insufficient to plead a violation of this statute. *Iqbal*, 129 S. Ct. at 1940.  Moreover, allegations of fraud, such as those here, are subject to the heightened pleading requirements of Rule 9(b), which RAPC has failed to satisfy in the four short sentences that it devotes to this alleged violation.

### c.    The Unauthorized Practice of Law

Plaintiff cites no instances of TME or Crabtree engaging in the unauthorized practice of law ("UPL") in the SAC.  RAPC points to no instances of any defendant appearing on behalf of a customer before the USPTO, no advocacy with a third party, and no actual legal advice as proscribed by UPL authority.  The practice of law *does not include* helping customers through

---

[11]    Moreover, RAPC's claim that Defendants violated the California Constitution is entirely new and pled in violation of the Court's Order dismissing the FAC, in which the Court afforded Plaintiffs' leave to file SAC, but cautioned that "plaintiffs may not add therein any new defendants or any new claims, without first obtaining leave of court." 7/19/18 Order at 11.  RAPC did not seek leave to add this claim and it should be dismissed.

[12]    Though not explicitly enumerated in the SAC's UCL cause of action (SAC ¶ 88), paragraph 55 states that Crabtree violated § 1001 "himself personally" by "either directly submitted or aided and abetted TE to submit fake and fraudulent specimens to the USPTO."  (SAC ¶ 88).  This threadbare allegation fails for the same reasons that RAPC's allegations against TME fail.

19

routine form-filling exercises.  Rather, the sphere of what constitutes the practice of law in the context of advice around issues that have legal implications is defined by the level of legal sophistication required for a particular task.

Indeed, this line was drawn many decades ago when courts began to address UPL concerns in what might be considered a highly sophisticated form-filling practice: preparing tax returns.  In 1951, the Minnesota Supreme Court issued a seminal UPL opinion arising out of a tax-preparation issue (*Gardner v. Conway*), which has since been cited with approval around the country, including the U.S. Supreme Court in *Sperry v. State of Fla. ex rel. Florida Bar*, 373 U.S. 379, 383 (1963).  The *Gardner* opinion held:

> Generally speaking, whenever, as incidental to another transaction or calling, a layman, as part of his regular course of conduct, resolves legal questions for another—at the latter's request and for a consideration—by giving him advice or by taking action for and in his behalf, he is practicing law <u>if difficult or doubtful legal questions are involved</u> which, to safeguard the public, <u>reasonably demand the application of a trained legal mind</u>. What is a <u>difficult or doubtful question of law</u> is not to be measured by the comprehension of a trained legal mind, but by the understanding thereof which is possessed by <u>a reasonably intelligent layman who is reasonably familiar with similar transactions</u>.

234 Minn. 468, 481 (Minn. 1951) (emphasis added).  This test not only recognizes the fact that advice on simple or clear legal issues does not constitute the practice of law, it also recognizes that a reasonably intelligent layperson, familiar with a particular type of transaction, has leeway to give advice on such transactions.  It is impossible to conceive of an industry that does not operate in reliance on the truth of these legal principles.  Non-lawyer employees *must* be able to thoroughly discuss and address the day-to-day transactions they deal with—even if those transactions have legal implications.  Thus, it is long-established under California and Texas law that a non-lawyer may assist a customer in preparing a document with legal implications, so long as such assistance does not stray into difficult or doubtful legal issues which require a trained legal mind.  *See* Tex. Gov't Code Ann. § 81.101(c); *Agran v. Shapiro*, 127 Cal. App. 2d Supp. 807, 818, 273 P.2d 619, 626 (Cal. App. Dep't Super. Ct. 1954) (adopting the reasoning of *Gardner v. Conway*).

Here, with respect to TME, RAPC has alleged that TME engaged in the unauthorized practice of law by: (i) "performing pre-filing trademark searches"; (ii) "creating and reviewing

trademark applications"; (iii) "making legal determinations about classification and other matters"; (iv) "advising clients on problems with their applications including recommending changes to classifications and descriptions of goods and services"; and (v) "filing trademark applications on clients' behalf." (SAC ¶ 41). None of these actions rise to the level of advising on "difficult or doubtful legal questions," nor do they "reasonably demand the application of a trained legal mind." A "reasonably intelligent layman who is reasonably familiar with similar transactions" could do any of these tasks without running into "a difficult or doubtful question of law." That is, in fact, what TME and everyone else in this industry does – employees intelligent *professionals* who are familiar with the process of trademark applications to assist customers with tasks that do not require a lawyer. That is not the unauthorized practice of law and RAPC makes no allegations explaining how or why any of these tasks rise to the level of requiring a trained legal mind. No allegation in the SAC demonstrates that any TME employee has provided any advice or services involving difficult or doubtful legal issues. And, without more, RAPC's allegations of UPL against TME simply do not raise its right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

With respect to Crabtree, RAPC alleges generally that he has violated three specific UPL statutes (Cal Bus. & Prof. Code § 6125, Tex. Gov't Code § 81.102, and Tex. Pen. Code § 38.122) by "practicing law behind a non-legal corporation" and "aiding and abetting [TME] to practice law." (SAC ¶ 53). However, the SAC contains no allegations demonstrating or even explaining how he violated them:

- California Business and Professions Code § 6125 states simply: "No person shall practice law in California unless the person is an active member of the State Bar." There are no allegations that Crabtree practices law in the state of California.

- Texas Government Code § 81.102 states that "a person may not practice law in this state unless the person is a member of the state bar." The SAC actually alleges that Crabtree is a member of the Texas Bar. (SAC ¶ 7).

- And, Texas Penal Code § 38.122 states that a person violates it "if, with intent to obtain an economic benefit for himself or herself, the person holds himself or herself out as a lawyer, unless he or she is currently licensed to practice law in this state, another state, or a foreign country and is in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed." Again, Crabtree *is* a member of the State Bar of Texas and there are no allegations that he is not in good standing in any jurisdiction. (*See* SAC ¶ 7).

21

None of these statutes prohibit "practicing law behind a non-legal corporation" and RAPC makes *no allegations* explaining how Crabtree aided or abetted TME to them.

### d. The USPTO's Rules of Professional Conduct

Lastly, RAPC alleges that Crabtree violated 37 C.F.R. §§ 11.104(a)(2), 11.503(b), 11.107, 11.109, and 11.115(c) by "failing to reasonably consult with clients," failing to supervise assistants who were "engaged in the unauthorized practice of law," failing to run conflict checks, and failing to use a client trust account. (SAC ¶ 56). All of these regulations are part of the USPTO Rules of Professional Conduct for attorneys admitted to practice before the USPTO. The CFRs that RAPC alleges Crabtree has violated govern the client-practitioner relationship. *See* 37 C.F.R. 11.100 et seq. However, Crabtree does not represent TME customers before the USPTO and there are no allegations that he does. Therefore, no allegations in the SAC are sufficient, even if assumed to be true, to show that these regulations apply to Crabtree's alleged actions, let alone show that he violated them.

### iii. RAPC Fails to Allege an Impact on Competition as Required to State a Claim under the UCL's "Unfair" Prong.

RAPC also fails to state a claim under the UCL's "unfair" prong because it fails to allege some actual or threated impact on competition – not merely an impact on them as a competitor – as required by *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) ("*Cel-Tech*"). The sole allegation concerning TME's impact on competition is a generalized conclusion with zero factual basis, found in SAC ¶¶ 89(d) and 90 – "RAPC is informed and believes that [TME] as a competitor to RAPC, performed the acts alleged herein for the purpose of injuring RAPC and competition generally. The acts alleged herein continue to this day and present a threat to RAPC, the general public, the trade, and consumers." This is plainly insufficient.

In actions between direct competitors, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the

22

law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. This requires "some actual or threatened impact on competition," not just harm to a competitor. *Id.* at 186-87; *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

First, read plainly, RAPC's SAC alleges only injury to a competitor (RAPC) with any specificity, not injury to competition. (SAC ¶¶ 60-73, 89-90). The existence of ten or so defendants RAPC is suing on the same theory is evidence of the healthy competition in this field, and this Court is capable of taking judicial notice of the existence of these other lawsuits. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (reasoning that "a court may take judicial notice of 'matters of public record'"). The complained-of injury to RAPC is not equivalent to injury to competition—the proper focus of the antitrust laws.

Second, in support of its allegation that Defendants have violated the "unfair" prong of the UCL, the SAC primarily alleges that TME violates the Texas and California state statutes prohibiting the unauthorized practice of law. (SAC ¶ 39). But Texas Government Code § 81.101 provides an explicit safe harbor for TME's business practices, so its conduct cannot be unfair as a matter of law pursuant to *Cel-Tech*. *See* 20 Cal. 4th at 182 ("When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."); Tex. Gov't Code Ann. § 81.101(c) ("In this chapter, the "practice of law" <u>does not include</u> the . . . publication, distribution, display, or sale, including . . . by means of an Internet web site, of written materials . . . forms, computer software, or similar products <u>if the products clearly and conspicuously state that the products are not a substitute for the advice of an attorney</u>." (emphasis added)). Moreover, the California Bar is well aware of RAPC's complaints against TME and its other competitors, having been sued by RAPC in the LegalZoom case—another fact within the proper purview of judicial notice. *See* Case No. 3:17-CV-07194, Dkt. 57. There, the California Bar rightfully asserted, "Plaintiffs themselves—on their own accord—have decided not to adopt LegalZoom's business model because of Plaintiffs' own subjective fear of enforcement action by the State Bar of California, among other unrelated agencies." *Id.* at 11. In other words, if the agency tasked with enforcement authority is not taking action to reign in TME or its business practices, *Cel-Tech* informs this Court that it should be "careful not to make economic decisions or

23

prevent rigorous, but fair, competitive strategies that all companies are free to meet or counter with their own strategies." *Cel-Tech*, 20 Cal. 4th at 184.

Third, the SAC implausibly (and nonsensically) alleges that Defendants' violate the unfair prong by causing "consumer injury [by] submitting fraudulent specimens to the USPTO." (SAC ¶¶ 89(a)-(b)). Unclear (and insufficiently plead) however, is how this purported "consumer injury" is a competitive strategy operating with the requisite "actual or threatened impact on competition" – if anything, such a purported act would presumably draw consumers away from TME and to RAPC.

Lastly, RAPC impermissibly lumps Crabtree into the allegations against TME with regard to TME's purported "unfair" practices, (*see* SAC ¶ 60-73 (starting with "The Unfair Competition By [TME] and Crabtree")). There are no allegations concerning Crabtree operating "unfairly" in his personal capacity in any respect. (*See, e.g.*, SAC ¶ 89 ("[TME] and Crabtree have violated the unfair prong of the UCL . . . ").

Because RAPC alleges only injury to them, a competitor, not injury to competition, it fails to adequately plead the existence of an "unfair" business practice and dismissal is appropriate.

### D. Certain Damages Claims Must Be Dismissed

As a final matter, if the Court dismisses RAPC's declaratory relief and Lanham Act claims but its UCL claims survive, RAPC's claims to damages, restitution, and attorney's fees are untenable and should be dismissed as a matter of law. RAPC cannot seek damages for the unauthorized practice of law. *People ex rel. Herrera v. Stender*, 212 Cal. App. 4th 614, 632 (2012) ("[V]iolation of a rule of professional conduct cannot, in and of itself, serve as the basis for a damages award"). No damages of any kind are recoverable under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003) ("A UCL action is equitable in nature; damages cannot be recovered."). As to restitution pursuant to the UCL cause of action, it is appropriate only if the defendant holds money in which the plaintiff has an ownership interest, of which there are no allegations. *Id.* at 1149 ("[t]he object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."). It is also well-settled that a competitor is not entitled to disgorgement of a competitor's profits under the guise of restitution. *Gordon v. Mass. Mut. Life Ins. Co.*, 2006 WL 3218778, at *7 (E.D. Cal. Nov. 7, 2006)

24

("there is no genuine dispute that non-restitutionary disgorgement is not an available remedy under the UCL"); *Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 455, 460 (2005) ("nonrestitutionary disgorgement is not an available remedy in a UCL […] action."). And, attorney's fees are not recoverable under the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999) ("Plaintiffs may not receive damages, much less treble damages, or attorney fees."). Without any remedy beyond injunctive relief available to it, RAPC would lack diversity jurisdiction as there would be no amount in controversy, in which case, the Court can dismiss the UCL claim as well on jurisdictional grounds.

### E. The SAC Should Be Dismissed with Prejudice.

Given the numerous opportunities RAPC has been given, both here and in parallel related cases before this Court, to remedy its deficient theories of liability, RAPC has failed to adequately cure its claims and further amendment would be futile. RAPC has exhausted this Court's time and resources and a prompt disposition amounting to a resolution on the merits is appropriate. *See, e.g., Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (affirming denial of leave to amend after three failed complaints and noting that "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (citation omitted.)).

## V. CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss RAPC's Second Amended Complaint in its entirety, with prejudice.

DATED: August 24, 2018                    HOLLAND & KNIGHT LLP


/s/ Dayna E. Underhill
Dayna E. Underhill *pro hac vice*
Attorneys for Defendants
*Trademark Engine, LLC and Travis Crabtree*