IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE P.C.,<br><br>Plaintiff,<br><br>v.<br><br>TRADEMARK ENGINE LLC, et al.,<br><br>Defendants. | Case No. 17-cv-07303-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; AFFORDING PLAINTIFF LIMITED LEAVE TO AMEND**<br><br>Re: Dkt. No. 108 |

Before the Court is defendants Trademark Engine, LLC ("TME") and Travis Crabtree's ("Crabtree") Motion, filed August 24, 2018, "to Dismiss Plaintiffs' Second Amended Complaint." Plaintiff LegalForce RAPC Worldwide, P.C. ("RAPC") has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Second Amended Complaint ("SAC"), RAPC, a law firm, alleges it "practices patent and trademark law before the USPTO [United States Patent and Trademark Office]." (See SAC ¶ 5). RAPC alleges that TME, one of RAPC's competitors, "operates website TrademarkEngine.com to advertise, promote and provide trademark related services" (see SAC ¶¶ 3, 6), and that Crabtree, "a licensed Texas attorney," is "a managing member" of TME (see SAC ¶ 7).

According to RAPC, TME has made "false and/or misleading statements" in "Google" advertisements and on its "website" (see SAC ¶¶ 13-15), has deprived its customers of "privacy" (see SAC ¶ 48), has submitted "fraudulent specimens" to the

---

[1] By order filed October 22, 2018, the Court took the matter under submission.

USPTO (see SAC ¶ 52),[2] and has engaged in the "unauthorized practice of law" (see SAC ¶ 39). Further, according to RAPC, Crabtree "authorized, directed or participated in" the making of TME's alleged false statements (see SAC ¶ 36), "directed[,] submitted or aided and abetted [TME] to submit fake and fraudulent specimens to the USPTO (see SAC ¶ 55), "aid[ed] and abett[ed] [TME] to practice law" (see SAC ¶ 53), and "violated" USPTO "regulations" (see SAC ¶ 56).

Based on the above allegations, RAPC asserts in the SAC three Claims for Relief: (1) "Declaratory Judgment"; (2) "False or Misleading Advertising [under] the Lanham Act, 15 U.S.C. § 1125(a)"; and (3) "California Unfair Competition [under] Cal. Bus. & Prof. Code § 17200 et seq."

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To

---

[2]The Court understands the word "specimen" to refer to the "mark as used on or in connection with the goods or services" that is submitted for registration to the USPTO. See 37 C.F.R. § 2.56(a).

2

survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

Defendants argue that each of RAPC's claims is subject to dismissal.

**A. Federal Claim**

The Lanham Act prohibits any "false or misleading description of fact, or false or misleading representation of fact, which . . . [,] in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's goods, services, or commercial activities." See 15 U.S.C. § 1125(a)(1).

In the Second Claim for Relief, asserted against both TME and Crabtree, RAPC alleges that TME, in violation of the Lanham Act, has made false and misleading statements" in "Google advertisements" (see SAC ¶ 16) and on its website (see SAC ¶¶ 17, 26-27), and that Crabtree "authorized, directed or otherwise participated in the design and advertising of the [challenged] statements" (see SAC ¶ 38).

**1. Liability of Crabtree**

Defendants contend the SAC includes insufficient facts to support a finding that Crabtree can be held liable for the conduct on which the Lanham Act claim is based.

By order filed July 19, 2018 ("July 19 order"), the Court dismissed RAPC's Lanham Act claim against Crabtree, as alleged in the First Amended Complaint ("FAC"), for the reason that RAPC failed to allege sufficient facts to support the theory of liability on which it relied, specifically, that Crabtree was the alter ego of TME. In the SAC, RAPC no longer proceeds against Crabtree on an alter ego theory, but, rather, on the theory that Crabtree "authorized, directed or participated" in TME's advertisements. (See SAC ¶ 38.)

A "corporate officer or director" can be held liable for a Lanham Act violation committed by the corporate entity where the officer or director "authorize[d] or direct[ed]" the violation, or otherwise "participate[d]" therein. See Coastal Abstract Service, Inc. v. First American Title Ins. Co., 173 F.3d 725, 734 (9th Cir. 1999). As set forth in the Court's July 19 order, however, RAPC's Lanham Act claim is subject to Rule 9(b) of the Federal Rules of Civil Procedure, and, consequently, RAPC must allege with "specificity" the "misconduct" it attributes to Crabtree. See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (holding Rule 9(b) requires a plaintiff to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud") (internal quotation and citation omitted). Further, as the allegations against Crabtree are made upon "information and belief" (see SAC ¶ 38), the allegations must be "accompanied by a statement of the facts upon which the belief is founded." See Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

Here, RAPC alleges that "[b]ecause advertising and promotion [are] key to a company's operation, upon information and belief, Crabtree authorized, directed, or otherwise participated in the design and advertising of the [challenged] statements." (See SAC ¶ 38.) As set forth in the SAC, RAPC's belief is founded on information it obtained during a job interview with an individual who previously had worked for TME. (See SAC ¶ 37; see also id. Ex. F (transcript of interview).) Nothing was said by such applicant, however, that pertains to TME's advertising or otherwise addresses the identity of the person or persons who, on behalf of TME, authorized, directed or participated in TME's advertising decisions. (See SAC Ex F.) Further, although it may be "reasonable to presume" that some types of statements, by their very nature, would be made or approved by corporate officers, see Wool, 818 F.2d at 1440 (holding district court could, at pleading stage, "presume" corporate officers who had "direct involvement . . . in [corporation's] financial statements" were responsible for misleading information contained in corporation's prospectus), RAPC fails to allege sufficient facts to support a finding that such presumption is applicable here. (See SAC ¶ 7) (describing Crabtree

generally as "a co-founder, minority member and a managing member").

Accordingly, to the extent the Lanham Act claim is alleged against Crabtree, it is subject to dismissal.

**2. Liability of TME**

The Court next considers whether RAPC sufficiently alleges its Lanham Act claim against TME.

### a. Use of "Professional"

RAPC alleges that two of TME's advertisements contain the word "professional," which word, according to RAPC, consumers would understand as a representation that TME's services are "lawful" (see SAC ¶ 14), which, according to RAPC, is false and misleading because TME, in providing its services, engages in a number of assertedly unlawful acts, specifically, depriving its customers of privacy, submitting fraudulent specimens to the USPTO, and engaging in the unauthorized practice of law. (See SAC ¶¶ 14, 39, 48, 52.)

The first advertisement challenged by RAPC allegedly is displayed in response to a Google user's search for the phrase "trademark filing." (See SAC ¶ 16.) According to RAPC, the advertisement contains (1) a title, such as "$69 Register Trademark Online – File Trademark in 3 Easy Steps" or a similar phrase,[3] (2) the address of TME's website, and (3) two sentences of text, specifically, (a) "Complete in Only 5 Minutes" or "Apply in Only 5 Minutes," and (b) "Let the Professionals File Your Trademark Today!" (See id.) The second challenged advertisement, found on a TME webpage that describes the features of three different "packages" available for sale, contains, as applicable to each such package, the phrase "Professional Preparation of your federal trademark application." (See SAC ¶ 17, Ex. C.)

---

[3] The other titles are "$69 Trademark a Name Online – File Trademark in 3 Easy Steps," "$69 Trademark a Logo Online – File Trademark in 3 Easy Steps," "$69 Trademark Application I File Trademark in 3 Easy Steps," "$69 Register Trademark Online I Fast Affordable Online Process," and "Looking to Get a Trademark? – File Trademark in 3 Easy Steps." (See id.)

5

Defendants argue that the word "professional," as used in the subject advertisements, is non-actionable puffery. "[P]uffery in advertisements" constitutes "either vague or highly subjective" assertions, e.g., an advertisement that "states in general terms that one product is superior." See Cook, Perkiss & Liehe, Inc. Northern California Collection Service Inc., 911 F.2d 242, 246 (9th Cir. 1990).

A number of courts have considered whether "professional" connotes a factual assertion, and have concluded, under the circumstances presented therein, that it does not. See, e.g., Griggs v. State Farm Lloyds, 181 F.3d 694, 699, 701 (5th Cir. 1999) (characterizing representation by insurer that it "would provide timely and professional service" as "non-actionable puffery" rather than "representation[ ] of specific material fact"); McElroy v. Boise Cascade Corp., 632 S.W. 2d 127, 134-135 (Tenn. Ct. App. 1982) (finding no "actionable misrepresentation" where seller stated its prefabricated homes were "distributed through more than 1,200 independent professional home builders"; holding "use of the word 'professional' is, in and of itself, no guarantee of anything"); Ludlow v. Lowe's Companies, Inc., 2014 WL 12580233, at *12 (D. Haw. 2014) (characterizing as "generalized" and "mere puffery" appliance store sign advertising "professional delivery"; noting sign made "no specific representations about capability, experience, or services provided"); Larobina v. Wells Fargo Bank, 2012 WL 1032953, at *4 (D. Conn. March 27, 2012) (finding defendant's description of itself as "a professional and stalwart bank" was non-actionable "statement[ ] of opinion — not fact"); Earthcam, Inc. v. Oxblue Corp., 2012 WL 12836518, at *6 (N.D. Ga. March 26, 2012) (finding statement that defendant's camera product "deliver[ed] professional-quality time-lapse construction video" was "nonactionable puffery"; characterizing "professional-quality," absent further elaboration, as "vague" and "not quantifiable"); In re Marsh & McLennan Companies, Inc. Sec. Litig., 2006 WL 2789860, at *1-2 (September 27, 2006) (characterizing as "puffery" insurance broker's statement "regarding its 'commitment to client service and professional standards'"); but see James v. Penguin Group (USA) Inc., 2014 WL 1407697, at *8 (S.D. N.Y. April 11, 2014) (finding defendant publisher's

representation that its "publishing and marketing services for its authors would be provided by professionals" was actionable because statement could be "tested with objective evidence").[4]

Here, as in the great majority of the above-cited cases, the term "professional" is a "general assertion[ ] of superiority" that lacks "the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action." See Cook, Perkiss & Liehe, 911 F.2d at 246.

Accordingly, to the extent RAPC's Lanham Act claim is based on TME's use of the word "professional" in advertisements, the claim is subject to dismissal.

### b. "Privacy-Related Statements"[5]

RAPC alleges that TME, on its website, makes false and misleading statements on a page in which it describes its "Identity Protection Program." (See SAC ¶ 27, Ex. E.) Specifically, the webpage states that when a trademark applicant submits an application directly to the USPTO, the applicant's "email and phone number will be available for all to see," including "[s]pammers, solicitors and anyone else," but that, for a monthly fee of $5, TME will provide its email and phone number to the USPTO, so that the "public" will not "see" the applicant's email and phone number. (See id.)

RAPC alleges that the following statements on the above-referenced webpage are false and misleading: (1) the introductory phrase "Protect your Identity – Identity Protection Program"; (2) "With our Trademark Privacy Protection program, the public will see our email and phone number rather than yours," which statement describes the services TME states it will provide for an additional fee; and (3) "Yes, I want to keep my information private ($5/month) Highly Recommended," which is one of the choices TME provides to customers who wish to respond to the webpage's offer. (See id.)

---

[4] As defendants note, the opinion does not identify the nature of the "objective evidence" on which it relied.

[5] Both parties collectively refer to the statements discussed in the following section as TME's "privacy-related statements." (See Defs.' Mot. at 12:3; Pl.'s Opp. at 13:30.)

7

Defendants argue that RAPC has failed to sufficiently allege it has standing to seek relief for the privacy-related statements because, defendants assert, RAPC has failed to allege sufficient facts to support a finding that RAPC has been injured by those statements. "[W]hen [a] plaintiff competes directly with [a] defendant," however, "a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing," see TrafficSchool.com v. Edriver, Inc., 653 F.3d 820, 826-27 (9th Cir. 2011), and RAPC alleges it "compete[s]" with TME "to provide individuals and small businesses" with "services that allow them to protect their marks through filings with the [USPTO]" (see SAC ¶ 3).

Defendants also argue that the privacy-related statements are not pleaded in conformity with Rule 9(b)'s requirement that "[a]verments of fraud" be "accompanied by 'the who, what, when, where, and how' of the misconduct charged." See Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003). The Court disagrees. By alleging the statements are made by TME on its website and have appeared thereon "[a]t least since 2017" (see SAC ¶¶ 27-28), RAPC has sufficiently pleaded the "who," the "when," and the "where" required by Rule 9(b). Next, by quoting the challenged statements and attaching to the SAC a copy of the webpage on which the statements are located, RAPC has sufficiently pleaded the "what." (See SAC ¶¶ 26-27, Ex. B.) Further, by alleging that, "regardless of whether a customer purchased the $5/month privacy protection program or not, [TME] always lists each of its customer's contact information, including emails and phone numbers, on [the] USPTO's trademark application forms" (see SAC ¶ 30), and that such customer information is "publically [sic] available on [the] USPTO's website" (see SAC ¶ 32), RAPC has sufficiently pleaded the "how."

Lastly, defendants argue, RAPC has failed to sufficiently allege the privacy-related statements were a proximate cause of RAPC's injuries. A "[p]roximate-cause analysis" considers "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." See Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 133 (2014). With respect to the Lanham Act, a plaintiff establishes proximate

cause where, for example, a competitor makes "false statements about his own goods . . . and thus induc[es] customers to switch." See id. at 137; see also id. at 138 (noting "diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising"). Here, RAPC alleges it has "lost customers" to TME (see SAC ¶ 84), which allegation is supported by the further allegation that from 2015 to 2017, the year RAPC filed the instant action, RAPC's "market share" has "decline[d]" from "nearly 2.4%" to "approximately 1.8%," a loss that, according to RAPC, corresponds to "approximately 2670 trademark[ ] filings per year" (see SAC ¶¶ 69). In addition, RAPC alleges, it has had to reduce its prices from "$499 to $199 and sometimes lower to match the unfair competition of [TME]." (See SAC ¶ 70.) Irrespective of any difficulty RAPC may encounter in proving such allegations, see TrafficSchool.com, 653 F.3d at 831 (affirming district court's denial of request for monetary award based on lost profits, where plaintiff failed to offer "any proof of past injury or causation"), the Court finds them sufficient at the pleading stage.

Accordingly, to the extent RAPC's Lanham Act claim is based on the above-referenced privacy-related statements, the claim is not subject to dismissal.

**B. State Law Claims**[6]

**1. Section 17200**

In the Third Claim for Relief, RAPC alleges defendants have violated § 17200, which statute prohibits any "unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200. RAPC bases its § 17200 claim on allegedly "unlawful"

//

//

---

[6]As the Court has not dismissed the entirety of RAPC's federal claim, the Court finds it appropriate to exercise supplemental jurisdiction over the state law claims. The Court notes, however, that RAPC's alternative allegations in support of diversity jurisdiction (see SAC ¶¶ 5, 7, 10) are insufficient for two reasons: (1) RAPC fails to allege the state in which it is "incorporated," see 28 U.S.C. § 1332(c)(1); and (2) RAPC fails to allege Crabtree's "state citizenship," see Kanter v. Warner-Lambert Co., 265 F.3d 853, 857-58 (9th Cir. 2001).

9

1 and "unfair" practices.[7]

### a. Alleged "Unlawful" Practices

RAPC bases its claim on four types of allegedly unlawful conduct, each of which the Court considers in turn.

#### 1. Violation of California Constitutional Right to Privacy

RAPC alleges that TME has deprived its clients of their "right to privacy" (see SAC ¶ 50), specifically, the right to privacy set forth in the California Constitution. See Cal. Const. Art. I, § 1 (providing "[a]ll people are by nature free and independent and have inalienable rights," including the right of "privacy"). The claim is based on the allegation that TME engages in the following conduct: "(1) waiving clients' rights to cancel the filing or refund the government fee; (2) waiving clients' rights to privacy by allowing their names, phone numbers, emails and street addresses to be published publicly; and (3) permitting [the] USPTO to make clients' information available for public search on [the] USPTO's online databases and other databases." (See SAC ¶ 48.)

Defendants argue that RAPC lacks standing to assert such claim and that the claim is, in any event, not cognizable. The Court agrees.

To have standing to assert a § 17200 claim, the plaintiff must have "lost money or property as a result of the unfair competition." See Cal. Bus. & Prof. Code § 17204. Here, as RAPC does not and cannot allege that its constitutional right to privacy has been violated, see SCC Acquisitions, Inc. v. Superior Court, 243 Cal. App. 4th 741, 755 (2015) (holding "corporations do not have a right of privacy protected by the California Constitution"), it necessarily must base its claim on the theory that TME's clients, at least those who are not corporations, have been deprived of a constitutionally-protected privacy right. RAPC fails to allege, however, any facts to support a finding that it has lost

---

[7]In its opposition, RAPC clarifies that its § 17200 claim is not based on any "misrepresentation" (see Pl.'s Opp. at 18:6-16), e.g., any of the claimed misrepresentations upon which RAPC bases its Lanham Act claim. Consequently, the Court does not consider herein defendants' argument that RAPC has failed to allege reliance.

10

money or property as a result of any of TME's clients having been deprived of his/her asserted right of privacy.

Additionally, to the extent the claim is based on TME's having allegedly waived its client's "right to cancel the filing or refund the government fee" (see SAC ¶ 48), RAPC fails to allege any facts to support a finding that said conduct by TME implicates "a legally protected privacy interest." See Folgelstrom v. Lamps Plus, Inc., 195 Cal. App. 4th 986, 990 (2011) (setting forth elements of claim for invasion of constitutional right to privacy) (internal quotation and citation omitted). Further, assuming TME's clients have a legally protected privacy interest in their respective names, phone number, emails, and street addresses, RAPC fails to allege any facts to support a finding that any disclosure by TME of such information to the USPTO rises to the level of "an egregious breach of social norms." See id. at 992; see also id. at 991 (listing, as examples of egregious breaches, "CHP officers' internet dissemination of photographs of the decapitated corpse of an accident victim," physician's "gratuitous disclosure of a patient's HIV status," and "the improper use of confidential mental health records").

Accordingly, to the extent RAPC's § 17200 claim is based on violations of Article I, § 1 of the California Constitution, the claim is subject to dismissal.

**2. Submission of Fraudulent Specimens to USPTO**

RAPC alleges that TME and Crabtree have violated 18 U.S.C. § 1001 by "submitting or aiding and abetting its customers in submitting fraudulent specimens to the USPTO." (See SAC ¶¶ 51-52.)

Section 1001 prohibits "knowingly and willfully" making to the United States "any materially false, fictitious, or fraudulent statement or representation" or "falsify[ing] . . . a material fact." See 18 U.S.C. § 1001. As defendants correctly point out, however, the SAC includes no facts to support a finding that defendants "knowingly and willfully" submitted, or aided and abetted the submission of, a specimen containing false information. Indeed, although it quotes the statutory requirement that the allegedly false statement must be "knowingly and willfully" made (see SAC ¶ 51), the SAC is devoid of

11

1  any facts, let alone facts sufficient to support a finding that defendants acted with such
2  intent. See Iqbal, 556 U.S. at 686-87 (holding that, although "malice, intent, knowledge,
3  and other conditions of a person's mind" need not be pleaded "under an elevated
4  pleading standard," plaintiff must do more than "plead the bare elements of his cause of
5  action [and] affix the label 'general allegation'").

6  Accordingly, and even assuming RAPC has standing to challenge TME and/or
7  Crabtree's alleged submission of fraudulent specimens to the USPTO,[8] RAPC's § 17200
8  claim, to the extent based on violations of 18 U.S.C. § 1001, is subject to dismissal.

### 3. Unauthorized Practice of Law

RAPC alleges that TME and Crabtree have engaged in the unauthorized practice of law, in violation of both California and Texas law. See Cal. Bus. & Prof. § 6125 (providing "[n]o person shall practice law in California unless the person is an active member of the State Bar"); Texas Gov't Code § 81.102(a) (providing "a person may not practice law in [Texas] unless the person is a member of the state bar"). Specifically, RAPC alleges, non-lawyers employed by TME have engaged in acts that constitute the practice of law. (See SAC ¶¶ 42-46.)

At the outset, defendants argue that RAPC has not sufficiently pleaded its standing to challenge TME's allegedly unauthorized practice. The Court disagrees. Where a law firm asserts against a non-lawyer competitor a § 17200 claim based on the unauthorized practice of law, such plaintiff has standing if it "suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the [allegedly unauthorized practice]." See Law Offices of Mathew Higbee v. Expungement Assistance Services, 214 Cal. App. 4th 544, 564 (2013). Here, RAPC has alleged such losses (see SAC ¶¶ 66-70), as well as facts to support a finding that such losses were the result of the conduct RAPC alleges constitutes defendants' unauthorized

---

[8] RAPC does not expressly allege that it lost any money or property as a result of the alleged submission of fraudulent specimens, nor is any such loss evident from the allegations in the SAC.

12

practice of law (see SAC ¶ 71).

Defendants next contend the facts alleged in the SAC are insufficient to support a finding that TME has engaged in the unauthorized practice of law. The Court again disagrees.

Under California law, the practice of law "includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court." See Baron v. City of Los Angeles, 2 Cal. 3d 535, 542 (1970) (internal alteration omitted). Similarly, under Texas law, the practice of law "embraces, in general, all advice to clients and all action taken for them in matters connected with the law." See Crain v. Unauthorized Practice of Law Committee, 11 S.W. 3d 328, 333 (Tex. App. 2000). Here, RAPC alleges that TME's non-lawyer employees, when "creating and reviewing trademark applications," make "legal determinations about classification" and recommend "changes to classifications and goods and services descriptions" (see SAC ¶ 41; see also SAC ¶¶ 44-45), as well as "perform[ ] pre-filing searches for potential conflicting trademarks and advise[ ] clients of the conflict and possible solutions" (see SAC ¶ 46).

"In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind." Baron, 2 Cal. 3d at 543 (internal quotation and citation omitted); see also Crain, 11 S.W. 3d at 333 (holding "preparation and filing of mechanic's liens" constitutes "practice of law"; finding preparer, in so doing, "impliedly advises its clients of their legal rights and entitlement under the law"). In light thereof, the Court declines to find at the pleading stage that the alleged acts by TME's non-lawyer employees do not, as a matter of law, constitute "difficult or doubtful legal issues," see Baron, 2 Cal. 3d at 543, particularly given the USPTO's stated position, as set forth on its website, regarding what actions taken in connection with the submission of a trademark application constitute the

//

practice of law.[9]

With respect to Crabtree, however, the Court agrees that RAPC has failed to allege said individual defendant has engaged in the unauthorized practice of law. To the extent the claim is based on a theory that Crabtree, who is a member of the Texas State Bar, is practicing law in California, the claim is subject to dismissal because the SAC includes no facts to support such contention. To the extent the claim is based on a theory that Crabtree has violated California and Texas law by aiding and abetting non-lawyers who are practicing law in those states, or that he otherwise is personally responsible for the acts of those non-lawyers, the SAC likewise fails to include facts in support thereof.

Accordingly, to the extent RAPC's § 17200 claim is based on the alleged unauthorized practice of law, the claim, as alleged against TME, is not subject to dismissal, and, as alleged against Crabtree, is subject to dismissal.

### 4. Violations of USPTO Regulations

RAPC alleges that Crabtree has violated five USPTO regulations applicable to "practitioners." (See SAC ¶¶ 56, 88.c.)[10]

---

[9] On a webpage titled "Warning about unauthorized practice of law," the USPTO states that "non-attorneys" cannot perform the following acts: "[c]onsulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document" or "[p]reparing or prosecuting an application." (See SAC ¶ 40.a-b (quoting USPTO webpage at https://www.uspto.gov/trademark/trademark-updates-and-announcements/warning-unauthorized-lawpractice).) On a separate webpage in which the USPTO states it "cannot give legal advice," it identifies the following acts, inter alia, that constitute "legal advice": "[c]onducting pre-filing searches for potentially conflicting trademarks," "[a]nalyzing or pre-approving documents before filing," and "[a]dvising applicants on substantive examination issues, such as the acceptability of . . . classification of goods and services." (See SAC ¶ 40.d-f) (quoting USPTO webpage at https://www.uspto.gov/learning-and-resources/support-centers/trademark-assistance-center)); see also People v. Landlords Professional Services, 215 Cal. App. 3d 1599, 1608 (1989) (holding non-lawyers' assisting clients in completing legal forms does "not amount to the practice of law as long as the service offered by [the non-lawyer] [is] merely clerical").

[10] In "trademark matters," a "practitioner" is "an individual who is an active member in good standing of the bar of the highest court of any State." See 37 C.F.R. § 11.1 (defining "practitioner" and "attorney"); see also 37 C.F.R. §§ 11.14(a), 5 U.S.C. § (b).

14

First, RAPC alleges, Crabtree has violated a regulation requiring a practitioner to "reasonably consult with the client about the means by which the client's objectives are to be accomplished," see 37 C.F.R. § 11.104(a); specifically, according to RAPC, TME's customers' "rights to privacy were waived without their knowledge." (See SAC ¶ 56.a.) Second, RAPC alleges, Crabtree has violated a regulation requiring a practitioner to "deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the practitioner only as fees are earned or expenses incurred," see 37 C.F.R. § 11.115(c), because, according to RAPC, he "fail[ed] to deposit legal fees and expenses paid in advance by his customers into a client trust account." (See SAC ¶ 56.d.) Next, RAPC alleges, Crabtree has violated regulations providing that a practitioner shall not, subject to certain exceptions, "represent a client if the representation involves a concurrent conflict of interest," see 37 C.F.R. § 11.107, and shall not, if he/she "formerly represented a client in a matter," represent "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client," see 37 C.F.R. § 11.109(a); in particular, according to RAPC, Crabtree "fail[ed] to check [for a] conflict of interest among his current and former clients prior to retaining new clients for [TME]." (See SAC ¶ 56.c.) Lastly, RAPC alleges, Crabtree has failed to comply with a regulation providing that, with respect to "a non-practitioner assistant employed or retained by or associated with a practitioner," the practitioner "shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the practitioner," see 37 C.F.R. § 11.503(b), because, according to RAPC, "non-practitioner assistants at [TME] have engaged in the unauthorized practice of law." (See SAC ¶ 56.c.)

As defendants point out, each of the subject regulations is a rule of professional responsibility applicable to an attorney who represents clients before the USPTO, and the SAC does not include any facts to support a finding that Crabtree has represented TME customers before the USPTO. Moreover, RAPC fails to plead any facts to support a finding that Crabtree waived without consent the privacy rights of any TME customer, that

15

he obtained legal fees or expenses from a TME customer, that he had a conflict of interest with respect to any TME customer he may have represented, or, as noted above, that he can be held personally responsible for any TME non-lawyer employee's alleged unauthorized practice of law.

Accordingly, and even assuming RAPC would have standing to challenge Crabtree's non-compliance with a rule of professional responsibility, RAPC's § 17200 claim, to the extent based on Crabtree's alleged non-compliance with the above-referenced USPTO regulations, is subject to dismissal.

### b. Alleged "Unfair" Practices

RAPC also bases its § 17200 claim on the theory that defendants have engaged in "unfair" business practices. (See SAC ¶ 89.) In particular, such claim is based on defendants' alleged submission of "fraudulent specimens" to the USPTO and their "unauthorized practice of law" (see SAC ¶ 89.a), which acts, if they occurred, are alleged to be "unlawful[ ]" (see SAC ¶ 89.d).

Defendants, citing Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163 (1999) (hereinafter, "Cal-Tech"), argue that RAPC has failed to allege a cognizable "unfair" practice. As set forth in Cal-Tech, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes § 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." See id. at 187.

Here, as noted, RAPC bases its "unfair" claims on conduct that, if it occurred, is assertedly "unlawful." The "unlawful" acts, however, are not acts alleged to be in violation of an antitrust law, nor does RAPC contend those acts violate the policy or spirit

//

//

//

16

1 of any antitrust law or otherwise significantly harm competition.[11]

2 Accordingly, to the extent RAPC's § 17200 claim is based on the theory that defendants engaged in "unfair" practices, the claim is subject to dismissal.

### c. Scope of Relief

As relief for the alleged violations of § 17200, RAPC alleges it is entitled to an injunction and to an award of restitution. (See SAC ¶ 92.) Defendants argue that RAPC has failed to allege any facts to support a finding that it is entitled to restitution.[12]

"[A]n order for restitution is one compelling a [§ 17200] defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003) (internal quotation and citation omitted). Here, RAPC fails to plead any facts to support a finding that TME, by reason of its having allegedly engaged in an unlawful business practice, obtained from RAPC property in which RAPC had an ownership interest. Consequently, RAPC is limited to seeking an injunction. See ABC Int'l Traders, Inc. v. Matsushita Electric Corp., 14 Cal. 4th 1247, 1268 (1997) (holding only remedies available to plaintiff who prevails on § 17200 claim are injunctive relief and restitution).

### d. Conclusion as to § 17200 Claim

To the extent RAPC's § 17200 claim seeks an injunction precluding TME from engaging in the unauthorized practice of law, the claim is not subject to dismissal. In all

---

[11]RAPC argues that the Court should not apply the test set forth in Cal-Tech, but, rather, should apply "the FTC Act section 5 test." (See Pl.'s Opp. at 24:23-24.) As the California Court of Appeal has explained, however, "the section 5 test" only applies to a § 17200 claim when a "consumer" alleges that a practice is "unfair." See Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1401-1406 (2006).

[12]Defendants also argue that, in a § 17200 action, the plaintiff is not entitled to seek damages or an award of attorney's fees. Such argument, although a correct statement of the law, see Cal-Tech, 20 Cal. 4th at 179, is unavailing, as RAPC does not seek such relief for its § 17200 claim, but only for its Lanham Act claim.

17

other respects, RAPC's § 17200 claim is subject to dismissal.

### 2. Declaratory Judgment

In its First Claim for Relief, RAPC alleges it is entitled to a declaration "as to whether [TME] has engaged in the unauthorized practice of law." (See SAC ¶ 75.)

Defendants seek dismissal of the claim for the reason that the Court, in its order dismissing the FAC and affording RAPC leave to amend, did not allow RAPC to add any new claims without leave of court, and RAPC did not seek, let alone obtain, leave to add a claim for declaratory judgment.

In its opposition, RAPC states it "agrees to dismissal of declaratory judgment to the extent that it is viewed as a separate claim" (see Pl.'s Opp. at 8:20-21) rather than a "remedy" (see id. at 8:19).

Accordingly, the First Claim for Relief will be dismissed.

### D. Leave to Amend

Defendants argue that RAPC should not be afforded further leave to amend.

With respect to the portions of the Second Claim for Relief that will be dismissed, the Court declines to afford RAPC leave to amend with respect to its challenge to the use of "professional," but will afford RAPC leave to amend to allege facts to support a finding that Crabtree can be held personally liable for TME's challenged privacy-related statements. Additionally, the Court will afford RAPC leave to amend to cure the deficiencies identified herein with respect to the Third Claim for Relief.[13]

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. The First Claim for Relief is hereby DISMISSED without leave to amend;

2. The Second Claim for Relief, to the extent based on TME's use of the word

---

[13] The Court's July 19 order did not address any of the deficiencies as to which leave to amend will be afforded.

18

1  "professional," is hereby DISMISSED without leave to amend, and to the extent alleged
2  against Crabtree based on the privacy-related statements, is hereby DISMISSED with
3  leave to amend; in all other respects, the Second Claim for Relief is not subject to
4  dismissal.

5     3. The Third Claim for Relief is hereby DISMISSED with leave to amend, with the
6  exception of RAPC's claim for injunctive relief based on the alleged unauthorized practice
7  of law by TME, which claim is not subject to dismissal.

8     4. RAPC is hereby afforded leave to amend solely to the extent set forth above.
9  Any Third Amended Complaint shall be filed no later than November 16, 2018. If RAPC
10 does not file a Third Amended Complaint by the deadline set herein, the instant action
11 will proceed on the remaining claims in the SAC.

12 **IT IS SO ORDERED.**

14 Dated: October 31, 2018

MAXINE M. CHESNEY  
United States District Judge